IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.:

In re: Government Seizure of ICX Tokens

---

**MARK SHIN'S MOTION PURSUANT TO FED. R. CRIM. P. 41(g) AND
THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
FOR THE RETURN OF PROPERTY OR FOR A PROBABLE CAUSE HEARING**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ................................................................................................ 3

II.   FACTUAL BACKGROUND ............................................................................. 4

   A.   Overview of Crypto Assets ..................................................................... 4

   B.   Overview of ICON and the ICON Network ........................................... 6

   C.   Mark Shin and ICX Tokens .................................................................. 7

   D.   The Revision 9 Bug Aftermath ........................................................... 11

   E.   Shin's Civil Suit in Federal Court in the Northern District of California............. 13

   F.   The Federal Seizure Warrants to Seize ICX Tokens ........................... 15

   G.   Government Interactions with Shin's Counsel .................................... 19

III.  ARGUMENT ................................................................................................... 20

   A.   The Government Must Return the Seized Crypto-Assets to Shin. ....................... 20

   B.   If the Government Is Not Obligated to Return the Seized Crypto-Assets to Shin, a Probable Cause Hearing Is Warranted. ............................... 26

IV.  CONCLUSION ................................................................................................ 27

## **TABLE OF AUTHORITIES**

**Cases**

*Central Bank & Trust v. Smith*,
    215 F. Supp. 3d 1226 (D. Wyoming Aug. 31, 2016) ................................................. 21

*CFK LLC v. United States*,
    324 F.R.D. 236 (D. Utah 2018) ....................................................................................... 24

*Cleveland v. United States*,
    531 U.S. 12 (2000) ........................................................................................................... 22

*Cloudpath Networks v. SecureW2 BV*,
    157 F. Supp. 3d 961 (D. Colorado 2016) ..................................................................... 21

*Franks v. Delaware*,
    438 U.S. 154 (1978) .................................................................................................... 25, 27

*In re Search of 2847 East Higgins Road, Elk Grove Village, Ill.*,
    390 F.3d 964 (7th Cir. 2004) ......................................................................................... 24

*United States v. $8,850 in U.S. Currency*,
    461 U.S. 555 (1983) ................................................................................................. 19, 24

*United States v. Cosme*,
    796 F.3d 226 (2d Cir. 2015) .......................................................................................... 27

*United States v. Herrara*,
    782 F.3d 571 (10th Cir. 2015) ....................................................................................... 25

*United States v. Lake*,
    472 F.3d 1247 (10th Cir. 2007) ............................................................................... 22, 23

*Van Buren v. United States*,
    19-783 (U.S. 2020) .......................................................................................................... 21

**Other Authorities**

18 U.S.C. § 1030 ..................................................................................................................... 21

18 U.S.C. § 2314 ..................................................................................................................... 23

18 U.S.C. § 981 ................................................................................................................. 17, 23

18 U.S.C. § 983 ................................................................................................................. 17, 18

Fed. R. Crim. P. 41(g) .............................................................................................. 2, 19, 27

## I.    INTRODUCTION

In November 2020, the United States government obtained approximately twelve seizure warrants from a magistrate judge in this District and through those warrants began the process of seizing millions of dollars' worth of crypto-assets held or controlled by Mark Shin. There was no lawful basis for this seizure, as the seized crypto-assets belonged to Shin and were not proceeds of any federal crime. Indeed, Shin still has not been charged with a crime, and the prosecutors handling this matter have not identified any criminal statute that he transgressed. Shin's property nevertheless remains locked up in FBI crypto-wallets, and his due process right to challenge the government's seizures have fallen by the wayside. Shin thus brings this action.

The crypto-assets at issue stem from Shin's acquisition of a significant number of ICX tokens, the native crypto-asset of the ICON blockchain. The ICON Foundation ("ICON") designed and issued ICX tokens and created the ICON blockchain. On August 22, 2020, shortly after ICON released and implemented a software update to the ICON network, the Revision 9 Proposal, Shin discovered a bug in the software that allowed him to use previously acquired ICX tokens to generate newly minted ICX tokens at a faster rate than others. Shin did not hack the ICON network, modify any of its source code, or exceed the authorization that the network affords all participants. He acted lawfully and according to the rules of ICON's network. In addition, as ICON has conceded, the newly minted ICX tokens did not belong to anyone else when Shin acquired them.

In response to discovering that it had released a bug into its own network, ICON targeted Shin as a scapegoat to distract from its own culpability. ICON publicly branded Shin a "malicious attacker" who had "stolen" the ICX. ICON worked with various exchanges and networks to freeze his crypto-assets. ICON even threatened to report Shin to law enforcement

unless he turned over the newly minted ICX to ICON. Shin refused to cave to ICON's

extortionate threats; in fact, Shin brought suit against ICON in federal court in the Northern

District of California, demanding that ICON unfreeze his crypto-assets.

ICON persisted, however, and evidently made good on its threat to invoke the criminal

justice system to solve what should have been a civil dispute over who owned and owns the

newly minted ICX. The federal government then stepped in, and by believing ICON's false

statements regarding Shin's conduct—which statements his publicly filed complaint shows to be

false—leveraged the power of the Department of Justice to seize the ICX for itself. Accordingly,

pursuant to Fed. R. Crim. P. 41(g) and the due process clause of the Fifth Amendment of the

United States Constitution, Shin seeks the return of his property that the government unlawfully

seized.

## II.      FACTUAL BACKGROUND

A.      Overview of Crypto Assets[1]

Crypto-assets are digital assets that employ cryptographic principles to secure

transactions, control the creation of additional units, and verify their transfer. Bitcoin was the

world's first major crypto-asset, and it is also the largest and most popular crypto-asset. The core

feature of Bitcoin—and nearly every other crypto-asset—is a public ledger, called a blockchain,

that tracks the ownership and transfer of the crypto-asset.

