# **EXHIBIT P**



April 21, 2021

Ms. Tonya Andrews
Assistant United States Attorney
District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202

Via email: tonya.andrews@usdoj.gov

    Re:    Mark Shin

Dear Ms. Andrews:

    It was nice to speak with you last week. We write in response to your email of March 29, 2021 regarding the overcollection of cryptocurrency by the Federal Bureau of Investigtion ("FBI").

    As you are aware, the FBI seized cryptocurrency from the Gemini (at least 25 ETH and 100,000 REN) and Binance (at least 20,000 ICX) exchanges without a warrant. Given that we have not yet been provided with any warrant returns, it is impossible for us to know whether any *additional* cryptocurrency has been seized without a warrant, and thus, Mr. Shin reserves all rights to challenge the seizures of his property.[1] Further, given that the FBI notice of forfeiture referenced civil (and administrative) forfeiture statutes only – *e.g.*, 18 USC 981(a)(1)(A) and 18 USC 983 – this letter has been drafted with the assumption that the seizure warrants issued were civil seizure warrants.[2]

    Department of Justice policy mandates the use of a seizure warrant to seize cryptocurrency. *See* DOJ Asset Forfeiture Policy Manual 2019 (hereinafter, "AFPM 2019") at p. 48 ("Unless authorized by a search warrant or consented to by the owner, a seizure warrant should be obtained for the seizure of cryptocurrency"). The AFPM 2019 continues on to state: "In the case of cryptocurrency held in an account or wallet hosted by a United States-based institutional exchange, the seizing agency should obtain and serve a seizure warrant on the institutional exchange, similar to executing a seizure warrant on a bank account. Some exchanges located outside of the United States may have United States offices and/or United States points of contact and will also accept service of United States seizure warrants." The seizure of Mr. Shin's cryptocurrency, which was effected, in part, without a warrant, appears to violate the DOJ's written policy.

---

[1] We recently became aware that cryptocurrency seized from Binance most likely far exceeded that amount provided for on the seizure warrant.
[2] The few signed warrants that the defense has been provided with do not specify whether the seizure warrants were criminal or civil. In any event, courts issue criminal warrants pursuant to Title 18, United States Code, Section 853(f) in the same manner as civil warrants.

Putting DOJ policy aside, statutory law also does not allow federal agents to decide, *sua sponte*, that they have an ability to seize cryptocurrency without first obtaining judicial approval and absent extenuating circumstances. Rather, pursuant to Title 18, United States Code, Section 981(b)(2), property can be seized for civil or administrative forfeiture without a warrant only if there is probable cause to believe that the property is subject to forfeiture *and* the seizure is either made pursuant to a lawful arrest or search (not applicable here) or another exception to the Fourth Amendment warrant requirement applies, such as the automobile, plain view, exigent circumstances and search incident exceptions to the warrant requirement. *See* AFPM 2019 at 44-45 (citing cases justifying warrantless seizure of property under the above-mentioned exceptions to the warrant requirement); *see also United States v. Cosme*, 796 F.3d 226, 234 (2d Cir. 2015) (under civil forfeiture provisions, government can seize property without a warrant if "there is probable cause to believe that the property is subject to forfeiture" and an "exception to the Fourth Amendment warrant requirement would apply.").

Moreover, it is the government who bears the burden of demonstrating probable cause for the seizure of cryptocurrency not specified in a warrant. *See United States v. One 1957 Rockwell Aero Commander, etc*., 671 F.2d 414, 417 (10th Cir. 1982) (government's burden to prove probable cause for the institution of a forfeiture action); *see also United States v. 72,100 in US Currency,* 2009 WL 247837, *2 (10th Cir. Feb. 3, 2009) (same); *United States v. Clymore,* 245 F.3d 1195, 1201 *(10th Cir. 2001)* (same).[3] Further, probable cause must exist "at the time of the seizure to support the forfeitability of any property," and cannot be arrived at retrospectively based on facts the government learns subsequent to the seizure. *See Cosme*, 796 F.3d at 235 ("Cosme is thus entitled to a proper judicial determination of whether probable cause existed at the time of the seizure to support the forfeitability of his property …"). In addition, the fact that a bank or cryptocurrency account allegedly holds some tainted assets does not typically provide the government with *carte blanche* probable cause to seize or forfeit the entire account. *See, e.g., United States v. Dupress*, 10-CR-627-KAM, 2011 WL 3235637, *10 (E.D.N.Y. Jul. 27, 2011 (government established probable cause that only 20% of the funds in the bank account were proceeds of the crime; court then found that government was entitled only to forfeiture of 20% of the funds in the account and that the remainder of the funds "shall be released.").

