IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Case No. 21-y-00065-WJM-SKC

In Re: Government Seizure of ICX Tokens

---

**UNITED STATES' RESPONSE TO MARK SHIN'S MOTION PURSUANT TO
FED. R. CRIM. P. 41(g) AND THE FIFTH AMENDMENT OF THE CONSTITUTION
FOR THE RETURN OF PROPERTY OR FOR PROBABLE CAUSE HEARING**

---

COMES NOW the United States of America, by and through Acting United States Attorney Matthew T. Kirsch and Assistant United States Attorney Tonya S. Andrews, and herein responds to Mr. Mark Shin's Motion Pursuant to Fed. R. Crim. P. 41(g) and the Fifth Amendment of the Constitution For the Return of Property or Probable Cause Hearing (ECF No. 1) (hereinafter "Motion for Return of Property").

## RELEVANT FACTS

1. In October 2020, the ICON Foundation reported to the Federal Bureau of Investigation (FBI) that an individual, Mark Shin, had exploited a software bug on the ICON Network that generated over 13 million ICX, which is the cryptocurrency coin/token of the ICON Network.

2. On November 17, 2020, the United States of America (Government) obtained seizure warrants for numerous cryptocurrency wallets that held proceeds traceable to the unauthorized minted ICX.  (20-mc-00202, 20-mc-00203, 20-mc-00204, 20-mc-00205, 20-mc-00206, 20-mc-00207, 20-mc-00208, 20-mc-00209, 20-mc-00210, 20-mc-00211, 20-mc-00213, 20-mc-00214).  The warrants sought seizure of all

"identified cryptocurrency held in the wallet addresses at [cryptocurrency exchange] described in Attachment A" at various cryptocurrency exchanges.[1]  *See* Attachment A.

3.      On January 4, 2021, the Government obtained a supplemental warrant for BAM Trading Inc. (also known as Binance.us) for "all cryptocurrency, fiat, and other items of value held by BAM Trading Services, Inc. derived from and traceable to items of value deposited and transferred to the wallets identified in Attachment A."  *See* Attachment B, 21-sw-4-MEH.

4.      With the service of each warrant, an "Instructional Letter" was provided to each exchange by Special Agent Travis Wall, to provide instructions on how to remit the cryptocurrencies in compliance with the warrant, specifically identifying the FBI cryptocurrency wallets where the cryptocurrencies could be sent.  *See* Attachment C, Affidavit of Travis Wall (hereinafter "Wall Affidavit"), p. 2, ¶ 6.

5.      Several cryptocurrency exchanges remitted cryptocurrency assets, identified and not identified in the seizure warrants, from wallet addresses, identified and not identified in the seizure warrants, as follows:

### A. Assets Received and Identified in the Seizure Warrants by both Cryptocurrency and Wallet Address

| Asset | Wallet Address | Exchange | Warrant | Date | Value at Time of Receipt |
|---|---|---|---|---|---|
| 149,999.94 ICX | Ending in 91be | Kraken | 20-mc-00206-KLM | 12/1/2020 | $62,999.97 |
|  |  |  |  |  |  |
| 20,167.2717325 ICX | Ending in 6a41 and 559b | Binance.us | 20-mc-00202-KLM and 21-sw-004-MEH | 12/8/2020 | $7,865.24 |
| $212,383.21 in U.S currency | Ending in 6a41, 559b, d49f, and f336 | Binance.us | 21-sw-004-MEH | 3/11/2021 | $212,383.21 |
| 4,153.39 LINK | Ending in f336 | Binance.us | 21-sw-004-MEH | 3/15/2021 | $114,176.69 |
| 50,628.06908 USDT | Ending in d49f and f336 | Binance.us | 21-sw-004-MEH | 3/15/2021 | $50,628.07 |
| 120,826.75 XRP | Ending in f336 | Binance.us | 21-sw-004-MEH | 3/15/2021 | $53,163.77 |

---

[1] The VELIC warrant sought the seizure of "all cryptocurrency held in wallet ending in 291f."

| | | | | | |
|---|---|---|---|---|---|
| 179.22493096 BNB | Ending in f336 | Binance.us | 21-sw-004-MEH | 3/15/2021 | $45,641.42 |
| 4,805.152127 XTZ | Ending in f336 | Binance.us | 21-sw-004-MEH | 3/15/2021 | $18,451.78 |
| 105,960 ADA | Ending in f336 | Binance.us | 21-sw-004-MEH | 3/15/2021 | $109,138.80 |
| 37.90480185 BTC | Ending in 6a41 and f336 | Binance.us | 21-sw-004-MEH | 3/15/2021 | $2,147,912.08 |
| 591.55345 ETH | Ending in d49f and f336 | Binance.us | 21-sw-004-MEH | 3/15/2021 | $1,056,838.30 |
| 6.5 BTC | Ending in d6x8 | Gemini | 20-mc-00205-KLM | 2/2/2021 | $231,686.81 |
| 0.02 BTC | Ending in XdLE | Coinbase[2] | 20-mc-00204-KLM | 1/29/2021 | $684.37 |
| 0.03295372 BTC | Ending in XdLE | Coinbase | 20-mc-00204-KLM | 1/29/2021 | $1,116.15 |
| 699993.1976 of 1,620,084.989983 ICX | Ending in 3ebf and 7f47 | Binance.com | 20-mc-00203-KLM | 4/15/2021 | $4,163,618.42 (value of all 1,620,084.989983 ICX) |

### B.  Assets Voluntarily Surrendered from Wallet Addresses Identified in Seizure Warrants, But Cryptocurrency Not Identified in Seizure Warrants

| Asset | Wallet Address[3] | Exchange | Warrant | Date | Value at Time of Receipt |
|---|---|---|---|---|---|
| 87,967.880590 USDT | Ending in 3ebf and 7f47 | Binance.com | 20-mc-00203-KLM | 4/15/2021 | $87,967.88 |
| 920091.7924 of 1,620,084.989983 ICX | Ending in 3ebf and 7f47 | Binance.com | 20-mc-00203-KLM | 4/15/2021 | $4,163,618.42 (value of all 1,620,084.989983 ICX) |
| 1,788.755825 ETH | Ending in 3ebf and eafd | Binance.com | 20-mc-00203-KLM | 4/15/2021 | $4,392,251.51 |
| 3.290804 BTC | Ending in 3ebf and eafd | Binance.com | 20-mc-00203-KLM | 4/15/2021 | $205,957.03 |
| 49,995.250 LTO | Ending in 3ebf | Binance.com | 20-mc-00203-KLM | 5/25/2021 | $13,498.72 |

---

[2] The wallet addresses identified as coming from Coinbase wallets is based on representations from Coinbase.  The FBI was not been able to confirm the source through independent tracing as of yet.

