IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 21-y-00065-WJM-SKC

In re: Government Seizure of ICX Tokens

---

**MARK SHIN'S REPLY IN SUPPORT OF MOTION PURSUANT TO FED. R. CRIM. P. 41(g) AND THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION FOR THE RETURN OF PROPERTY OR FOR A PROBABLE CAUSE HEARING**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

I.   INTRODUCTION ........................................................................................................ 4

II.  FACTUAL BACKGROUND ........................................................................................ 4

    A.   THE SUPREME COURT DECIDED *VAN BUREN V. UNITED STATES* IN JUNE 2021, A DECISION THAT EFFECTIVELY ENDED THE GOVERNMENT'S FEDERAL CASE AGAINST MR. SHIN. ............................................................................................ 4

    B.   MR. SHIN MOVED TO RECONSIDER MAGISTRATE JUDGE HEGARTY'S DECISION TO GRANT THE GOVERNMENT EXTRA TIME TO FILE THEIR CIVIL ASSET FORFEITURE COMPLAINT. ............................................................................. 5

    C.   THE STATE OF COLORADO FILED A CRIMINAL INDICTMENT AGAINST MR. SHIN SHORTLY AFTER COMMENCING ITS INVESTIGATION. ............................ 6

    D.   THE FEDERAL GOVERNMENT REVERSED COURSE AND DECLINED TO PURSUE FORFEITURE OF THE SUBJECT ASSETS. ................................................... 7

III. ARGUMENT .................................................................................................................. 8

    A.   THE GOVERNMENT HAS NO LEGAL AUTHORITY TO RETAIN THE SUBJECT CRYPTO-ASSETS. ........................................................................................................ 8

        1.   The Federal Forfeiture Laws Mandate the Immediate Release of the Seized Crypto-Assets. ...................................................................................................................... 8

        2.   State Proceedings are Not an Adequate Remedy at Law. ........................................... 10

        3.   Mr. Shin Will Suffer Irreparable Harm if His Property Is Not Released to Him. ...... 12

        4.   The State Court's Indictment (and freeze order) Should be Given No Deference. .... 13

    B.   MR. SHIN'S FIFTH AMENDMENT RIGHTS HAVE BEEN VIOLATED. ................. 16

    C.   CRYPTO-ASSETS WERE ILLEGALLY SEIZED AND RETAINED BY THE GOVERNMENT ........................................................................................................... 17

    D.   MR. SHIN HAS MET HIS BURDEN TO OBTAIN A *FRANKS* HEARING ................ 20

IV.  CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

## Cases

*Connecticut Dep't of Env't Prot. v. O.S.H.A.*,
   356 F.3d 226 (2d Cir. 2004) ........................................................................ 13, 19

*Dixon v. von Blanckensee*,
   994 F.3d 95 (2d Cir. 2021) ................................................................................ 9

*Franks v. Delaware*,
   438 U.S. 154 (1978)........................................................................................ 20

*Lowther v. United States*,
   480 F.2d 1031 (10th Cir. 1973) ................................................................. 16, 19

*Matthews v. Elridge*,
   424 U.S. 319 (1976)........................................................................................ 19

*McCulloch v. Maryland*,
   17 U.S. 316 (1819)............................................................................................ 9

*People v. Clayton*,
   728 P.2d 723 (Colo. 1986).............................................................................. 15

*United States v. Campos*,
   No. CR 05-0222 RB, 2007 WL 9734048 (D.N.M. June 26, 2007) ......................... 11

*United States v. Clymore,*
   245 F.3d 1195 (10th Cir. 2001) ...................................................................... 12

*United States v. Copeman*,
   458 F.3d 1070 (10th Cir. 2006). ..................................................................... 11

*United States v. Daprano*,
   No. CR 04-2040 JB, 2011 WL 5220234 (D.N.M. Oct. 26, 2011)........................... 11

*United States v. Edwards*,
   No. 16-CR-20070--SRB, 2020 WL 5038890 (D. Kan. Aug. 26, 2020) .................. 12

*United States v. Farese*,
   No. 80 CR. 063 (MJL), 1989 WL 74963 (S.D.N.Y. June 26, 1989) ....................... 16

*United States v. McRae*,
   81 F.3d 1528 (10th Cir. 1996) ........................................................................ 17

*United States v. Medlin*,
   842 F.2d 1194 (10th Cir. 1988) ...................................................................... 17

*United States v. Shigemura,*
  664 F.3d 310 (10th Cir. 2011) ........................................................................ 12, 17

*Van Buren v. United States,*
  593 U.S. __ (2021) ................................................................................................ 5

**Other Authorities**

18 U.S.C. § 1030 ..................................................................................................... 5

18 U.S.C. § 981 .................................................................................................... 7, 8