Since the creation of Bitcoin, the number of crypto-assets have grown dramatically, and

there are now more than 8,000 crypto-assets, one of which is ICX, a token created and used by

the ICON Network. The creators of these new crypto-assets have decided, in many instances, to

---

[1] Except where otherwise noted, sections A through D of this Factual Background are primarily taken from the Amended Complaint in the related civil case filed in federal court in the Northern District of California, attached hereto as Exhibit A. *See* Amended Complaint, *Shin v. ICON Foundation*, 20-CV-07363-WHO, ECF No. 28 (N.D. Cal. 2021).

deviate from core features of Bitcoin by creating crypto-assets that work in numerous different ways and serve different purposes and markets, distinguishing themselves through: a degree of decentralized governance (*i.e.*, no central authority dictates which transactions are authorized); a degree of supply management (*i.e.*, what circumstances additional tokens will be generated and to whom they will be given); and a mechanism for verifying the blockchain.

Bitcoin maintains its blockchain and provides for new bitcoin to enter the economy through a consensus mechanism known as "mining," or "proof of work." Individuals "mine" bitcoin by having sophisticated computer programs perform complex, resource-intensive automated verifications of past transactions, which are then added to the blockchain. Other crypto-assets, such as ICX, use a mechanism called "proof of stake." This mechanism provides new currency to those who already own that currency in proportion to their ownership (not dissimilar to an interest bearing account). Under the proof-of-stake consensus mechanism, individuals must "stake" their crypto-assets to be eligible to receive newly minted tokens. Issuers of some crypto-assets impose rules on staking, such as (1) requiring minimum amounts; (2) imposing a minimum staking period; and (3) imposing requirements on when an individual can "unstake" their tokens to allow them to be freely traded again.

The rules governing crypto-asset networks, like many software applications, sometimes need to be updated, which is complicated because typically there is no centralized authority responsible for releasing software updates. Accordingly, for crypto-assets, software updates occur in the form of what is called a "software fork." For many, software forks get implemented through a voting mechanism from "full node users." A node is a computer that connects to a crypto-asset network. "Full nodes" enforce all of the rules of the network.

B.     Overview of ICON and the ICON Network

ICON, a subsidiary of a Korean Fintech company valued at $4 billion, founded the ICON network in 2017. *See* Exhibit B ("Could This Blockchain In Korea Be The First To Connect An Entire Country?"). On August 15, 2017, ICON issued its draft whitepaper, which outlined the conceptual framework of the ICON protocol. *See* Exhibit C (Whitepaper). The ICON whitepaper stated that ICON "essentially aims for decentralized governance." *Id.* at 21. (last visited on May 10, 2021).

ICON designed ICX to be a decentralized token that would "eradicate boundaries that have been existed [sic] in the centralized system." *Id.* at 7. The benefit of this decentralized system, ICON claimed, was that "[t]ransactions on the ICON Network are verified by a ledger shared within the community network itself, *not controlled by a centralized authority*." *Id.* (emphasis added). To achieve this promised decentralization, ICON incentivizes its users to run full nodes that themselves are comprised of community Public Representatives ("P-Reps"). The P-Reps can change the policies of the various nodes or communities of which they are part. Through their voting power, P-Reps determine when to update the code underlying the ICON network and help contribute to the overall ICON ecosystem by developing new apps or new features for the code.

ICX was designed as a proof-of-stake crypto-asset, where users stake their ICX tokens towards other P-Reps. Each ICX token is worth one vote, and thus ICX owners can "vote" for other users to become P-Reps. Those P-Reps then set policies for the overall ICX platform. Users can also transfer their delegated tokens from one P-Rep to another P-Rep. Staking is not costless; staking an ICX token removes it from circulation. This mechanism gives those with the most ICX tokens more control over the network, but it requires them to have a stake in that network. Staked ICX can be unstaked, allowing them to be transferred again, but the ICON

network requires time to process the unstaking request. In order to transfer staked ICX, a user must unstake them, which takes between five to twenty days. The unstaking period is determined by the total amount of staked ICX in the entire system. Once staked, a user can then "delegate" their staked ICX to a specific P-Rep by executing a function called "SetDelegation."

Staking ICX thus has a significant opportunity cost. In order to compensate staked users for this cost, the ICON protocol provides staked ICX holders with newly generated ICX. This newly generated ICX is not transferred from ICON or another user. It is generated at the time it is issued directly to the staked ICX holder. This system encourages users to engage with the ICON protocol and develop it, as those who do so are rewarded with additional ICX.

C.     Mark Shin and ICX Tokens

Shin became interested in the ICON network in 2017 and ended up purchasing more than 250,000 ICX tokens. As of August 22, 2020, he had staked more than 150,000 ICX tokens. Shin acquired these tokens on popular centralized crypto-exchanges such as Binance, Kraken, and Velic. In acquiring these tokens, Shin never agreed to any terms of service or other contract with ICON. Indeed, as a decentralized crypto-asset network, ICON has no terms of service.

ICON, like other issuers of crypto-assets, updates its code through the use of software forks, which it refers to as "network proposals." As ICON's senior leadership recognized, however, ICON at times rushed out its "network proposals" without thoroughly de-bugging the software. *See* Exhibit D (Twitter post). On July 27, 2020, ICON's founder, Min Ho Kim wrote on Twitter about a *previous* "bug/error" (unrelated to the bug at issue here) that ICON introduced into the network. Min wrote that ICON took "full responsibility for this [bug] and [will] cover any damage." Kim continued: "Bugs are part of dev process. We've recently seen that even big co's like Twitter w more engineers + resources make mistakes … At ICON, we try to balance

speed (shipping codes) based on our risk assessment. In other words, we prefer to move fast and break things if we can afford it." *Id.* at 1.