Here, the government cannot show probable cause demonstrating that the cryptocurrency overcollected by the FBI was proceeds of a crime. *First*, Mr. Shin strongly disputes that there was probable cause to seize <u>any</u> of his cryptocurrency, let alone the cryptocurrency for which no magistrate judge issued a probable cause finding. *Second*, the government did obtain seizure warrants for portions of the challenged exchange-held crypto accounts. Given that, if the government had probable cause to seize the entirety of the cryptocurrency in those same accounts, the government surely would have stated as much in the seizure warrant affidavit presented to the magistrate judge. The fact that the government could have attempted to provide the court with probable cause for all the cryptocurrency, but deliberately chose not to, confirms that no probable cause existed to seize the entirety of Mr. Shin's cryptocurrency accounts. As

---

[3] To the extent that the government's email of March 29, 2021 can be meant to imply that Mr. Shin bears the burden of proving to the FBI that any of his seized assets are not traceable to the ICX he obtained, that is inconsistent with governing 10th Circuit precedent, which places the initial burden demonstrating forfeitability squarely on the government.

*Dupress* acknowledges, the government is not entitled to seize and retain an entire account simply because (according to the government), a portion of the funds is tainted.

Even if probable cause did exist to seize the overcollected cryptocurrency, there was certainly no exception to the warrant requirement that would have served to justify the warrantless nature of these seizures. The only possible exception that could apply here is the "exigent circumstances" exception. However, that exception, while perhaps applicable to bank accounts in general, could not be applicable to these particular circumstances given that the government sought and obtained seizure warrants over the *very same accounts* from which it also overcollected without a warrant. It would make no sense to have exigent circumstances to seize cryptocurrency from within one portion of the account while, at the same time, successfully employing a seizure warrant to seize cryptocurrency from another portion of that same account. Moreover, the FBI did not reference any "exigent circumstances" in demanding that the cryptocurrency exchanges turn over all the crypto in the accounts to the government. Instead, the FBI demanded that each exchange "liquidate the cryptocurrency wallet/address listed" in the "attached Federal Seizure Warrant," thereby deceiving the exchange to make it appear that the magistrate judge had ordered that the accounts be seized and liquidated when in fact that was not the case.[4]

Accordingly, given that the government seized cryptocurrency without probable cause and without an exception to the warrant requirement, Mr. Shin respectfully requests the return of that cryptocurrency by April 30, 2021.

Next, with respect to the cryptocurrency set forth below, Mr. Shin has not received any notice of seizure of property and administrative forfeiture proceedings, despite the fact that 60-days have now passed since its seizure. Please advise on the status of this cryptocurrency:

| Date | Amount | Currency | Est. USD Value | Exchange |
|---|---|---|---|---|
| 1/25/2021 | 12.91203132 | REP | $ 402.70 | Coinbase |
| 1/25/2021 | 0.03295372 | BTC | $ 1,969.54 | Coinbase |
| 1/25/2021 | 0.17836965 | ETH | $ 325.69 | Coinbase |
| 1/29/2021 | 0.02 | BTC | $ 1,195.34 | Coinbase |
| 2/2/2021 | 12,030.21 | USD | $ 12,030.21 | Gemini |
| 2/2/2021 | 100,000 | REN | $ 113,947.97 | Gemini |
| 2/2/2021 | 6.5 | BTC | $ 388,484.24 | Gemini |
| 2/2/2021 | 25 | ETH | $ 45,648.00 | Gemini |

To the extent that the government is not proceeding administratively, please use this as formal written notice that Mr. Shin requests the return of all of his seized property.

---

[4] Contrary to the contentions in the government's March 29, 2021 email, the FBI agent here did not find the "cryptocurrency on the ground," nor was the crypto handed to him by a "third person." Rather, the FBI agent demanded that the exchange liquidate the accounts, and the exchanges complied with what they (wrongly) believed to be a court order.

Finally, with respect to your demand for an accounting, Mr. Shin rejects the government's request for such a remedy, given that it is not entitled to it. Mr. Shin has fully complied with all court-issued seizure warrants. However, Mr. Shin's willingness to voluntary cooperate with the government in its investigation is being hampered by the government's failure to respect his Fourth Amendment rights.

Best regards,

**ROCHE FREEDMAN LLP**

*/s/ Eric S. Rosen*
Eric Rosen
99 Park Avenue, Suite 1910
New York, New York 10016
T: (646) 541-8484
erosen@rcfllp.com

cc:

Patricia Davies, AUSA
Andrea Surratt, AUSA
Jeff Pagliuca