[3] As with Coinbase exchange, the wallet addresses identified are based on representations and data provided by Binance.com.  The FBI has not been able to confirm the source through independent tracing as of yet.

**C.  Assets Voluntarily Surrendered from Wallet Addresses Not Identified in Seizure Warrants**

| Asset | Wallet Address | Exchange | Date | Value at Time of Receipt |
|---|---|---|---|---|
| 275,004012053678388 ETH | Ending in 2a47 | Kraken | 12/1/2020 | $164,375.84 |
| 100,101.678819 ICX | Ending in b30d | Velic | 4/5/2021 | $254,258.26 |
| 13 ETH | Ending in b30d | Velic | 4/5/2021 | $26,709.67 |
| $12,030.21 in U.S. currency | fiat wallet | Gemini | 2/2/2021 | $12,030.21 |
| 100,000 REN | Ending in D791 | Gemini | 2/2/2021 | $67,000.00 |
| 25 ETH | Ending in D791 | Gemini | 2/2/2021 | $80,713.93 |
| 12.91203132 REP | Ending in f463 | Coinbase | 1/29/2021 | $231.51 |
| $31,647.87 in U.S. currency | Fiat wallet | Coinbase | 1/29/2021 | $31,647.87 |
| 0.17836965 ETH | Ending in 34d4 or 4069 | Coinbase | 1/29/2021 | $249.43 |

6.      In addition, Binance.com informed the Government that its compliance in this case is voluntary and they are not subject to the jurisdiction of the United States. *See* Wall Aff., p. 9, ¶ 23.

7.      Based on the information provided from Binance.us, it appears at least three wallet addresses were created by and belong to individuals other than Mark Shin. Specifically, it appears wallet address ending in 6a41 was created by an individual named Tom Kim on August 22, 2020; wallet address ending in 559b was created by an individual named David Cheng on August 22, 2020; and wallet address ending in 66ey was created by an individual named Akilesg Venkata Potti.  *See* Wall Aff., p. 10, ¶ 25.

8.      Based on the information provided from Binance.com, it appears at least two wallet addresses were created by and belong to individuals other than Mark Shin. Specifically, it appears wallet address ending in fb37 was created by an individual named Thomas Aellis, and wallet address ending in 7f47 was created by an individual named Shreyash Milak.  *See* Wall Aff., p. 11, ¶ 26.

9.      VELIC wallet address ending in b30d and Coinbase wallet address ending in XdLE also appear to be associated with Jason Shin, Mark Shin's father.  *See* Wall Aff., p. 11, ¶ 27.

10.      All the cryptocurrency exchanges had Terms of Service/User Agreements that provided for the unilateral restraint and/or freezing of a customer's accounts by the exchanges.  Kraken, Velic, Binance.us and Binance.com had frozen cryptocurrency wallets associated with Mr. Shin, and the exploited ICX prior to the service of the government's seizure warrants.  *See* Wall Aff., pp. 6-9, ¶¶ 16-22.

11.      Further, the Government did not seize several cryptocurrency assets, which are believed to be in the custody and use of Mr. Shin, which are also traceable to the exploitation of the Icon Network software bug.  *See* Wall Aff., pp. 11-13, ¶ 28.[4]

**Pending Forfeiture Proceedings**

12.      The FBI initiated administrative forfeiture on the first three assets remitted pursuant to the seizure warrants in January 2021:  275.004012053678388 Ethereum from Kraken; 149,999.94 Icon coin from Kraken; and 20167.2717325 Icon Coin from Binance.us.

13.      On February 12, 2021, Mark Shin filed an administrative claim with the FBI asserting an interest in the 275.004012053678388 Ethereum from Kraken; 149,999.94 Icon coin from Kraken; and 20167.2717325 Icon Coin from Binance.us.

14.      Once the claim was filed, administrative forfeiture was halted and, pursuant to 19 U.S.C. §§ 1608 and 1610, the FBI forwarded the claims to the United

---

[4] The Government is aware that these cryptocurrency assets may no longer be in the same form or held in the same wallet address to which they were initially traced, and that Mr. Shin has likely dissipated some of these assets.

States Attorney's Office for the District of Colorado, for the filing of a Verified Complaint. The complaint due date based on the filing of the administrative claim was May 13, 2021.

15.     The FBI did not initiate administrative forfeiture of any additional assets received because: (1) counsel for Mr. Shin had already indicated Mr. Shin's desire to contest the forfeiture of the assets by virtue of the administrative claim, thereby necessitating the filing of a civil complaint; and (2) many assets were valued at $500,000.00, which is over the threshold for administrative forfeiture.[5]  Accordingly, to avoid the creation of several additional deadlines, unnecessary complexity, and confusion, undersigned counsel represented to Mr. Shin's counsel that all of the assets seized would be filed in one civil forfeiture complaint based on the earliest deadline set in the case.[6]

16.     On May 10, 2021, the United States filed a Motion for Extension of Time to File Complaint for Forfeiture.  *See* Civil Action No. 21-mc-00117-MEH, ECF No. 1.  For good cause shown, the motion was granted on May 12, 2021, extending the deadline to file the complaint until July 12, 2021.  *See id.*, ECF No. 3. [7]

17.     On June 29, 2021, the People of the State of Colorado indicted Mark Shin for violations of Colorado Revised Statute (CRS) § 18-5.5-102(1)(d), (3)(a)(IX) (Cybercrime -commit theft over $1 million) and CRS § 18-4-401(1),(2)(j),(6) (Theft over

---

[5] *See* 19 U.S.C. § 1607.
[6] Administrative forfeiture was initiated on the earliest seizures in January 2021, when notice was sent to Mr. Shin.  Mr. Shin filed an administrative claim on February 12, 2021 to these assets; thus, the earliest deadline for the filing of a civil forfeiture complaint was originally May 13, 2021.
[7] On May 17, 2021, Mr. Shin filed a Motion for Reconsideration of the Court's Order granting the extension.  *See id.*, ECF No. 8.  The motion was denied on June 16, 2021.  *See id.*, ECF No. 20.