18 U.S.C. § 983 ............................................................................................. 8, 9, 13

C.R.S. 18-4-401 .................................................................................................... 14

Colo. R. Crim. P. 16 Part III(c) ............................................................................. 7

## I.     INTRODUCTION

Over nine months after beginning the process of seizing Mr. Shin's crypto-assets, and two months after being granted permission to extend the civil asset forfeiture complaint deadline by 60 days, the government has finally relented and decided *not* to pursue the forfeiture of Mr. Shin's seized assets. *See* <u>Exhibit A</u> [notice of declination filed at 21-mc-00117, ECF No. 23]. The government has effectively conceded what Mr. Shin has been saying all along: he did not commit a federal crime and his crypto-assets are not the proceeds of a federal crime. But despite that concession, the government *still* refuses to return Mr. Shin's assets. Instead, the government argues that it is entitled to retain Mr. Shin's assets because the State of Colorado *might* initiate forfeiture proceedings *sometime in the future*.  That is not how the forfeiture statutes work, and that certainly does not comport with the due process mandated by the Fifth Amendment to the United States Constitution. Accordingly, this Court should grant Mr. Shin's Rule 41(g) motion and return the assets that rightfully belong to him.

## II.     FACTUAL BACKGROUND

Mr. Shin relies upon the facts set forth in his initial brief filed in support of his Rule 41(g) motion as well as the following additional facts relevant to this motion.

### A.  THE SUPREME COURT DECIDED *VAN BUREN V. UNITED STATES* IN JUNE 2021, A DECISION THAT EFFECTIVELY ENDED THE GOVERNMENT'S FEDERAL CASE AGAINST MR. SHIN.

Mr. Shin's Rule 41(g) motion was filed with this Court on May 12, 2021. *See* ECF No. 1. In that motion, Mr. Shin explained that the Computer Fraud and Abuse Act (CFAA) was one of the primary statutes related to the conduct at issue, and further, that although the CFAA was under review by the Supreme Court in *Van Buren v. United States*, his conduct in this matter did not violate any plausible reading of that statute.

On June 3, 2021, the Supreme Court decided *Van Buren*, rejecting the government's expansive interpretation of the CFAA and effectively ending this case.  593 U.S. __ (2021).  The Court explained that the CFAA created criminal liability for two kinds of violations. First, the CFAA applied to those who "knowingly access[] a computer without authorization," 18 U.S.C. § 1030(a)(2), which encompasses only "so-called outside hackers—those who access a computer without any permission at all." *Van Buren*, 593 U.S. __, __ (2021) (slip op. at 13).  This prong could not apply to Mr. Shin, because he did not hack into or manipulate ICON's network, and he was fully permitted to access and use the ICON network.

The second prong of the CFAA covered those who "exceed[ ] authorized access," 18 U.S.C. § 1030(a)(2), which applies to a so-called "inside hacker," who "accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren*, 593 U.S. __, __ (2021) (slip op. at 13).  This prong also could not apply to Mr. Shin. The ICX tokens at issue were created through Mr. Shin's initiation of the "redelegation process"—a function within the ICON Network that allows someone to delegate their voting rights to another. *See* ECF No. 1; *see also* Exhibit B [Second Amended Complaint filed at 20-CV-07363-WHO in the Northern District of California] ¶¶ 73-77. Simply put, every user of the ICON Network has this function available to them, so Mr. Shin's use of the redelegation process could not have been "off limits to him."

## B.  MR. SHIN MOVED TO RECONSIDER MAGISTRATE JUDGE HEGARTY'S DECISION TO GRANT THE GOVERNMENT EXTRA TIME TO FILE THEIR CIVIL ASSET FORFEITURE COMPLAINT.

As set forth in Mr. Shin's Rule 41(g) motion, based on his notice of claim, a civil asset forfeiture complaint needed to be filed by the government on or before May 13, 2021. On May 11, 2021, the government informed Mr. Shin's counsel that it had moved the previous day *ex parte* for an extension of time to file a complaint. The *ex parte* motion was granted by Judge

Michael E. Hegarty. Given that Mr. Shin did not believe that the government had shown or could show the requisite "good cause" justifying an extension due to the fact that the evidence showed that Mr. Shin had not committed a federal crime, Mr. Shin moved Judge Hegarty to reconsider his decision. *See* 21-MC-00117-MEH, ECF No. 8.