In August 2020, just weeks after Kim's comments about "moving fast" and "break[ing] things," ICON released the "Revision 9" network proposal. On August 13, 2020, Revision 9 was approved by 16 of the 22 ICON P-Reps and adopted into the ICON network. On August 22, 2020, Shin attempted to direct some of his staked ICX tokens from being delegated to one P-Rep to being delegated to another through his ICON wallet. He selected a new P-Rep and "voted" his staked tokens toward that P-Rep. After initiating the redelegation process within ICON, a process he had performed many times before, Shin noticed that 25,000 new ICX tokens had appeared in his wallet. Shin thought that there was a visual bug with the wallet software. He tried redelegating his tokens again and saw that another 25,000 ICX tokens had appeared in his wallet ("Revision 9 Bug"). Shin did nothing to access or alter or hack into the underlying ICON network protocol.[2]

Shin's process is demonstrated below. At the outset, the wallet at issue had minimal ICX that could be transferred.

---

[2] In the related civil lawsuit, ICON's motion to dismiss claims that at one point Shin "was blocked" from generating ICX Tokens through the Revision 9 Bug, and as a result, Shin "took steps to change his [own] computer's identifying information" so as to "continue generating" ICX. Dkt. 36 at 20-CV-07363-WHO. This allegation is false; indeed, neither ICON nor the government has produced any even purported evidence that this occurred. In addition, it is entirely unclear how, in a decentralized system with no central governing body, ICON could block any computer from generating ICX. To the extent that the government has obtained records of Shin's Internet Protocol (IP) addresses on August 22, 2021, which purport to show multiple IP addresses, it bears emphasis that most IP addresses used by residences in the United States are "dynamic" and thus automatically change at the direction of the internet service provider (ISP). *See, e.g.*, https://techgenix.com/static-ip-address-vs-dynamic-ip/.



To initiate the redelegation process, Shin selected his delegated ICX (*i.e.*, the staked ICX designated towards a P-Rep):



Shin then input that he wished to redelegate these tokens (selecting the P-Rep Rhizome):



The system prompted Shin to confirm that he intended to redelegate those tokens:



After doing so, Shin found that his wallet now had 25,000 new tokens:



Shin continued to repeat the process. By the end of the day, he had received approximately 14 million ICX tokens from the ICX protocol. Shin's actions were not malicious; rather, he engaged with the ICON Network exactly as permitted by the authors and developers of the Revision 9 Proposal. Further, Shin was not the only person to have discovered this bug; ICON itself stated that six million *other* ICX have been minted through this process, and many of the wallets who have benefited from the Bug appear to be associated with individuals close to the ICON leadership who took advantage of the Bug *prior* to Shin.

D.   The Revision 9 Bug Aftermath

After accumulating the ICX tokens, Shin transferred a significant portion of the newly minted ICX tokens to Kraken and Binance—two of the largest crypto-asset exchanges. A few hours later, Shin learned that he could no longer transfer *any* of his ICX tokens. This was because ICON had contacted Kraken and Binance and directed them to freeze Shin's accounts, which they did. ICON informed Kraken and Binance that Shin was a "malicious attacker" and that the ICX tokens Shin transferred to their exchanges were "stolen."

Less than a day later, on August 24, 2020, ICON wrote in a Medium post that "[e]xchanges were notified with [Shin's] accounts to freeze and to disable deposits and withdrawals." In that same post, ICON falsely called Shin a "malicious attacker" and referred to his ICX tokens as "stolen funds." *See* Exhibit E (August 24, 2020, Medium post). Binance and Kraken froze Shin's accounts based on these false statements. Other individuals familiar with ICON's system knew that these attacks on Shin were false. One P-Rep publicly commented on Reddit[3]:

blymdRhiz⬡me  6 months ago

There was no stealing. The code functioned as it was written. Unfortunate for the project, but I personally think the actor (I don't think he was a hacker because he didn't hack anything) should be able to keep the ICX and do as he pleases.

To be completely honest, I think the Foundation mitigated this in the wrong way. Instead of announcing new code review protocols, boosting development resources, etc, they pointed fingers at someone and started calling them a hacker. Very disappointing.

⬆ 3 ⬇  Share  Report  Save

In another comment, a P-Rep publicly stated that the ICON Network would not have been materially impacted by Shin's newly minted ICX[4]:

---

[3] *Available at*
https://www.reddit.com/r/helloicon/comments/jhvppq/questions_about_the_recent_lawsuit_vs_icx/gaynz39?utm_source=share&utm_medium=web2x&context=3.
[4] *Available at*
https://www.reddit.com/r/helloicon/comments/jhvppq/questions_about_the_recent_lawsuit_vs_icx/ga2l7x4?utm_source=share&utm_medium=web2x&context=3.



**NorskKiwi** ICON Nation • 6 months ago • Stickied comment • edited 6 months ago

What happened was that when we passed revision 9 there was a bug in it. To simplify it, this bug meant that when staking some people managed to accidentally mint new ICX.

My limited understanding (from reading files here) is that this one individual realised the bug and repeatedly exploited it. They made 14 of the 20 million extra ICX as far as I can tell.

For reference ICON has a hundred+ million ICX still (there's no financial issues here for our ecosystem is my point).

On the topic of the ICX Burn announced by ICON I'm not sure when it will occur. I imagine this situation has to resolve itself first.