$1 million).  *See People of the State of Colorado v. Mark Shin*, 2021cr1445, District Court, County of Arapahoe, Colorado.

18.     On July 9, 2021, the People of the State of Colorado served the FBI with a freeze order, instructing the FBI to freeze the assets they hold in custody in relation to this matter.[8]

19.     Specifically, the State of Colorado has initiated criminal proceedings against Mr. Shin and a state judge has issued a freeze order, instructing the Federal Bureau of Investigation to retain custody of the subject assets.

20.     Prior to the state criminal indictment, Mr. Shin filed a Motion for Return of Property in this case asserting that he has not committed a crime and, therefore, the seizure warrants were unlawful and he is entitled to the equitable remedy for the return of property under Federal Criminal Rule 41(g) or the Fifth Amendment, Due Process Clause.  In the alternative, Mr.  Shin asserts that he is entitled to a copy of the seizure warrants and a probable cause hearing. (ECF No. 1).

## OVERVIEW OF CAFRA

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") established a comprehensive statutory scheme governing civil forfeiture actions under federal law. Pub. L. No. 106-185, 115 Stat. 202 (2000) (codified principally at 18 U.S.C. § 983). Pursuant to 18 U.S.C. § 983(a)(1), in any nonjudicial civil forfeiture proceeding (administrative forfeiture), notice of such proceedings must, in general, be sent to interested persons within sixty days of the seizure of the property.  An individual may file

---

[8] A copy of the freeze order was not available to the undersigned at the time of this filing.

a claim any time after the seizure.  18 U.S.C. § 983(a)(2).  If a property owner files a claim after receiving notice, the Government has ninety days under 18 U.S.C. § 983(a)(3) to file a civil complaint or to include the forfeiture in a related criminal indictment.  This deadline may be extended by the Court for good cause or by agreement of the parties.  18 U.S.C.§ 983(a)(3)(A).

If the Government does *not* elect or does not have the power to pursue an administrative forfeiture, the 60–day notice requirement does not apply. *See United States v. $78,700.00*, No. A-14-CA-113-SS, 2014 WL 1342863, at *4 (W.D. Tex. Apr. 3, 2014) (collecting cases); *see also In re Funds on Deposit*, 919 F. Supp. 2d 169, 174-75 (D. Mass. 2012) ("[B]ecause the Government here had no intention to commence . . . an administrative forfeiture proceeding (but rather intends to file a *judicial* forfeiture action), it was not required to send notice of the seizure within sixty days."). Rather, the Government need only file a civil *judicial* forfeiture complaint within due process limitations.  *See United States v. Assets Described in Attachment A to the Verified Complaint for Forfeiture In Rem*, No. 6:09-CV-1852-ORL-28G, 2010 WL 1893327, at *6 (M.D. Fla. May 11, 2010) ("In civil forfeiture proceedings, due process considerations determine whether a complaint *in rem* was timely filed.")

In addition, pursuant to 19 U.S.C. § 1607(a)(1), property may not be administratively forfeited if it exceeds $500,000 in value.  Moreover, the Government is not required to initiate administrative forfeiture against assets under the $500,000 threshold where other assets related to the case are above this threshold value.  *See In re Funds on Deposit*, 919 F. Supp. 2d at 174-75 (finding seizures from multiple accounts may be aggregated for determination of administrative forfeiture threshold

where all accounts were "traced to one principal of intertwined entities"); *see also DWB Holding Co. v. United States*, 593 F. Supp. 2d 1271, 1272 (M.D. Fla. 2009) (finding Government could not initiate forfeiture of funds seized from two bank accounts because one account was over $500,000, even though the other account was not).

Moreover, the United States may discontinue any forfeiture proceeding in favor of the institution of forfeiture proceedings by State or local authorities under an appropriate State or local statute.  18 U.S.C. § 981(e).  Further, whenever forfeiture proceedings are discontinued by the United States in favor of State proceedings, the United States "may transfer custody and possession of the seized property to the appropriate State or local official upon the initiation of the proper actions by such officials.  *Id.*

## ARGUMENT

Based on the current state criminal case and related Freeze Order, as well as the jurisprudence governing Federal Rule of Criminal Procedure 41(g),  Mr. Shin's Motion for Return of Property should be denied for the following five reasons:

(1)  The Court should decline to exercise equitable jurisdiction to adjudicate the Rule 41(g) action because an adequate remedy at law exists in State related proceedings and Mr. Shin will not suffer irreparable injury;
(2)  Mr. Shin's due process rights have not been violated;
(3)  Mr. Shin's Motion for Return of Property is an improper vehicle for challenging the legality of the seizure;
(4)  Mr. Shin is not entitled to a probable cause hearing; and
(5)  Mr. Shin lacks standing to request the return of all subject assets.

## I.  Mr. Shin's Request for Return of Property Pursuant to Rule 41(g) Should Be Denied Because There Is an Adequate Remedy at Law

Mr. Shin moves for the return of property based, in part, on Federal Rule of Criminal Procedure 41(g), which states the following:

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must

be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Generally, a Rule 41(g) motion is brought in a criminal proceeding seeking the return of property seized for evidentiary purposes.  If there is no ongoing criminal case, an action brought pursuant to Rule 41(g) is deemed a civil complaint and is considered an equitable civil proceeding for the return of property.  *United States v. Caldwell*, 18-cr-00190-CMA, 2019 WL 7900061, at * 1 (D. Colo. Feb. 9, 2019) (citing *United States v. Clymore*, 245 F.3d 1195, 1201 (10th Cir. 2001)); *see also United States v. Copeman*, 458 F.3d 1070, 1071 (10th Cir. 2006) (Rule 41(g) is an equitable remedy).