The hearing on Mr. Shin's motion for reconsideration was held on June 10, 2021. At that hearing, Judge Hegarty agreed that, in light of the Supreme Court's recent *Van Buren* decision, "arguing no criminal conduct has a lot of appeal." Exhibit C [excerpts of June 10, 2021 oral argument transcript] at 10. However, relying on the government's assertions that it was still investigating the matter and needed to delay the filing of a civil complaint at least in part because of an ongoing criminal investigation (*see, e.g.*, Transcript at 6-7 ("… that's an option here too. We could file a [civil] complaint and then we can immediately move to stay it because we aren't ready to litigate it and it might jeopardize an ongoing criminal case")), Judge Hegarty denied Mr. Shin's motion for reconsideration on June 16, 2021, holding, as relevant here, that "the issue here is not merely that the government is continuing its investigation, but that the investigation is directly tied to broader ongoing criminal investigations." 21-MC-00117, ECF No. 20. Judge Hegarty did recognize, however, that Mr. Shin could be innocent of any federal crime, writing that under *Van Buren*, "Mr. Shin may very well be correct that he has committed no crime." *Id.* at 4.

## C.   THE STATE OF COLORADO FILED A CRIMINAL INDICTMENT AGAINST MR. SHIN SHORTLY AFTER COMMENCING ITS INVESTIGATION.

On June 29, 2021, *just 19 days* after the hearing before Judge Hegarty, an Arapahoe County grand jury indicted Mr. Shin for violations of the following Colorado laws: cybercrime-commit theft over $1 million, theft over $1 million, and money laundering. *See* Exhibit D

[indictment]. The indictment did not contain a forfeiture provision, and the indictment was not provided to Mr. Shin until July 12, 2021.[1]

### D.  THE FEDERAL GOVERNMENT REVERSED COURSE AND DECLINED TO PURSUE FORFEITURE OF THE SUBJECT ASSETS.

On the morning of July 12, 2021, ADA Darcy Kofol sent an email to Mr. Shin's counsel attaching a copy of the state indictment. Later that same day, the government filed a notice with Judge Hegarty in 21-MC-00117, informing the Court that the State of Colorado had indicted Mr. Shin for state crimes on June 29, 2021, and that as a result, the United States "will not be filing a federal civil forfeiture complaint by the July 12, 2021 deadline and has foregone federal forfeiture proceedings in favor of state related proceedings, pursuant to 18 U.S.C. § 981(e)." Exhibit A [declination]. Further, the government explained that on July 1, 2021, the government had "requested approval from the Acting United States Attorney to proceed with a parallel federal forfeiture proceeding to the State of Colorado's criminal case," but on "July 9, 2021, that request was denied." *Id* ¶12. In effect, the government conceded that it did not have either a criminal or civil case against Mr. Shin, and that all further proceedings would be in state court.

Despite the fact that any federal investigation has effectively been terminated by the government, and without the existence of a state forfeiture action, the government *still* refuses to return the property seized from Mr. Shin and others. The government's argument essentially hangs on an as-yet-to-be produced state court "freeze" order that purportedly directs the FBI (not a state agency) to retain custody of Mr. Shin's property.

---

[1] Information that Mr. Shin has obtained in discovery from state court prosecutors indicates that the state investigation began, at the instigation of federal agents, on or about June 10, 2021, the same day as the hearing before Judge Hegarty. Mr. Shin will be seeking an order from the state court judge allowing him to use the state discovery in this federal case. *See, e.g.*, Colo. R. Crim. P. 16 Part III(c).

### III.    ARGUMENT

**A. THE GOVERNMENT HAS NO LEGAL AUTHORITY TO RETAIN THE SUBJECT CRYPTO-ASSETS.**

> **1.   <u>The Federal Forfeiture Laws Mandate the Immediate Release of the Seized Crypto-Assets.</u>**

The rules concerning federal forfeiture are straightforward. Pursuant to Title 18, U.S.C. § 981(b), the United States is entitled only to seize property that is subject to forfeiture, meaning, as relevant here, property that is the proceeds of a crime. The government now concedes that the seized assets were *not* the proceeds of any federal crime; it has disavowed its intention to proceed with a civil asset forfeiture complaint and it has ceded any criminal case to the State of Colorado. The law further mandates that when a valid claim has been filed (as it has been in this case), and the government declines to file a civil forfeiture complaint or bring criminal charges, the government "*shall* promptly release the property pursuant to regulations promulgated by the Attorney General." 18 U.S.C. § 983(a)(3)(B) (emphasis added). Accordingly, under the plain language of the relevant statutes, the government must relinquish the seized assets now. *See also* <u>Exhibit E</u> [Asset Forfeiture Policy Manual (2021)] pp. 14-15 ("There may be instances in which a prosecutor declines to proceed with a judicial forfeiture after a claim has been filed in an administrative proceeding. Once that decision is made and the federal government no longer has a legal basis for holding the seized property (*i.e.* it is not evidence of a violation of law), the agency that seized the property *must* return it to the appropriate party.").