ICON nevertheless continued to malign Shin, with a senior ICON employee committing a textbook case of extortion by *repeatedly* threatening to "involve law enforcement" and move "forward with law enforcement" if Shin did not kowtow to ICON's demands and return the ICX Shin received through ICON's faulty Revision 9 network proposal, even after Shin explained to this employee that his receipt of the ICX "was not the result of an intentional exploit, malicious hack, or any other illegal or prohibited activity."[5] Exhibit F (Twitter exchange). On August 24, 2020, ICON released another software fork proposal (the "Revision 10 proposal") that sought to correct the bug that Shin and others had discovered.[6]

    E.      Shin's Civil Suit in Federal Court in the Northern District of California

Given that ICON had taken action to freeze Shin's ICX, both by falsely telling the crypto-exchanges that Shin was a "malicious attacker" who transferred to their exchanges

---

[5] The employee who threatened Shin, an individual named Ricky Dodds, maintains a "LinkedIn" page that suggests he lives in Florida. *See* https://www.linkedin.com/in/ricky-dodds-65a73169 (last visited on May 10, 2021). Chapter 836.05 of the Florida criminal code provides: "Whoever, either verbally or by written or printed communication, maliciously threatens to accuse another of any crime or offense … with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree."

[6] https://medium.com/helloiconworld/network-update-revision-10-b0ce0bd68cbe.

"stolen" ICX, and by releasing a software fork (Revision 10) that further disabled Shin's ability to use his ICX tokens, on October 20, 2020, Shin sued ICON in federal court in the Northern District of California. *See* Complaint, *Shin v. ICON Foundation*, 20-CV-07363-WHO, ECF No. 28 (N.D. Cal. 2021), Exhibit G (initial complaint). Shin sought a declaratory judgment that the ICX obtained as a result of the Revision 9 Bug belonged to him, and he also filed claims for conversion, trespass to chattel, defamation and *prima facie* tort. All the claims relate to ICON's interference with Shin's ability to control his own ICX, as well as to ICON's false statements to various crypto exchanges and on Medium that described him as an "attacker" who "stole" ICX.

ICON filed a motion to dismiss the lawsuit and in its briefing, never claimed ownership over the ICX tokens issued as a result of the Revision 9 Bug. On April 28, 2021, Judge William Orrick held oral argument on the motion, and during this oral argument, as pertinent here, ICON formally conceded that it did not own the ICX created by the Revision 9 Bug, and in fact, believed that no one owned those ICX tokens(*see* Exhibit H (excerpts from transcript of Apr. 28, 2021 argument)):

| | |
|---|---|
| ICON (Defense Counsel): | He [Shin] generated 14 million new tokens. He knew exactly what he was doing; and because those were *minted out of the ether*, the effect of those new tokens was to dilute the holdings of every other ICON ICX holder at the time. So -- |
| Judge Orrick: | On that narrow question, is it then your client's position that you are -- that it is he owner or that no one is the owner because they are misappropriated, miscreated, whatever word you want to use? |
| ICON (Defense Counsel): | *It's certainly not our position that those 14 million ICX belong to the [ICON] Foundation. They don't.* Those 14 million tokens ought to be destroyed. To the extent -- to the extent that they're not destroyed, they ought to come back for the benefit of everyone who held ICX at the time of Mr. Shin's exploit. |

Counsel for ICON thus conceded that Shin did not take or steal the ICX tokens from anyone and, at minimum, no one, including ICON, owned the ICX token that resulted from the Bug. Instead, these tokens had simply been "minted out of the ether."[7]

F.      The Federal Seizure Warrants to Seize ICX Tokens

ICON evidently made good on its unlawful threats to "involve law enforcement" in order to wrest control of the ICX Tokens from Shin. On or about November 17, 2020, nearly a month *after* Shin publicly sued ICON and filed a detailed complaint outlining ICON's misconduct, federal prosecutors in Colorado sought and obtained from Magistrate Judge Kristen L. Mix twelve seizure warrants targeting crypto-assets held by Shin personally and on accounts at the following crypto-exchanges: Binance US, Coinbase, Gemini, Kraken, Velic, Kucoin, BitMax.io, Odex, HitBtc.com and IDEX.[8]  *See* Exhibit I (warrant list).

Shin has not been provided with copies of all of the signed warrants or the the affidavit(s) filed in support of the warrants.  Instead, Shin has been provided with copies of five of the signed warrants, which have consisted of the signed AO 109 form plus an Attachment A. *See* Exhibit J (warrant copies). Neither the warrants that have been provided nor the Attachment A forms specify what crime(s) Shin allegedly committed or whether the warrants were issued pursuant to the civil or criminal forfeiture statutes. On May 11, 2021, after significant prodding, the

---

[7] On May 11, 2021, in the related civil action, the Court granted ICON's motion to dismiss without prejudice for Shin to amend his allegations. *See* 20-CV-07363-WHO (N.D. Ca.) at Dkt. 57 (attached hereto as Exhibit U). Most relevant here, in discussing Shin's claims for conversion and trespass to chattel, the Court concluded that he had properly pleaded that ICON substantially interfered with his property rights by taking action to prevent him from using and accessing the ICX tokens he gained through ICON's bug. *See id*. at 15-19. The Court granted Shin leave to replead those claims to allege facts responsive to certain technical issues, which Shin plans to do within the requisite 20-day period.

[8] *See* 20-MC-00202-KLM through 20-MC-00211-KLM, 20-MC-00213-KLM and 20-MC-00214-KLM. In 2021, an additional warrant was obtained for the Binance.us exchange. *See* 21-SW-00004-MEH.

government provided Shin's counsel with seven search warrant returns, specifying the crypto-assets and fiat currency seized by the government from certain exchanges.