Further, it is a general principle that, "courts of equity should not act when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  *Morales v. TransWorld Airlines, Inc.*, 504 U.S. 374, 381 (1992) (citation and internal quotation marks omitted).  Indeed, "Rule 41(g) jurisdiction should be exercised with caution and restraint."  *United States v. Bacon*, 900 F.3d 1234, 1237 (10th Cir. 2018) (citing *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir. 1988)). Therefore, "[a] district court should exercise its equitable power to grant relief only if the Rule 41(g) movant shows irreparable harm and an inadequate remedy at law." *United States v. Soto-Diarte*, 370 F. App'x 886, 887 (10th Cir. 2010) (quoting *Copeman*, 458 F.3d at 1071) (internal quotations omitted); *accord CFK, LLC v. United States*, 324 F.R.D. 236, 237 (D. Utah 2018); *United States v. Chaudary*, No. 12-20123-CM, 2013 WL 3895285, at *1 (D. Kan. July 29, 2013) ("Absent a showing of an inadequate remedy at law and irreparable harm, Rule 41(g) relief is not warranted.").  Therefore, Mr. Shin

has the burden to establish (1) an inadequate remedy at law; and (2) irreparable harm to justify the Court's exercise of equitable jurisdiction to grant the relief sought under Rule 41(g).  Mr. Shin cannot establish either.

**A.    The State Related Proceedings Provide an Adequate Remedy at Law and Deprive the Court of Jurisdiction**

First, the Court should not exercise equitable jurisdiction because Mr. Shin has an adequate remedy at law in the State proceedings. *See Matter of Search of Premises Known as 6455 S. Yosemite, Englewood, Colo.*, 897 F.2d 1549, 1556 n.6 (10th Cir. 1990) ("Once a movant has been indicted, an adequate legal remedy is available in the district court with jurisdiction over the indictment equitable jurisdiction is no longer necessary or proper").  "When state avenues of relief are open to the movant, he cannot show an inadequate remedy at law." *Copeman*, 458 F.3d at 1073 (internal quotation marks omitted) (brackets omitted); s*ee also United States v. Daprano*, No. CR 04-2040 JB, 2011 WL 5220234, at *5 (D.N.M. Oct. 26, 2011) ; *United States v. Campos*, No. CR 05-0222 RB, 2007 WL 9734048, at *1 (D.N.M. June 26, 2007) (finding Rule 41(g) movant has adequate remedy at law in pending state forfeiture case); *United States v. Walker*, No. 08-20152, 2009 WL 4508566, at *1–2 (D. Kan. Nov. 23, 2009) (finding defendant not entitled to relief under Rule 41(g) because he had not demonstrated that he did not have an adequate remedy at law in state forfeiture).

In this case, Mr. Shin has an adequate remedy of law in the State proceedings. The People of the State of Colorado has obtained an indictment, charging Mr. Shin with Colorado Revised Statute (CRS) § 18-5.5-102(1)(d), (3)(a)(IX) (Cybercrime -commit theft over $1 million) and CRS § 18-4-401(1),(2)(j),(6) (Theft over $1 million).  The FBI has also been served with a Freeze Order issued by state court judge, directing the FBI

11

to "freeze" the subject assets in its custody.  The state Freeze Order has been issued

by a separate jurisdiction, which cannot be adjudicated in this case.

In order to proceed with state forfeiture proceedings, the State of Colorado must

file a civil forfeiture complaint within 63 days of seizure by state authorities.  *See*

Colorado Revised Statute 16-13-307.3.5.  The State of Colorado has indicated its intent

to do so in this case within the requisite timeframe.[9]  Therefore based on the state's

initiation of criminal proceedings against Mr. Shin and its desire to handle the forfeiture

of the subject assets in related state forfeiture proceedings, the United States has

discontinued all federal forfeiture proceedings against the subject assets.   As Mr. Shin

acknowledges, the filing of a civil forfeiture proceeding or indictment may moot his

motion for return of property.  Mot. at p.24.

Although the indictment and state freeze order were issued after the initiation of

this matter, the timing is irrelevant.  *See CFK, LLC*, 324 F.R.D. at 238 (the movant

"obtained an adequate remedy at law and it is irrelevant that it filed its equitable motion

for return of property first."); s*ee also United States v. Ali*, 306 F.R.D. 694, 695-96

(N.D.Ala. 2015) (finding that, although a forfeiture complaint had not been commenced

at time of filing of motion for return of property, the seizure of assets indicated that

property was being retained for forfeiture purposes and that relevant statutory forfeiture

provisions gave movant an adequate remedy at law); *Matter of Seizure of Merchants &*

*Marine Bank Accts. XXXXX & XXXXX*, No. 1:19MC371-LG-JCG, 2019 WL 3558181, at

*3 (S.D. Miss. Aug. 4, 2019) (denying Rule 41(g) motion where government represented

---

[9] The United States will supplement the record in this case when it learns that such a complaint has been filed.

it intended to forfeit the assets through civil or criminal proceedings that had not yet been filed).

The filing of the civil forfeiture case, which must be filed within 63 days of seizure of the property by the state, will provide Plaintiff with a legal remedy prior to adjudication of the requested equitable relief.  If the State fails to file within the requisite timeframe, Mr. Shin will be granted the relief he seeks, that is the return of property.  Therefore, based upon the state criminal indictment, the freeze order, and the state's intent to file a civil forfeiture complaint,[10] the Court should decline to exercise its equitable jurisdiction and dismiss this action for lack of subject-matter jurisdiction.[11]

## B.     Mr. Shin Has Not Suffered Irreparable Harm

Second, Mr. Shin cannot show irreparable harm.  Because Rule 41(g) equitable jurisdiction should be exercised with caution and restraint, the movant must also establish irreparable harm.  *Bacon*, 900 F.3d at 1237.  "[I]rreparable harm refers to circumstances in which a . . . movant cannot wait for a legal remedy, thus justifying the court's equitable jurisdiction."  *Floyd*, 860 F.2d at 1006.