To justify the continued seizure of the crypto-assets, the government relies upon Title 18, U.S.C. § 981(e), which provides that when federal forfeiture actions are discontinued in favor of State or local proceedings, "the United States may transfer custody and possession of the seized property to the appropriate State or local official immediately upon the *initiation of the proper*

*actions by such officials.*" Here, the government does not contend that state officials have initiated forfeiture proceedings (either civil or criminal); in fact, the state indictment (Exhibit D) contains no forfeiture charge and the seized assets remain in FBI custody. *See* Exhibit F [July 12, 2021 letter to counsel].

To compensate for this, the government cites an alleged state freeze order that apparently mandates that the FBI (and not a state agency) retain control of the assets. *See* ECF No. 12 ¶¶ 18-19. Neither government counsel (nor Mr. Shin's counsel) has been provided with a copy of this freeze order. *See* ECF No. 12 at 7 n.8. But even if this state court freeze order does exist, it certainly does not constitute the "initiation of the proper [forfeiture] actions" by the state officials, as required. Moreover, this freeze order, which apparently directs the FBI to maintain custody of the crypto-assets and not transfer the assets to the state, directly conflicts with 18 U.S.C. § 983(a)(3), which mandates the release of seized assets to the aggrieved parties in the absence of a valid transfer to state or local officials. Federal law, of course, trumps a state court's order. *McCulloch v. Maryland*, 17 U.S. 316, 436 (1819) ("The States have no power ... to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress."); *see also Dixon v. von Blanckensee*, 994 F.3d 95, 105 (2d Cir. 2021) ("The Supremacy Clause renders a mandatory order from a state court to a federal officer void."). Accordingly, without the initiation of valid state forfeiture proceedings, any state court freeze order directing that the FBI maintain assets is of no force or effect.

Given that the freeze order is null and void, and that federal law mandates the release of Mr. Shin's property, the only question is to whom the seized crypto should be released. The Asset Forfeiture Manual too answers that question, stating that "[i]n determining the appropriate party to whom to return the seized property, the seizing agency should follow the same guidance

pursuant to quick release, including providing prompt notification to the appropriate party."
Exhibit E at 15. For property such as currency, "quick release" mandates that currency should
"usually" be "returned to the person from whom it was seized." *Id.* at 14.

### 2.   State Proceedings are Not an Adequate Remedy at Law.

The government urges this court to deny this Rule 41(g) motion because Mr. Shin has an
adequate remedy in the state courts to recover his property.  That is not true.

It is the FBI that is holding Mr. Shin's property; the State of Colorado is not. In fact, the
State of Colorado has not even filed a civil forfeiture complaint. Obviously, the hypothetical
ability of the State of Colorado to seize Mr. Shin's assets or file a forfeiture complaint *sometime
in the future* does not give Mr. Shin any existing legal remedies. Contrary to the government's
contention that granting relief to Mr. Shin "would effectively circumvent the procedures" of the
state related criminal and civil forfeiture proceedings" (Response at 14), there is no state related
criminal and civil forfeiture proceeding for Mr. Shin to circumvent.

In support of its argument that the state court proceedings are sufficient to allow the FBI to
retain control of the assets, the government contends that "[a]s Mr. Shin acknowledges, the filing of a
civil forfeiture proceeding or indictment may moot his motion for return of property."  (Response at
12.)  But what Mr. Shin actually wrote was: "The government's initiation of civil asset forfeiture
or return of a criminal indictment *with a forfeiture charge* may moot a Rule 41(g) motion."
(Motion at 24, *emphasis added*.)  Given that the FBI still has possession of Mr. Shin's ICX
Tokens and that the State of Colorado has filed neither a forfeiture action nor an indictment *with
a forfeiture charge*, the government's contention that Mr. Shin's motion has somehow been
mooted is absurd.  Moreover, the purported existence of a "freeze order" issued by the state court
(an order which has not even been provided to the assigned AUSAs) does not help the

government.  Fundamentally, Mr. Shin cannot recover his property by attacking a freeze order in state court, because neither the state court nor any state official has possession of the property.

The cases cited by the government fail to support its contention that the State of Colorado's mere initiation of a criminal action—in the absence of a forfeiture complaint or an indictment with a forfeiture charge—prevents Mr. Shin from recovering his property. In *United States v. Copeman*, the property in question had already been "seized by state law-enforcement officers."  458 F.3d 1070, 1071 (10th Cir. 2006).  Here, the state has not even initiated forfeiture proceedings, much less seized property. In *United States v. Daprano*, No. CR 04-2040 JB, 2011 WL 5220234 (D.N.M. Oct. 26, 2011), the court held that "[t]here is not sufficient evidence in the record to support [the] contention that the United States ever had actual or constructive possession of the property at issue." *Id.* at *6. Here, it is undisputed that the FBI is holding Mr. Shin's property.  And in *United States v. Campos*, a forfeiture action in state court was already pending.  No. CR 05-0222 RB, 2007 WL 9734048, at *1 (D.N.M. June 26, 2007). No forfeiture action is pending here.