The warrants themselves are nearly identical, with each commanding the seizure of "[a]ll identified cryptocurrency held in the wallet addresses at [the exchange or with Shin] described in Attachment A." Attachment A, in turn, sets forth the specific exchanges, the location of the exchange, the wallet address, the form of crypto-assets to be seized, and the amount of crypto-assets to be seized. No other details are provided.

Shortly after the warrants were issued, Special Agent Travis Wall of the Federal Bureau of Investigation ("FBI") began serving the seizure warrants on various exchanges. *See* Exhibit K (FBI letter). Agent Wall appears to have sent the exchanges copies of the warrants and a cover letter. Instead of directing the exchanges to provide the amount of crypto-assets specified in the Attachment A to the FBI's wallets, the cover letter crafted by the FBI instead directed the exchanges to "*liquidate the cryptocurrency wallet/address* listed in the attached Federal Seizure Warrant" and send the funds to specific crypto-asset wallets held by the FBI. In short, rather than conforming the letter to the terms of the Magistrate's warrants, which listed specific amounts of crypto-assets, the FBI demanded that the exchanges turn over the entire accounts.

Multiple exchanges followed the FBI's order and liquidated the entire accounts, which resulted in a significant overcollection of crypto-assets by the government. As an example, the warrant signed by Judge Mix authorized the government to seize approximately 17 BTC from the Gemini crypto exchange. *See* Exhibit J at 5-6. Instead, the government received from Gemini the following crypto-assets and fiat currency: 25 ETH, 6.5 BTC, 100,000 REN and $12,030. *See* Exhibit L at 5 (email exchange with government). As another example, the warrant signed by Judge Mix authorized the government to seize *0* ICX from the Velic exchange. Exhibit J at 5. On

April 4, 2021, Velic sent 100,101 ICX to the government, and the search warrant return for Velic indicates that an additional 13 ETH were seized as well. *See* Exhibit M (FBI ICX account); Exhibit R (Velic warrant return). As a final example, the original Binance.US warrant authorized the government to seize approximately 0.36 ICX. Exhibit J at 4. Instead, the government seized 20,167 ICX on December 8, 2020. *See* Exhibit L at 5 (email exchange); Exhibit S (warrant return).[9] Shin was able to discover these Fourth Amendment transgressions not through the government search warrant returns, only some of which he just received,[10] but instead through his own due diligence in mapping the publicly available cryptocurrency deposits into the FBI wallets described in the FBI's cover letter.[11]

---

[9] In March 2021, the government seized the following additional fiat currency and crypto-assets from Binance.US: $212,383, 4.153.39 LNK, 120,826.75 XRP, 179.22 BNB, 4.805.15 XTZ, 105,960 ADA, 37.90 BTC and 591.55 ETH. Although the government has claimed to have obtained a second warrant for Binance.US sometime in 2021 (*see* Exhibit L at 5), Shin has not been provided with a copy of that warrant or the affidavit submitted for the warrant. *See* 21-SW-00004-MEH.

[10] On May 6, 2021, the government informed defense counsel that it had moved to unseal the search warrant returns, and on May 11, 2021, the government provided seven returns to counsel. On first glance, the search warrant returns confirm the over-collection of the crypto-assets and also appear to be riddled with errors. For example, the Binance.US return (Exhibit S) states that it was executed on November 17, 2020, via email, and that Binance.US complied with the warrant on December 8, 2020. However, the case number listed on the return is 21-SW-0004-MEH, which indicates that the warrant was obtained in 2021 (months later). Further, a second Binance.US return, also purportedly executed on November 17, 2020, shows a much larger seizure of crypto-assets and fiat currency. *See* Exhibit T (warrant return). As another example, with respect to the warrant issued to Velic, a crypto-asset exchange, the warrant states that a copy of the warrant and inventory was left with "Mark Minsuk Kim" and that the inventory was made in the presence of "Mark Minsuk Kim." *First*, the claimant's name is "Mark Minsuk *Shin,*" not "Mark Minsuk *Kim,*" and *second*, the inventory was not made in Shin's presence. In fact, Shin was not provided with a copy of the return until May 11, 2021, nearly five weeks after Velic sent the government the crypto-assets listed on the return.

[11] On March 29, 2021, after prodding from Shin and after a presentation in which Shin's counsel outlined the over-collection issue, the government provided Shin with a list of the cryptocurrency seizures up through that date. *See* Exhibit L at 5-6.

The government has also been inconsistent about providing Shin with an ability to challenge the government's seizures. The government has sent Shin to date only a single "Notice of Seizure of Property" form. *See* <u>Exhibit N</u> (forfeiture notice of seizure dated January 13, 2021). This form, dated January 13, 2021, informed Shin that the government had seized from him 275 ETH (seized on December 1, 2020), 20,167 ICX from Binance (seized on December 8, 2020), and 149,999 from Kraken (seized on December 1, 2020). The Notice of Seizure further provided that forfeiture of those assets was being initiated pursuant to civil asset forfeiture laws, including 18 U.S.C. § 981(a)(1)(A) (seizure of property involved in money laundering transactions) and 18 U.S.C. § 983 (civil forfeiture proceedings). Shin promptly filed a Claim of Ownership with the FBI. *See* <u>Exhibit O</u> (February 12, 2021, letter to FBI).

Although the government seized additional related crypto-assets on January 25 and 29, February 2, March 11 and 15, and April 4, 5, 11, and 15, 2021, Shin has not been provided with any additional notices of forfeiture, nor has he been served with any judicial asset forfeiture legal process. *See* <u>Exhibit P</u> (April 21, 2021, letter). And while the government prosecutors initially indicated to the defense that they would file civil forfeiture complaints on or about May 13, 2021, in accordance with the 90-day deadline provided under the law, *see* 18 U.S.C. § 983(a)(3), on May 11, 2021, the government informed the defense that it had moved the previous day for an extension of time to file a complaint.[12] This gamesmanship has prejudiced Shin, because without notice or a complaint he is unable to challenge the government's seizures.