---

[10] In the event, the Court considers the State's intent to file a civil forfeiture complaint insufficient to provide the claimant with an adequate remedy at law and otherwise believes irreparable harm will occur if claimant's motion is denied, the United States would request that the court (1) either delay ruling on the Motion until September 10, 2021, to allow the State sufficient time to file a civil forfeiture complaint; or (2) impose reasonable conditions to protect access to the property and its use in later State forfeiture proceedings – specifically, to order Mr. Shin to not transfer, dissipate, liquidate, encumber, or otherwise take actions to impair the value of the subject assets.

[11] A district court is "not required to resolve all disputed factual issues" in a case in order to decide that a claimant has "an adequate remedy at law and thus the court should decline to exercise its equitable jurisdiction over his Rule 41(g) motion." *Bacon*, 900 F.3d at 1239.

In this case, Mr. Shin cannot demonstrate such harm to warrant this extraordinary discretionary relief.  Indeed, as Mr. Shin sets forth in his Motion, he found and exploited a software bug and acquired the subject assets within 11 hours.  These assets do not represent years of labor or investments made by Mr. Shin upon which he was relying for his daily living needs or survival. In fact, Mr. Shin still has access to, and is spending many of the tokens or assets traceable thereto, that he acquired in this exploit.  *See* Wall Aff., pp. 11-13, ¶ 28.

Mr. Shin asserts he has been harmed because the cryptocurrency market is volatile, and he is not able to trade in these newly acquired assets while they are in government custody.  However, the inability to trade and further profit from the seized assets is not the sort of irreparable harm requiring equitable relief.  S*ee e,g, Chaudary*, 2013 WL 3895285, at *1 (finding no irreparable harm where movant asserted they could not pay for attorney's fees or basic necessities without incurring further debt). Moreover, Mr. Shin alleges in the civil lawsuit he filed against ICON in October 2020, that it was ICON who first interfered and prevented his access to assets prior to any governmental involvement.  Thus, his ability to profit is purely speculative given his inability to access many of the assets prior to the issuance of any seizure warrants.

Lastly, if the Court were to exercise equitable jurisdiction and grant relief to Mr. Shin under Rule 41(g), "such a decision would effectively circumvent the procedures" of the state related criminal and civil forfeiture proceedings and "constitute a final decision on the merits of those proceedings."  *United States v. Douleh*, 220 F.R.D. 391, 396 (W.D.N.Y. 2003).  The Court would also be determining the validity of Mr. Shin's ownership in the exploited cryptocurrency, which is now the subject of two pending

cases,[12] and is at odds with evidence that not all of the subject assets seized are held in his name, as discussed *infra*.  Moreover, the return of the assets to Mr. Shin, who claims he needs them in order to "maximize returns," *see* Mot. at 26, would result in a strong likelihood that the funds would be dissipated before the conclusion of any state forfeiture proceedings.  *Douleh*, 220 F.R.D. at 396.

## II.    Mr. Shin's Fifth Amendment Due Process Rights Have Not Been Violated

Mr. Shin also asserts that he is entitled to the return of property based on violations to his Fifth Amendment due process rights.  Mot. at 24.  This argument by Shin is now moot in light of the Government's decision to discontinue federal civil forfeiture proceedings in lieu of the State proceedings.  Nonetheless, there has not been (and will not be in light of the state's 63-day deadline from seizure) a violation of Mr. Shin's Fifth Amendment Due Process rights by the continued seizure and freeze of the subject assets in FBI custody.

When a movant alleges that his due process rights have been violated because the Government has not initiated forfeiture proceedings, has not provided notice, and has not returned the property, "[t]he test to determine whether a delay in filing a forfeiture action is reasonable 'involves a weighing of four factors: length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'"  *See DWB Holding Co.*, 593 F. Supp. 2d at 1272 (citing *United States v. $8,850 in U.S. Currency,* 461 U.S. 555 (1983)).  Despite his assertions to the contrary, the factors do not weigh in Mr. Shin's favor.

---

[12] The People of the State of Colorado v. Mark Shin, 21cr1445, District Court, County of Arapahoe, Colorado; *Mark Shin v. Icon Foundation*, 20-cv-07363-WHO, U.S. District Court, Northern District of California.

**A.      Length of the Delay**

First, the seizures of the subject assets were made as part of an ongoing criminal investigation. Many of the seizures occurred as recently as March, April and May 2021, with the oldest being in December 2020 (just over six months ago).  Given that many of the subject assets were not even received by the Government until March and April 2021, even if the Government were able to and had initiated an administrative forfeiture, the deadline to file a judicial proceeding against the assets would not yet have expired. *See DWB Holding Co.*, 593 F. Supp. 2d at 1272 (noting deadline to initiate judicial proceeding against funds would not have yet expired even if administrative forfeiture had been noticed for assets seized four months prior to motion for return of property). Likewise, in light of the State's very recent criminal indictment, which is a pre-requisite to filing a complaint, Colo. Rev. Stat. § 16-13-305, the State could not have filed a civil forfeiture complaint before June 29, 2021, and has until 63 days from the date of seizure to do so.  Accordingly, the delay in this case is not so significant to trigger a due process concern.  *See $8,850*, 461 U.S. at 569-570 (finding 18-month delay justified); *see also United States v. $874,938.00 in U.S. Currency*, 999 F.2d 1323, 1325 (9th Cir. 1993) (finding 11-month delay not an unreasonable delay in light of totality of circumstances).

**B.      Reason for the Delay**

Second, the Government did not commence civil forfeiture proceedings prior to the state freeze order because the criminal investigation was ongoing, and the investigation involves complex issues, including identifying and tracing the subject assets.  *See $8,850,* 461 U.S. at 565 (noting that when seizure is of necessity and

hasty, "[b]oth the Government and the claimant have an interest in a rule that allows the Government some time to investigate the situation in order to determine whether the facts entitle the Government to forfeiture"); *United States v. $147,900.00 in U.S. Currency*, No. 1:06CV197, 2009 WL 903356, at *6 (M.D.N.C. Mar. 31, 2009), *aff'd in part, vacated in part, remanded sub nom. United States v. Currency, U.S., $147,900.00*, 450 F. App'x 261 (4th Cir. 2011) (on other grounds) (finding no unreasonable delay when 8 months of overall 11-month delay was attributable to time needed to conduct further investigation).