Finally, the government asks the Court, in the event that it is inclined to rule in Mr. Shin's favor, to block Mr. Shin's ability to benefit from the Court's ruling by delaying ruling on this motion until September 10, 2021, or by restricting Mr. Shin's use of his own property. *See* ECF No. 12 at 13 n.10. The government cites no authority for this request. Moreover, the government's remarkable suggestion that this Court *purposefully* delay ruling to allow the state time to draft a complaint is essentially a concession that there is no legitimate legal avenue for the federal government to continue to retain assets which it has already declined to forfeit.  This Court should strongly push back against the government's attempt to enlist this court in gamesmanship designed to unlawfully thwart the release of Mr. Shin's property.

**3.  Mr. Shin Will Suffer Irreparable Harm if His Property Is Not Released to Him.**

The government claims that Mr. Shin must demonstrate "irreparable harm" to obtain the return of his own property that the government no longer deigns to forfeit. That argument runs contrary to DOJ policy which, as described, mandates that once a decision not to forfeit property has been made, the property "must" be returned "to the appropriate party."

This DOJ policy is consistent with controlling law. In *United States v. Shigemura*, 664 F.3d 310 (10th Cir. 2011), the court noted that "[a] district court should exercise its equitable power to grant relief only if the Rule 41(g) movant shows 'irreparable harm and an inadequate remedy at law." *Id.* at 312 (citation omitted). But, in the next sentence the court explained that "[o]nce criminal proceedings have terminated, 'the person from whom the property was seized is presumed to have a right to its return, and the government must demonstrate that it has a legitimate reason to retain the property.'" *Id.* (quoting *United States v. Clymore,* 245 F.3d 1195, 1201 (10th Cir. 2001)).  Federal criminal (and civil) proceedings have ended for Mr. Shin. As a result, the burden is not on Mr. Shin to demonstrate irreparable injury but on the government to demonstrate a legitimate interest in Mr. Shin's property that could justify the continued retention of that property. The government cannot carry this burden because the property at issue here is crypto-assets and not a dangerous contraband like narcotics, which can never be returned to its owner.

In addition, Mr. Shin has and will continue to suffer irreparable harm. In this context, irreparable harm consists of "circumstances in which a [Rule 41(g)] movant cannot wait for a legal remedy, thus justifying the court's equitable jurisdiction." *United States v. Edwards*, No. 16-CR-20070--SRB, 2020 WL 5038890, at *2 (D. Kan. Aug. 26, 2020).  Here, there is no legal remedy for Mr. Shin to avail himself of. The government has maintained possession of the seized

crypto-assets while simultaneously acknowledging no intention to forfeit these assets. This possession by the government, premised on the false assertion that Mr. Shin had committed a crime, was begun more than eight months ago. During the time of the government's unlawful possession of the crypto-assets, their value has decreased considerably, causing Mr. Shin financial harm. In short, in the absence of any legitimate interest by the government, the continued retention of Mr. Shin's property unjustifiably interferes with Mr. Shin's Fifth Amendment property rights—constituting a *per se* irreparable injury. *Connecticut Dep't of Env't Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[V]iolation of a constitutional right triggers a finding of irreparable injury.") (quoting *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996).

Finally, this Court need not determine the ownership of the seized crypto-assets to give effect to Mr. Shin's right to the return of his assets. To the extent that crypto-assets were seized from accounts in Mr. Shin's name, that property must be returned to Mr. Shin. To the extent that any of the seized crypto-assets were seized from accounts in the name of others, the Government is nevertheless obligated to release the property, *see* 18 U.S.C. § 983(a)(3), and can do so by returning the property to the person from whom it was seized or by depositing the property into a third-party escrow pending notice to any parties with a potential claim to the assets. *See* Exhibit E [DOJ Asset Forfeiture Manual (2021) at p. 14].

**4.   The State Court's Indictment (and freeze order) Should be Given No Deference.**

The government's primary argument for retaining the crypto-assets at issue here is that on June 29, 2021, shortly after state prosecutors first learned of this case, a state grand jury returned an indictment charging Mr. Shin with cybercrime related to a theft over $1 million, theft over $1 million, and money laundering. *See* Exhibit D [Indictment].  But this indictment, which

demonstrates a deep misunderstanding of how crypto-assets work as well as the events at issue here, is so fundamentally flawed that it should be given no deference by this Court.