---

[12] The government did not inform Shin, prior to filing for an extension, that it intended to seek an extension. Nor does Shin believe that the government can show the requisite "good cause" needed to obtain an extension. *See* 18 U.S.C. § 983(a)(3). Shin requests, as part of this motion, an ability to challenge the government's *ex parte* motion seeking an extension of time.

G.      Government Interactions with Shin's Counsel

Counsel for Shin has conferred with the assigned federal prosecutors from this District on multiple occasions over the past few months. *See, e.g.,* Exhibit L (email exchange with government). During that time period, counsel for Shin has made formal presentations to the government on two occasions; those presentations have focused on, *inter alia*, why Shin could not have committed a federal crime, the deficiencies in the seizure warrants, and how numerous other individuals (including some close to ICON) also obtained ICX tokens through the Revision 9 Bug (prior to Shin) but that those individuals were not labeled "attackers" by ICON and they were allowed to keep their ICX.

In addition, counsel for Shin has requested various basic information, such as complete copies of the seizure warrants, the seizure warrant returns, and the seizure warrant affidavit. Counsel for Shin has also requested the return of the "over-collected" crypto-assets. *See* Exhibit P. The government has declined to return any of Shin's crypto-assets. With the exception of the documents mentioned above, the government also has not provided Shin with the requested filings and, as noted, has not even consistently provided him with notice of his asset seizures. As of today, approximately six months after the government obtained a dozen seizure warrants, not only has Shin not been charged with any crimes, but he does not even know what federal criminal statute the government claims he violated to secure the warrants that resulted in the seizure of millions of dollars' worth of crypto-assets, or when he will be able to challenge the government's seizures. Accordingly, this motion, pursuant to Fed. R. of Crim. P. Rule 41(g) and the Fifth Amendment's due process clause, as articulated in *United States v. $8,850 in U.S. Currency*, 461 U.S. 555 (1983), now follows.

### III.     ARGUMENT

A.     The Government Must Return the Seized Crypto-Assets to Shin.

Shin did not commit a crime, and the seized crypto-assets were not the proceeds of any crime. Accordingly, under Rule 41(g) and the Fifth Amendment's due process clause, the Government must return the seized crypto-assets to Shin.

The Government seized millions of dollars' worth of crypto-assets that were "minted from the ether" as a result of ICON's Revision 9 Bug. These seizures began in November 2020, shortly after Shin publicly sued ICON. Nearly six months have now passed—a period of time that, in the world of volatile and rapidly appreciating crypto-assets, has significantly prejudiced Shin's ability to benefit from his ownership over the seized tokens. Shin has not been charged with any crimes, no civil forfeiture complaints have been filed, and no definitive date for the filing of any complaints has been set. In fact, since Shin filed a claim to his seized property in February 2021, the government has stopped even providing him with formal notices of these seizures, which also delays his ability to challenge them. And most importantly, despite repeated requests by Shin's counsel, the government will not even disclose what underlying criminal statute Shin purportedly violated that resulted in the seizures of his crypto-assets. Shin is left only to speculate as to what he did to violate federal law.

The reasonable conclusion to draw is that the government has refused to provide Shin with the basics to challenge the seizures—*i.e.*, the seizure warrant affidavits or, at minimum, a description of the statutes that Shin allegedly violated—because his actions did not amount to a crime under *any* federal law, and therefore, the seized property were not unlawful proceeds.

The actions Shin undertook on August 22, 2020, are not in dispute. ICON released the Revision 9 network proposal with a bug that allowed individuals, including Shin, to mint ICX by using, as ICON intended, the SetDelegation protocols to stake and unstake ICX. Many other

individuals also took advantage of this bug. At no time did Shin, or any other person to the best of Shin's knowledge, manipulate source code, hack, or unlawfully enter ICON's computer networks. Moreover, as has been clear since August 2020, and as ICON has admitted in court, the ICX Tokens that Shin and others obtained were *not* the property of ICON or anyone else. *See* Exhibit H (excerpts from transcript of oral argument)). Instead, as ICON's counsel has stated, these tokens were created out of the "ether." *Id.*

Given that Shin interacted with a computer network as it was intended by ICON to be interacted with, it is evident that Shin broke no laws, and that the resultant ICX tokens were not the proceeds of any federal crime. While Shin can only speculate as to what law the government told the magistrate it had probable cause to believe Shin violated, the most obvious statutes are simply inapposite. One such statute is the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(c), which prevents an individual from accessing a computer without authorization or exceeding his or her authorized access. In this case, of course, ICON allowed Shin and everyone else to use its network to obtain ICX tokens. These individuals therefore did not access ICON's Network without authorization. Just as fundamental, Shin did not "exceed" his "authorized access" because at no point did he "obtain or alter" information that he was not "allowed to see for any purpose," *i.e.* through hacking or source code or password manipulation. *See Cloudpath Networks v. SecureW2 BV*, 157 F. Supp. 3d 961, 983 (D. Colo. 2016) (holding that the term "exceeds authorized access" in "the CFAA does not impose criminal liability on individuals who are authorized to access company data but do so for disloyal purposes; it applies only to

individuals who are allowed to access a company computer and use that access to obtain data they are not allowed to see for any purpose").[13]

In *United States v. Kane*, 11-cv-22-MMD-GWF, Dkt. 86 (D. Nev. Oct. 15, 2012), a Magistrate judge sitting in the District of Nevada considered a similar case, in which the defendants played a video poker machine and, because of a series of programming errors that the defendants discovered, obtained a "second jackpot." The defendants did not physically tamper or manipulate the video poker machines in any way. The defendants were indicted and charged with violations of the CFAA for exceeding their authorized access to the machines despite the fact that the casino had allowed them to play video poker in the first place. The magistrate judge recommended that the indictment be dismissed, holding that the defendants' conduct did not violate the CFAA because the CFAA does not "regulate the way individuals use the information which they are otherwise authorized to access." *See* <u>Exhibit Q</u> (October 15, 2020, decision).