The Government has also not been lax or dilatory in its efforts to move a case forward.  This case requires detailed analysis of software applications and programs, decentralized cryptocurrency exchanges, and the transmission of data through computers across the globe.  It also entails the complex tracing and analysis of hundreds of cryptocurrency transactions, involving numerous exchanges and cryptocurrencies. *See $8,850,* 461 U.S. at 568 (considering diligence of the Government); *$874,938.00,*  999 F.2d at 1325 (finding no indication that Government was not diligent in its investigation or evaluation to justify 11-month delay).  Therefore, given the totality of the circumstances, there has been no undue delay.

> ### C.     Assertion of Right and Prejudice to Mr. Shin

Although the Government does not dispute that Mr. Shin has consistently asserted his rights throughout this process, Mr. Shin has not satisfied the fourth factor by showing that the delay has caused him prejudice. "The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits." *See $8,850,* 461 U.S. at 569.  Mr. Shin cannot and has not asserted in his motion for

return of property that the delay of, at most, six months has resulted in any prejudice to his ability to defend against the action in the future.  Although Mr. Shin recently asserted in a separate litigation that he is prejudiced by the delay because evidence is dissipating, specifically that certain information is no longer publicly available on the Icon Network, this argument is unavailing in light his ongoing civil litigation against Icon Foundation, which has been pending since October 2020 and would provide for such discovery and preservation thereof.

Moreover, the evidence he claims is dissipating is not within the control or possession of the United States, but a third-party – Icon Foundation.  Thus, it is difficult to ascertain how a more expeditious filing of a civil forfeiture complaint would significantly expedite his ability to prevent the dissipation of such evidence that could not more readily be obtained through his current ongoing civil litigation. *See United States v. One 1993 Cadillac Seville Sts.*, No. CIV. WQ09202816, 2004 WL 1462243, at *4 (D. Md. June 7, 2004) (finding no unreasonable delay even where the government failed to satisfy the first two factors, justifying its delay for over 16 months, because movant had not invoked his judicial remedies and had not shown that the delay had prejudiced his ability to present a previously available defense).  In light of the above, Mr. Shin cannot demonstrate a violation of his due process rights under the Fifth Amendment.

### III.     The Subject Crypto-Assets Were Legally Seized

Mr. Shin also asserts that the assets were illegally seized because: (1) he did not commit a crime so the finding of probable cause must have been erroneous; and (2) the "FBI demanded that the exchanges liquidate entire crypto-asset accounts" that resulted "in the significant overcollection of crypto-assets by the government, beyond the bounds

of the seizure warrants." Mot. at 25-26. Despite Mr. Shin's arguments, Mr. Shin has an adequate remedy at law and no Fourth Amendment violation occurred.

### A.    Mr. Shin Has an Adequate Remedy at Law to Contest the Legality of the Seizures in the State Proceedings

As discussed *supra*, Mr. Shin cannot challenge the legality of a seizure through a Rule 41(g) motion where an adequate remedy at law exists in related proceedings to do so. *Frazee v. IRS*, 947 F.2d 448, 450 (10th Cir. 1991) ("That remedy [civil forfeiture proceeding] is adequate because the legality of the seizure may be tested in a judicial forfeiture."). In this case, Mr. Shin may challenge the lawfulness of these seizures in the State proceedings. *See* Colo. R. Crim. P. 41(e) (2018); *People of the State of Colorado v. Taube*, 843 P.2d 79, 82 (Colo. Ct. App. 1992) (finding Fourth Amendment protections apply in civil forfeiture proceedings); *see also Matter of Searches of Semtex Indus. Corp.,* 876 F. Supp. 426, 432 (E.D.N.Y. 1995) (denying Rule 41(g) motion because, *inter alia*, "the validity of the search may be challenged by the petitioners in a motion to suppress evidence under Rule 12, if and when an indictment is filed"); *Douleh,* 220 F.R.D. at 397 ("If the grand jury should return an indictment against defendant, his unlawful seizure claim may be fully considered upon a motion to suppress. Defendant thus has an adequate remedy at law regarding his unlawful seizure claim—a Rule 12 motion to suppress—and, therefore, his Rule 41(g) motion is not appropriately before this Court and should be denied."). Accordingly, the Court should decline equitable jurisdiction over the legality of the seizures as Mr. Shin has an adequate remedy at law.

### B.    Assets Identified in the Seizure Warrants Were Legally Seized

A government "'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v.*

*Jacobsen,* 466 U.S. 109, 113 (1984).  Under § 981(b)(2), seizures shall generally be made pursuant to a warrant, except that a seizure may be made without a warrant if there is probable cause to believe that the property is subject to forfeiture and another exception to the Fourth Amendment warrant requirement would apply. 18 U.S.C. § 981(b)(2)(B)(ii).

In this case, the Government obtained numerous seizure warrants based on a probable cause finding by two separate magistrate judges.  Thus, there can be no assertion that the assets specifically identified and seized pursuant to a warrant were illegally seized.  *See supra*, Relevant Facts, ¶5, Chart A.  Mr. Shin's real assertion here is that he wishes to challenge the probable cause finding of the Magistrate Judges; however, as discussed *infra*, he is not entitled to challenge the probable cause finding of the Court.

### C.  Assets Provided Voluntarily by Third-Party Cryptocurrency Exchanges Were Legally Taken into Custody Without a Warrant

Many assets in this case were voluntarily transferred to the Government; a voluntary transfer does not constitute a seizure.  *See supra*, Relevant Facts, ¶5, Charts B and C.  "A consensual transfer is by definition not a seizure."  *See United States v. Sherwin,* 539 F.2d 1, 7 (9th Cir.1976); *see also Caldwell v. United States*, 338 F.2d 385, 388 (8th Cir. 1964) ("seizure connotes a forcible dispossession from the owner, not a voluntary surrender"). The Government may properly receive and accept evidence from third parties without implicating Fourth Amendment protection.  *United States v. Steiger*, 2006 WL 3450140, *20 (M.D.Ala. 2006) (finding officer's review of evidence sent to him did not amount to a search for purposes of the Fourth Amendment); *United States v. Eidson*, No. 5:18-CR-40023-HLT, 2018 WL 6573126, at *4 (D. Kan. Dec. 13, 2018)

(receipt of evidence from a third-party after a government search was not the fruit of a government search).