   As an initial matter, it is important to note that, while three different crimes are charged in the indictment, the theft and cybercrime charges state that Mr. Shin committed a theft over $1 million and the money laundering charge alleges that Mr. Shin then committed financial transactions with the proceeds of that crime in a manner designed to conceal or disguise those monies. In short, the indictment charges Mr. Shin with theft and the other charges are derivative. But the State of Colorado cannot prove that Mr. Shin committed theft because that crime requires that a defendant "obtains, retains, or exercises control over anything of value *of another* without authorization or by threat or deception." C.R.S. 18-4-401. The State cannot show that the ICX minted as a result of the Revision 9 Bug ever belonged to "another" person or entity.

   In that regard, both parties agree that the ICX at issue here *never belonged to the ICON Foundation*. ICON Foundation's attorney conceded at oral argument in the Northern District of California civil case that these Tokens were minted out of the "ether" and were not owned by the ICON Foundation.  *See* Exhibit G [Hearing Tr., Case No. 20-cv-07363, N.D. Cal. (Apr. 28, 2021) at 16:15-25 ("those [tokens] were minted out of the ether" and "It's certainly not our position that those 14 million ICX belong to the Foundation. They don't. Those 14 million tokens ought to be destroyed.")].

   To circumvent this ownership issue that is central to the State's case, the State's indictment instead alleges that Mr. Shin stole the minted ICX from "ICON Nation," and that he took the ICX with the "intent to permanently deprive the members of ICON Nation of the stolen ICX." The indictment does not define what "ICON Nation" is, but it hints that ICON Nation encompasses "all holders" of ICX. *See* Exhibit D at 4.  This *cannot* be correct. If the ICX was

"unauthorized" and Shin exploited a vulnerability in the ICON Foundation's network to create the ICX out of the "ether," as the ICON Foundation maintains, it cannot also be true that others who held ICX, which would have included Mr. Shin, somehow had an ownership stake in that same unauthorized ICX that had been minted out of the "ether." This is not a case where ICON was holding a central repository of ICX that Mr. Shin broke into and stole. Rather, Mr. Shin's actions created *new* ICX out of the "ether." [2]

The Indictment attempts to side-step this issue by alleging that Mr. Shin's actions in minting ICX had the ability to harm other ICX holders by creating a potential for "inflationary concerns," whereby Shin's new 13 million ICX would "decrease the existing value of ICX held by all holders (ICON Nation) as significantly more ICX was now available on the market than prior to his attack." Exhibit D at 4. This allegation is irrelevant because it does not establish that Mr. Shin took the ICX he created from "another" person. Further, it ignores the fact that ICX was designed, at its inception, to be an inflationary currency with new ICX continuously entering the ICON ecosystem. ICX began in 2017 with 800 million ICX, and now, there are over 896 million ICX in existence.[3] This additional 96 million ICX were minted by the staking mechanisms that are a feature - not a bug - of the ICON system. Finally, drawing the State's argument to its logical conclusion, any time any company or government agency, such as the United States Federal Reserve, mints money or crypto, the existing holders of that crypto or

---

[2] Assuming, *arguendo*, that ICX did belong to "ICON Nation," Mr. Shin would be immune from any charge of theft as a co-owner and member of that Nation, given that he owned approximately 150,000 ICX at the time of the Bug in August 2020. *People v. Clayton*, 728 P.2d 723, 725 (Colo. 1986) (holding that "[a] co-owner of property cannot ordinarily be guilty of theft and, further, that joint owners, or tenants in common, cannot steal from each other, and members of a voluntary association having an interest in its funds cannot commit larceny of such funds.") (quoting *People v. McCain,* 191 Colo. 229, 552 P.2d 20, 22 (1976)).

[3] *See* https://twitter.com/helloiconworld/status/943288513637761024 and https://iconwat.ch/chart/supply

money would be so harmed due to this "inflationary pressure" that those doing the minting would be liable for criminal theft. This result, absurd on its face, obviously cannot be the law.

## B.  MR. SHIN'S FIFTH AMENDMENT RIGHTS HAVE BEEN VIOLATED.

The government's argument that no Fifth Amendment due process violation has or will occur flies in the face of the common-sense proposition that the government has a due process *obligation* to release property it declines to forfeit back to its owner. The government's refusal to do so here, while opposing Mr. Shin's motions seeking release, of course implicates Fifth Amendment concerns. *Lowther v. United States*, 480 F.2d 1031, 1033–34 (10th Cir. 1973) ("[T]he government must justify a taking and forfeiture which was unrelated to any violation of the law and which concerned property which was validly in possession of the appellee"; the failure to do so is "contrary to the due process clause of the Fifth Amendment."); *see also United States v. Farese*, No. 80 CR. 063 (MJL), 1989 WL 74963, at *5 (S.D.N.Y. June 26, 1989) ("[S]everal courts have opined that the long-term, unjustified retention of seized property constitutes a taking without due process in violation of the Fifth Amendment."). Further, Mr. Shin's Fifth Amendment claim is not mooted by the government's decision to abandon its own investigation in favor of hypothetical state proceedings, because it is the United States, through the FBI, which retains Mr. Shin's property.