---

[13] The circuits are split on the meaning of "exceeds authorized access" in the CFAA. The Supreme Court's upcoming decision in *Van Buren v. United States*, 19-783 (U.S. 2020), which is *sub judice*, will likely resolve the split. Although the Tenth Circuit has not definitively ruled on the matter, district courts in the Circuit have narrowly interpreted the CFAA. *See, e.g., Central Bank & Trust v. Smith*, 215 F. Supp. 3d 1226, 1233 (D. Wyo. 2016) (dismissing CFAA lawsuit where the defendants-employees had lawful access to computer data but used it for an improper purpose; court ruled that while the "factual allegations suggest that the defendants' purpose and intent while using their authorized access made the access unauthorized. The allegations may very well state a claim in the First, Fifth, Seventh, and Eleventh Circuit. However, this Court disagrees with that particular reading of this section of the Computer Fraud and Abuse Act and believes the Tenth Circuit would follow the examples set by the Second, Fourth and Ninth Circuit, considering the overwhelming agreement of this Court's sister districts"). Even under the more expansive standard followed by other courts, Shin did not exceed authorized access because he did not "obtain or alter information" that he was not entitled to "obtain or alter." 18 U.S.C. § 1030(e)(6). ICON had no terms and conditions of use for Shin to exceed; and he interacted with the ICON Network exactly how it was meant to be used, by staking his ICX to various P-Reps. The fact that ICON introduced a Bug into its own Network does not then mean that Shin exceeded his authorized use. He did not.

After the Magistrate court's ruling, the government voluntarily dismissed the indictment. The same logic of that ruling applies here.

The wire fraud statute is also inapplicable. *See United States v. Lake*, 472 F.3d 1247, 1255 (10th Cir. 2007) (elements of wire fraud are a scheme to defraud, interstate wires, and use of wires to execute the scheme). Shin did not scheme to defraud; in fact, Shin made no representations (or misrepresentations) to anyone at all during his interactions with the ICON Network. Moreover, given that the ICX tokens at issue belonged to no one when Shin obtained them, *Cleveland v. United States*, 531 U.S. 12 (2000), bars application of federal fraud statutes to his conduct. *See id.* at 15 ("It does not suffice, we clarify, that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, *the thing obtained must be property in the hands of the victim.*") (emphasis added). Similarly, because the statute concerning interstate transportation of stolen property applies only to property that has been stolen, converted or taken by fraud, 18 U.S.C. § 2314, the fact that no one owned the ICX prior to when it was made "out of the ether" renders that statute inapplicable as well.[14]

Where the undisputed facts thus reveal that Shin committed no crime, it is unclear on what basis the Magistrate judge issued seizure warrants for the crypto-assets at issue. The only logical conclusion is that the FBI Agent's affidavits in support of the seizure warrants simply parroted ICON's false version of events, as set forth in its Medium post (*see* Exhibit E), which falsely accused Shin of being an "attacker" who acquired "stolen" crypto-assets. The Special

---

[14] Although the Notice of Forfeiture stated that forfeiture had been initiated pursuant to 18 U.S.C. § 981(a)(1)(A), the civil asset forfeiture statute that provides for the forfeiture of monies involved in money laundering, money laundering criminalizes financial transactions involving, as applicable here, the proceeds of specified unlawful activity. Here, because there was no underlying specified unlawful activity, such as wire fraud or violations of CFAA, there was no money laundering. *See Lake*, 472 F.3d at 1260 (because the government failed to prove the specified unlawful activity listed in the indictment, there was no money laundering).

Agent must not have engaged in sufficient independent investigation or search for corroborating evidence, because there is none. This conclusion is buttressed by the fact that the prosecutors assigned to the case still refuse to release the affidavit to the defense, despite having seized *millions of dollars'* worth of crypto-assets.

The crypto-assets at issue were seized unlawfully because the Agent's affidavit was incorrect. Shin did not intrude into ICON's network, and he did not take anyone else's property. ICON itself does not dispute those facts. And because Shin cannot otherwise challenge the seizures, Federal Rule of Criminal Procedure 41(g), which provides that a person "aggrieved by the government's unlawful seizure or deprivation of property" can "move for the property's return," commands the transfer of the seized crypto-assets to him. *In re Search of 2847 East Higgins Road, Elk Grove Village, Ill.*, 390 F.3d 964, 965 (7th Cir. 2004) (reversing denial of Rule 41(g) motion, holding that motion should have been granted "as soon as the government realized that the currency had no evidentiary value and was not the fruit of a crime").

The government's initiation of civil asset forfeiture or return of a criminal indictment with a forfeiture charge may moot a Rule 41(g) motion, *see, e.g., CFK LLC v. United States*, 324 F.R.D. 236, 238 (D. Utah 2018), but the government has yet to file either a civil or criminal complaint, and are in fact actively delaying doing so. This Court also has the authority to grant the relief Shin seeks under the Fifth Amendment's due process clause, pursuant to which courts must examine the length and reason for the government's delay in moving to forfeit assets; affirmative steps a claimant has taken to secure the return of her property; and the extent to which a claimant has been prejudiced by the delay. *See United States v. $8,850 in U.S. Currency*, 461 U.S. 555, 565-69 (1983).