The protections of the Fourth Amendment only apply to governmental action: "it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *United States v. Benoit*, 713 F.3d 1, 9 (10th Cir. 2013) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113 (1984)).  Search and seizure by a private person only raises Constitutional concerns "if the government coerces, dominates, or directs the actions of a private person."  *U.S. v. Souza*, 223 F.3d 1197, 1201 (10th Cir. 2000) (quoting *Pleasant v. Lovell*, 876 F.2d 787, 796 (10th Cir. 1989)).

In this case, several of the cryptocurrency exchanges had frozen numerous wallets held at their exchanges shortly after Mr. Shin's exploitation of a software bug, preventing his access to these wallets, ***prior to*** the service of any seizure warrant by the government.  *See* Wall Aff. p.6, ¶ 16.  After service of the seizure warrants and other process, many third-party exchanges then provided assets not specifically identified in the warrants to the FBI (hereinafter "non-warrant assets").  *See supra* Relevant Facts ¶5, Charts B and C.  Because many of the third-party exchanges[13] had seized/frozen the non-warrant assets prior to any communication with law enforcement, it cannot be asserted that the Government coerced, dominated, or directed the actions of the cryptocurrency exchanges in executing the seizure/freeze of those particular non-

---

[13] Only Kraken and Coinbase had not frozen cryptocurrency related to the exploited ICX prior to the execution of the seizure warrants.  *See Relevant Facts*, ¶10, *supra*.

warrant assets.  The Government's subsequent receipt of these non-warrant assets was the result of a voluntary transfer and did not retroactively transform the initial seizure/freeze by the exchanges into a government action.  *See e.g. United States v. Sherwin,* 539 F.2d 1, 6 (9th Cir.1976) ("[O]nce a private search is completed, the subsequent involvement of government agents does not retroactively transform the original intrusion into a governmental search.").

Likewise, the Government did not demand, coerce, or direct that these non-warrant assets be turned over. Rather, often, the exchanges transferred the assets without the Government's knowledge because they were sent directly to the Government's wallets.  This often occurred several months after the initial service of a seizure warrant.[14]  *See* Wall Aff., pp.2-5, ¶¶5-10.  Likewise, the Instructional Letter from Agent Wall did not turn the third-party exchanges into government agents, as several of the non-warrant assets came from wallet addresses not identified in the warrant or known to the Government.  *See supra*, Relevant Facts ¶5, Chart C.  The Instructional Letter, which requested that the exchanges "please liquidate the cryptocurrency wallet/address *listed in* the attached Federal Seizure Warrant," cannot be reasonably construed as having demanded—or even requested—that the exchanges provide assets to the Government held in wallet addresses not identified or mentioned in the warrant.  To the extent cryptocurrency exchanges provided cryptocurrency held in an identified wallet address, but not cryptocurrency specifically identified in Attachment A, *see supra*, Relevant Facts ¶5, Chart B, the Instructional letter's reference to the seizure

---

[14] Upon receipt of these non-warrant assets, the Government requested supporting documentation from the third-party cryptocurrency exchanges to properly identify the origin, ownership, and tracing to the unauthorized ICX of the non-warrant assets.

warrant makes clear that the Government is requesting compliance with a warrant and is not attempting to coerce or direct an entity to go outside of the bounds of the warrant on its behalf.  Indeed, Binance.com, which sent all of the non-warrant assets from wallet addresses identified in the warrant, explicitly stated that their cooperation with the FBI was strictly voluntary and they were not subject to the jurisdiction of the United States. *See* Wall Aff., p.9, ¶23. "If a transfer is voluntary, then it is not a seizure and the fourth amendment's reasonableness standard is simply inapplicable."  *See Sherwin*, 539 F.2d at 8.

Accordingly, because the cryptocurrency exchanges were not acting as government agents when they initially interfered with Mr. Shin's access to the non-warrant assets or when they transferred the assets to the Government, the voluntary transfer and subsequent receipt of the non-warrant assets by the Government were not seizures and the Fourth Amendment is inapplicable.

> **D.    A Consensual Seizure by Third-Party Custodian is an Exception to the Warrant Requirement**

Consent is an exception to the Fourth Amendment's requirement of a warrant. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973).  An officer may rely on the consent of a third-party if that party has actual or apparent authority.  *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004). Here, it is unquestionable that the cryptocurrency exchanges had actual authority and custody over the non-warrant assets at the time of the alleged seizure.  *See United States v. Clutter*, 674 F.3d 980, 984–85 (8th Cir. 2012) (finding no Fourth Amendment seizure occurred when defendant was not in possession of computers because he was in jail, and possessor of computers consented to their seizure).  All of the exchanges had user agreements to

which Mr. Shin agreed that provided that they reserved the right to terminate, suspend, or restrict his access to his wallet.  *See* Wall Aff., pp.6-9, ¶¶16-22. The Government could also reasonably rely upon the exchanges' apparent authority over the non-warrant assets based on these user agreements and the exchanges' representations.

As outlined above, there is no evidence that the cryptocurrency exchanges' consent to the seizure was involuntary.  Binance.com explicitly stated that their cooperation was completely voluntary.  Moreover, the exchanges have an independent interest in not being used as a means to launder proceeds of criminal conduct.  "(I)t is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals." *Coolidge v. New Hampshire*, 403 U.S.443, 488 (1971).

## IV.     Mr. Shin is Not Entitled to a Probable Cause Hearing

Mr. Shin also requests a probable cause hearing with respect to the "over-collected" crypto-assets.[15] Mot. at 27.  Mr. Shin is not entitled to such a hearing.  Again, Mr. Shin is requesting this Court to sit in equity when he has an adequate remedy in a court of law.  Any Fourth Amendment challenges should be heard in the pending State criminal and civil forfeiture proceedings.