Finally, the government believes that this court should employ a four-factor balancing test to determine whether its "delay in filing a forfeiture action is reasonable." (Response at 15 (*quoting DWB Holding Co. v. United States*, 593 F. Supp. 2d 1271, 1272 (M.D. Fla. 2009).) This multi-factor test is inapplicable because the government is not now "delaying" forfeiture proceedings. Rather, the Acting United States Attorney has formally *declined* to initiate forfeiture proceedings. Under these circumstances, "the person from whom the property was seized is presumed to have a right to its return," and the burden is on the government to

"demonstrate that it has a legitimate reason to retain the property." *Shigemura*, 664 F.3d at 312.

The government fails to do so here.

## C.  CRYPTO-ASSETS WERE ILLEGALLY SEIZED AND RETAINED BY THE GOVERNMENT.

In his opening brief (ECF No. 1 at 15-17), Mr. Shin explained how the FBI over-collected crypto-assets by demanding that the crypto exchanges liquidate entire accounts instead of hewing to the precise terms of the seizure warrants, which allowed for the collection of only precise amounts of crypto-assets. The government does not deny that it seized crypto-assets not covered by the seizure warrants, but argues that any crypto-assets collected outside the warrant were "voluntarily surrendered" to the government by the exchanges. This argument is factually unsupported, nonsensical, and, even if true, in violation of DOJ policy.[4]

As an initial matter, the government bears the burden of showing that the exchanges voluntarily consented to the transfer of crypto-assets to the government. *United States v. McRae*, 81 F.3d 1528, 1536 (10th Cir. 1996) ("If the government seeks to validate a search based on consent, the government bears the burden of proving that the consent was freely and voluntarily given."); *United States v. Medlin*, 842 F.2d 1194, 1197 (10th Cir. 1988). And the government does not even come close to meeting its burden here.

*First*, in support of its "consent" argument, the government contends that because some of the exchanges had frozen Mr. Shin's crypto-assets prior to FBI involvement, and because some of the exchanges had terms of service that allowed the exchanges to freeze or lock accounts, the subsequent transfer of those frozen crypto-assets by the exchanges to the FBI was entirely voluntary. That argument makes no sense. None of the terms of service identified in the FBI agent's affidavit or in

---

[4] Exhibit E at 28 ("Unless authorized by a search warrant or consented to *by the owner,* a seizure warrant should be obtained for the seizure of cryptocurrency.") (emphasis added).

the government's brief allowed the exchanges to voluntarily hand over crypto-assets to the federal government. Nor would the exchanges be able to attract customers if their customers knew that such voluntary transfers were part of their policies.

*Second*, the circumstances that surrounded the transfers of the crypto-assets to the FBI indicate that the exchanges' were complying with the search warrants, and not voluntarily transferring assets to the FBI. Simply put, other than with Binance.com, the government presents no evidence that the assets were consensually transferred to the government.[5] The government has produced no FBI reports documenting this voluntary transfer. Moreover, the crypto-assets that were allegedly obtained consensually from the exchanges were listed in the search warrant returns. For example, with respect to the Velic exchange, the Velic warrant allowed the government to seize "[a]ll identified cryprocurrency held in the wallet addresses at VELIC described in Attachment A." ECF No. 12, Attachment A at 13-14. The Attachment A, in turn, described a wallet address that contained *0* ICX. *Id.* Velic, however, handed over to the FBI 100,101 ICX and 13 ETH. FBI Agent Wall's affidavit described this crypto as being "voluntarily surrendered" to the FBI. *See* ECF No. 12, Attachment C at 5. Yet the Velic search warrant return submitted to the Court included those

---

[5] The government's contention that Binance.com, an exchange served with a warrant, voluntarily transferred assets to the government merits little discussion as it is clear that Binance's response was voluntary in the sense that Binance did not believe it was subject to United States jurisdiction, not that Binance was voluntarily providing the government with millions of dollars worth of customers' assets. Moreover, to the extent the exchange did voluntarily remit assets to the FBI, that remission appears to be in violation of government policy.  *See* Exhibit E ("Prosecutors should not agree to accept any cryptocurrency from a foreign-located company without an MLAT or permission from OIA, *even if the company offers to transfer the assets voluntarily*. Doing so without an MLAT or permission from OIA could violate the sovereignty of another country.")  (emphasis added).  In addition, Mr. Shin has obtained documents in discovery in the state case which directly show that the exchanges were not consensually transferring assets to the FBI.