These factors all favor Shin. *First*, it has been nearly six months since the issuance of the seizure warrants, and the government has neither charged Shin with a crime nor filed a civil forfeiture action. In fact, the government cannot even articulate to Shin what statute he violated. As such, there is no articulable reason why the government has failed to move forward towards forfeiture or, conversely, released the assets to Shin. *Second*, Shin has repeatedly asked for his property back, and he has filed this motion to facilitate that process. And *third*, Shin has been prejudiced by the government's seizure of his crypto-assets. Crypto-assets, unlike fiat currency, are a highly volatile asset and experts in the field routinely trade and invest in crypto-assets to maximize returns. The government's seizure of Shin's crypto-assets has prevented Shin—an experienced crypto-asset trader—from using his assets in this manner, and he will continually be prejudiced going forward as the government delays resolution of this matter.

Finally, if the seized crypto-assets are not to be returned to Shin at this time, this Court should compel the government to disclose the underlying affidavits filed in furtherance of the seizure warrants in order to enable him to move this court for a suppression hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Shin has shown that he has not committed a federal crime and that any affidavit alleging a federal crime would have had to have contained material falsities, such as a false description of how he interacted with the ICON Network, and would have omitted material exculpatory information, such as the information contained in his prior publicly filed lawsuit. *See United States v. Herrara*, 782 F.3d 571, 573 (10th Cir. 2015) ("Under *Franks*, a Fourth Amendment violation occurs if (1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued."). In addition, the statements supporting the affidavit were, at minimum, made recklessly. Shin had sued ICON publicly nearly one month

prior to the seizure warrants, *see* Exhibit G (complaint filed Oct. 20, 2020), and in his complaint explained not only how he had lawfully come into possession of the ICX token, but also how ICON had chosen to false label him as an "attacker" who had "stolen" funds even though no attack or theft had occurred. If this public information were included in the request for the seizure warrants, a neutral and detached magistrate would not have issued the requested warrants.

        B.        <u>If the Government Is Not Obligated to Return the Seized Crypto-Assets to Shin, a Probable Cause Hearing Is Warranted.</u>

Although the Magistrate judge issued warrants to seize only specific crypto-assets, in another error, the FBI demanded that the exchanges liquidate entire crypto-asset accounts. This resulted in the significant overcollection of crypto-assets by the government, beyond the bounds of the seizure warrants. Shin has repeatedly demanded that the over-collected crypto-assets be returned to him, but the government has refused, instead likening the over-collected crypto-assets seized from exchanges to crypto-assets that the agent simply found "on the ground." *See* Exhibit L (March 29, 2021, email at 5). In short, these specific crypto-assets, detailed above, have now been held by the government for months without any judicial probable cause determination.

Shin has brought this issue to the attention of the government on multiple occasions, most recently in an April 21, 2021 letter. *See* Exhibit P. In that letter, Shin reminded the government about the overcollection, pointed out how and why a warrant should have been obtained, and again demanded the return of the crypto-assets. As of the date of this filing, the government has not responded to that letter, returned any crypto-assets to Shin, or, to the best of Shin's knowledge, obtained a warrant to cover the over-collected crypto-assets (except for possibly a second warrant issued for Binance.US, a copy of which has not been provided to Shin). Such a seizure is improper under the Fourth Amendment. *Id.* Accordingly, Shin requests that a probable

cause hearing be held at which a Magistrate judge can determine whether probable cause existed at the time of the seizure to seize the "over-collected" crypto-assets not specified in the warrants. *See, e.g., United States v. Cosme*, 796 F.3d 226, 233-34 (2d Cir. 2015) (warrantless seizure based on probable cause and exigent circumstances does not justify holding property without a post-seizure judicial determination of probable cause).

## IV.      CONCLUSION

Mark Shin respectfully requests, for the reasons set forth above, that this Court order the government to return the seized crypto-assets to him, either pursuant to Fed. R. Crim. P. Rule 41(g) or the Fifth Amendment's due process clause. In the alternative, Shin requests that he be provided with a copy of the affidavit(s) submitted by the government to obtain the seizure warrants and be permitted to file a suppression motion pursuant to *Franks v. Delaware* after he has obtained the requisite discovery.  Finally, with respect to the "over-collected" crypto-assets seized without a warrant, in the event that that the crypto-assets are not returned to him pursuant to Rule 41(g) or the due process clause, Shin requests an immediate probable cause hearing.

DATED: May 12, 2021

Respectfully Submitted,

_/s/ Jeffrey S. Pagliuca_
Jeffrey S. Pagliuca, #12462
HADDON MORGAN & FOREMAN, P.C.
150 E. 10th Avenue
Denver, CO 80203
Telephone: (303) 831-7364
Email: jpagliuca@hmflaw.com

Eric S. Rosen, #NY 4412326
Kyle Roche, #NY 5517776
ROCHE FREEDMAN, LLP
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Email: erosen@rcfllp.com
Email: kyle@rcfllp.com

_Counsel for Mark Shin_

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2021, I electronically filed the foregoing **Mark Shin's**

**Motion Pursuant to Fed. R. Crim. Pro. 41(g) and the Fifth Amendment to the United States**

**Constitution for the Return of Property or for a Probable Cause Hearing** with the Clerk of the

Court via email address newcases@cod.uscourts.gov, and via U.S. Mail/email to the following:

Tonya Andrews
Assistant United States Attorney
Asset Recovery Division, Chief
United States Attorney's Office | District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202
Tel.: (303) 454-0100
tonya.andrews@usdoj.gov

_/s/ Holly Rogers_