Moreover, in *Kaley v. United States*, the Supreme Court noted it "has repeatedly declined to require the use of adversarial procedures to make probable cause determinations." 571 U.S. 320, 338 (2014).  With respect to all of the assets, a probable cause determination has been made as to as to their connection to the related to the

---

[15] Mr. Shin also requests copies of the affidavits filed in support of the seizure warrants. As the government is discontinuing its civil forfeiture proceedings, the Government will move to unrestrict these documents so that they may be made available to Mr. Shin.

State criminal proceedings by virtue of the freeze order.  A probable cause determination has also been made by two federal judges.  "In reviewing seizure warrants, [courts] accord great deference to the probable cause determinations made by the magistrates and judges who issue warrants."  *Marine Midland Bank, N.A. v. United States,* 11 F.3d 1119, 1125 (2d Cir.1993) ("[W]e resolve any doubts in favor of upholding warrants."). Mr. Shin does not have the right to relitigate the probable cause finding of the state and federal magistrate judges.  *See United States v. Any & all Funds on Deposit in Acct. No. 0139874788, at Regions Bank, held in the name of Efans Trading Corp.*, 2015 WL 247391, *14 (S.D.N.Y. Jan. 20, 2015) (finding claimant has no right to relitigate the probable cause finding made by two magistrate judges).

Moreover, due process does not require an adversarial hearing for assets seized by the Government.  *Id.* (applying *Matthews v. Eldridge* test to determine if claimant was entitled to probable cause hearing for assets seized without a warrant); *see also Matthews v. Elridge*, 424 U.S. 319, 334-335 (1976).  Under the *Mathews* test, courts consider three distinct factors: (i) the private interest that will be affected by the official action; (ii) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (iii) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. *Hattrup V. United States*, 845 F. App'x. 733, 737 (citing *Mathews*, 424 U.S. at 335).

The first factor (the private interest affected) weighs in favor of the Government. As with the irreparable harm analysis, Mr. Shin's interest in having this property returned to him is not extraordinary.  Likewise, the second factor (the Government's

interest) also tilts in favor of the Government.  The Supreme Court has noted that the Government has a considerable interest in avoiding such a hearing.  "At the least, such an adversarial proceeding—think of it as a pre-trial mini-trial (or maybe a pre-trial not-so-mini-trial)—could consume significant prosecutorial time and resources. The hearing presumably would rehearse the case's merits, including the Government's theory and supporting evidence. And the Government also might have to litigate a range of ancillary questions relating to the conduct of the hearing itself[.]"  *Kaley,* 571 U.S. at 335 (majority opinion).  Finally, the third factor (risk of erroneous deprivation) also weighs in favor of the Government.  As discussed *supra*, Mr. Shin has an adequate procedure to contest the initial seizure, and subsequent freezing, of his property through the state proceedings. *See also Kaley*, 571 U.S. at 339 ("No doubt the [defendants] could seek to poke holes in the evidence the Government offered . . . to support those allegations. No doubt, too, the [defendants] could present evidence of their own, which might cast the Government's in a different light[.] Our criminal justice system of course relies on such contestation at trial[.]").  Moreover, the risk of error for erroneous deprivation is minimal given that a state judge has found that they should be frozen based on probable cause related to state criminal statutes and two federal judges found probable cause which has the same link to the alleged scheme.  *See also Efans Trading Corp.*, 2015 WL 247391 at *15 (finding low "risk of error" for lack of probable cause for assets seized without a warrant when a magistrate judge had already found probable cause to seize related assets that had the same link to the alleged scheme).  Mr. Shin does not dispute that all of the assets at issue were derived from the same conduct.

Put simply, at the crux of Mr. Shin's Motion for Return of Property is the desire to prematurely litigate the merits of his alleged federal criminal conduct.  Mot. at 20-26. Any such desire to litigate the merits of any underlying predicate federal offenses to federal forfeiture are now moot in light of the Government's decision to forego federal forfeiture.  Accordingly, Mr. Shin's is not entitled to an immediate probable cause hearing, and his request for such should be denied.

## V.     Standing

Finally, in his motion, Mr. Shin asserts that all of the assets in government custody should be returned to him.  Mot. at 27.  However, it appears several of the assets are from wallets that belong to individuals other than Mr. Shin.  *See* Wall Aff., pp.10-11, ¶¶25-27.  Thus, Mr. Shin has not established entitlement to all of the property requested be returned.  "In a Rule 41(g) proceeding, lawful possession must be established by a preponderance of the evidence."  *In re Seizure of Property*, No. CIV-11-37-C, 2011 WL 1327430, at *2 (W.D. Okla. Apr. 6, 2011) (*citing United States v. Maez*, 915 F.2d 1466, 1468 (10th Cir. 1990)).  Moreover, Mr. Shin cannot assert a third-party's rights to property under Rule 41(g).  A movant "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1056 (9th Cir. 1991) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc*., 454 U.S. 464, 474 (1982)); *see United States v. Gonzalez*, 780 Fed. App'x 828, 833 (11th Cir. 2019) (unpublished).  Insomuch as Mr. Shin is seeking the return of items on behalf of other individuals, he lacks standing to do so.

## CONCLUSION

Wherefore, the United States submits that Mr. Shin's Motion for Return of Property be denied because: (1) the Court lacks subject matter jurisdiction to adjudicate the Motion because an adequate remedy in law exists in state related proceedings; (2) Mr. Shin's due process rights have not been violated; (3) Mr. Shin's Motion for Return of Property is the improper vehicle for challenging the legality of the seizure; (4) Mr. Shin is not entitled to a probable cause hearing; and (5) Mr. Shin lacks standing to request the return of all subject assets.

DATED this 12th day of July 2021.

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By: *s/ Tonya S. Andrews*
Tonya S. Andrews
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Phone: (303) 454-0100
Email: tonya.andrews@usdoj.gov
*Attorney for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July 2021, I electronically filed the foregoing with the Clerk of Court using the ECF system, and sent a copy via email to the following:

Eric. S. Rosen
Email: erosen@rcfllp.com

Kyle W. Roche
Email: kyle@rcfllp.com

Jeffrey S. Pagliuca
Email: jpagliuca@hmflaw.com

s/ *Jasmine Zachariah*
FSA Data Analyst
United States Attorney's Office