supposedly consensually transferred crypto-assets on the return. *See, e.g.*, Exhibit H [Velic warrant return].[6]

      To the extent that the government still opposes the release of the over-collected crypto-assets, a probable cause hearing is necessary given that no judge has blessed the seizure of these assets. The government disputes this, writing that a probable cause determination has already been made by two federal judges. However, those two federal judges issued warrants that specified the crypto-assets to be seized by the government, and here, the FBI collected additional crypto-assets not included in those warrants. Further, the government's attempt to rely on a state court freeze – an order the government has not seen and which was obtained without a thorough review of the evidence – to justify withholding a federal probable cause hearing should be rejected.

      Moreover, a probable cause hearing is justified under the standard articulated in *Matthews v. Elridge*, 424 U.S. 319, 334-335 (1976).  As to the first *Matthews* factor, Mr. Shin has a strong private interest at stake because millions of dollars' worth of his property, a highly volatile asset, was seized eight months ago. And the government refuses to release that property to him, even though it concedes that he committed no federal crime. *Lowther* F.2d 1031 at 1034 (the Government's continued unjustified retention of an individual's property is "contrary to the due process clause of the Fifth Amendment."). Furthermore, this constitutional violation constitutes *per se* irreparable harm. *Connecticut Dep't of Env't Prot.*, 356 F.3d at 231 ("[T]he

---

[6] The government argues that the FBI's instructional letter that the FBI sent to the exchanges with the warrants did not request that the exchanges go beyond the terms of the seizure warrant and transmit crypto-assets to the government not mentioned in the warrants. *See* ECF No. 12, Ex. 1 [FBI letter]. A plain reading of the instructional letter provide otherwise, as it asks the recipient to liquidate entire accounts (something the warrants do not).

alleged violation of a constitutional right triggers a finding of irreparable injury.") As to the second *Matthews* factor, the fiscal and administrative burden of preparing for a single probable cause hearing is insignificant. And as to the third factor, the risk that Mr. Shin will be erroneously deprived of his property is high given the government's concession that Shin has not committed a federal crime yet refuses to release the assets.

### D.  MR. SHIN HAS MET HIS BURDEN TO OBTAIN A *FRANKS* HEARING.

Finally, in his opening brief, Mr. Shin argued that this Court should compel the government to disclose the underlying seizure warrant affidavits in order to enable him to move this court for a suppression hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The government, in its response, ignores this argument and instead simply notes that it would move to "unrestrict these documents so that they may be made available to Mr. Shin." The government has not yet done so, and a request to the assigned AUSA in this matter has received no response.

In any event, given that the government retains control of the seized crypto-assets, Mr. Shin reiterates his demand for a *Franks* hearing. In his request for a *Franks* hearing, Mr. Shin presupposed that the underlying seizure warrant affidavits would not contain the material exculpatory information contained in his civil complaint publicly filed in the Northern District of California prior to the issuance of the seizure warrants. Recent discovery provided by the state has confirmed that the federal agents had received the civil complaint prior to the issuance of the seizure warrants, and that the information in the complaint was *not* included in an affidavit filed in at least one subsequently issued warrant.

Accordingly, Mr. Shin has met his burden of establishing an entitlement to a *Franks* hearing.

## IV.    CONCLUSION

Mark Shin respectfully requests, for the reasons set forth above, that this Court grant his Rule 41(g) hearing and return the seized crypto-assets to him, or, in the alternative, grant the other relief as set forth in this motion.  Further, oral argument on this motion is requested.[7]

DATED: July 19, 2021

Respectfully Submitted,

*/s/ Jeffrey S. Pagliuca*
Jeffrey S. Pagliuca, #12462
HADDON MORGAN & FOREMAN, P.C.
150 E. 10th Avenue
Denver, CO 80203
Telephone: (303) 831-7364
Email: jpagliuca@hmflaw.com

Eric S. Rosen, #NY 4412326
Kyle Roche, #NY 5517776
ROCHE FREEDMAN, LLP
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Email: erosen@rcfllp.com
Email: kyle@rcfllp.com

*Counsel for Mark Shin*

---

[7] On July 14, 2021, Mr. Shin filed an unopposed motion for leave to file excess pages for this brief. *See* ECF No. 13. This motion is *sub judice*.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2021, I electronically filed the *foregoing Mark Shin's Reply in Support of Motion Pursuant to Fed. R. Crim. Pro. 41(g) and the Fifth Amendment to the United States Constitution for the Return of Property or for a Probable Cause Hearing* with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

*/s/ Holly Rogers*