IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 21-y-00065-WJM-SKC

In re: Government Seizure of ICX Tokens

**PLAINTIFF MARK SHIN'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Mr. Shin respectfully seeks a temporary restraining order ("TRO") and preliminary injunction ("PI") barring the federal government from transferring the seized crypto-assets that are the subject of Shin's *sub judice* Fed. Rules Crim. P. Rule 41(g) motion filed at ECF 1 in 21-y-00065-WJM to the State of Colorado authorities pending the resolution of Mr. Shin's motion.

**Certificate of Conferral**

Pursuant to D.C.Colo.LCivR 7.1(a), on August 3, 2021, undersigned counsel conferred with Assistant United States Attorney, Tonya Andrews, who advised that the government opposes the relief requested.

**I.  INTRODUCTION**

In November 2020, nearly ten months ago, the federal government obtained a dozen federal seizure warrants and began the process of seizing millions of dollars' worth of Mr. Shin's crypto-assets, as described in Mr. Shin's motion pursuant to Fed. R. Crim. P. Rule 41(g)

(hereinafter "Rule 41(g) motion") for the return of his property. *See* 21-y-00065-WJM at ECF. 1. Yet Mr. Shin had not committed a federal crime, and the seized assets were not the proceeds of a federal crime. The federal government now agrees with that, and on July 12, 2021, more than three weeks ago, the government filed a notice of declination, informing Mr. Shin and this Court that it had "foregone federal forfeiture proceedings," *see* <u>Exhibit A</u> [notice of declination filed at 21-mc-00117 ECF. 23], with respect to the assets that are the subject of the Rule 41(g) motion.[1]

Despite conceding defeat, the federal government refuses to release this property, choosing instead to unlawfully retain the crypto-assets in the hopes that the State of Colorado ("State") may, *in the future*, decide to pursue its own forfeiture proceedings. But the government cannot simply retain a citizen's property in the hopes that another sovereign may later decide to institute forfeiture. Rather, the government's *current* continued possession of Mr. Shin's assets is in violation of federal statutory law, the United States Constitution, and the Department of Justice's own policies and procedures as set forth in the 2021 Asset Forfeiture Manual.[2] Even worse, the government has indicated that it intends to seek an end-run around Mr. Shin's constitutional and statutory rights by simply transferring the crypto-assets to the State if the State decides to initiate forfeiture proceedings in the future. *See* ECF. 12 at p. 7, 9, 11-12. This action could render the 41(g) motion moot and may limit any ability of Mr. Shin to seek redress for the harm that the government currently inflicts upon him by unlawfully retaining his assets.[3] This

---

[1] Because the government filed this notice of declination, the docket at 21-MC-00117 has now been closed.

[2] The 2021 Asset forfeiture Policy Manual can be found here: https://www.justice.gov/criminal-afmls/file/839521/download

[3] Federal law immunizes the government from any liability for the transfer of seized property to state and local authorities. *See* 18 USC § 983(e) (The United States shall not be liable in any

2

Court should not sanction the government's gamesmanship. Accordingly, to force the government to comply with its constitutional directives and federal statutory law, Mr. Shin is left with no choice but to seek a TRO and a PI prohibiting the government from transferring Mr. Shin's property to the State pending this Court's order on Mr. Shin's motion for the return of his property under Rule 41(g) [ECF. 1].

## II. ADDITIONAL FACTUAL BACKGROUND

Mr. Shin relies upon the facts as set forth in his initial brief (ECF 1) and reply brief (ECF 15) filed in support of his Rule 41(g) motion.

In addition to those facts, it must be noted that the government's reply brief (ECF 12), and its notice of declination (Exhibit A) were both filed on July 12, 2021. Although the government's reply brief relied upon a purported state court freeze order to justify the continued retention of Mr. Shin's crypto-assets, the government did not produce the freeze order, instead noting that a "copy of the freeze order was not available to the undersigned at the time of this filing." *See* ECF 12 at p. 7 fn. 8. In the more than three weeks since the government filed its response to the Rule 41(g) motion, the government still has not produced the freeze order to Mr. Shin, nor has the government supplemented the public record with a copy of the freeze order. Moreover, Mr. Shin has not been provided with notice that the crypto-assets have been transferred to the State, and the government recently informed Mr. Shin that it was unsure as to whether the State would ever physically take control of the crypto-assets. Instead, the crypto-

---

action arising out of the seizure, detention, and transfer of seized property to State or local officials.").

3

assets appear to be illegally retained by the FBI despite the fact that the Acting United States Attorney has determined that no federal forfeiture will occur. *See* Exhibit A at ¶12.

### III. ARGUMENT

#### A. LEGAL STANDARD FOR INJUNCTIVE RELIEF

The Tenth Circuit applies a four-prong test to determine whether an interim injunction like the one requested here, which seeks to preserve the *status quo*, is warranted. The moving party must generally demonstrate "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). "[W]here the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is relaxed[.]" *Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639, 653 (10th Cir. 2004). In such cases, "[t]he movant need only show 'questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation.'" *Id.*

#### B. MR. SHIN IS LIKELY TO SUCCEED ON THE MERITS.

Here, Mr. Shin is likely to succeed on the merits because the federal government's current retention of Mr. Shin's property is in violation of the United States Constitution, federal statutory law, and the policies of the Department of Justice.

*First,* the government's retention of Mr. Shin's property, despite the property not being the subject of a forfeiture proceeding or the fruit of a federal criminal act, undoubtedly violates the Fifth Amendment to the United States Constitution, which provides that no person shall be "deprived of life, liberty, or property, without due process of law; nor shall private property be

4

taken for public use, without just compensation." Here, given that the Acting United States Attorney himself, the chief federal law enforcement officer for the District of Colorado, declined to allow the assigned federal prosecutors to seek forfeiture, *see* Exhibit A ¶12, the long-term unjustified retention of the crypto-assets by the federal government is a clear constitutional violation. *See United States v. Farese*, No. 80 CR. 063 (MJL), 1989 WL 74963, at *5 (S.D.N.Y. June 26, 1989) ("several courts have opined that the long-term, unjustified retention of seized property constitutes a taking without due process in violation of the Fifth Amendment.").[4] This constitutional violation is compounded by the fact that Mr. Shin has been afforded no legal process (outside of the equitable Rule 41(g) motion) to challenge the government's asset seizures. No civil forfeiture complaint or criminal indictment with a forfeiture allegation has been filed in either federal court or state court, and the government even sought and received a delay of 60-days to file a civil complaint before ultimately abandoning all federal efforts. This clear Fifth Amendment violation must be remedied.

*Second*, as explained in Mr. Shin's reply brief filed in support of his Rule 41(g) motion, the federal government's actions likely violate federal statutory law, specifically Title 18, U.S.C. § 981(b), which provides that the federal government is entitled only to seize property that is subject to forfeiture, and Title 18 U.S.C. § 983(a)(3)(B), which provides that when the government declines to file a civil forfeiture complaint or bring a criminal forfeiture action

---

[4] "When a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Caspar v. Snyder*, 77 F. Supp. 3d 616, 640 (E.D. Mich. 2015) (*quoting Obama for Am. v. Husted,* 697 F.3d 423, 436 (6th Cir.2012).

within the requisite time period after a valid claim has been filed, the government "shall" release the seized property.

Relatedly, with respect to administrative forfeiture, which applies here to a portion of Mr. Shin's property, federal regulations also compel release. 28 C.F.R. § 8.10(e) provides that "[u]pon making the determination that the seized property will be released, the agency shall promptly notify the person with a right to immediate possession of the property, informing that person to contact the property custodian within a specified period for release of the property,..." The Acting United States Attorney has determined that Mr. Shin's property will not be federally forfeited; therefore, the government has a legal duty to promptly notify Mr. Shin and arrange for release. Yet the government refuses to do so.

*Third,* the federal government's actions here also directly contradict Department of Justice policy, as set forth in the 2021 Asset Forfeiture Manual, which provides: "There may be instances in which a prosecutor declines to proceed with a judicial forfeiture after a claim has been filed in an administrative proceeding. Once that decision is made and the federal government no longer has a legal basis for holding the seized property (i.e., it is not evidence of a violation of law), the agency that seized the property must return it to the appropriate party." *See* ECF 15, Ex. E at 8.

In its response filed at ECF 12, the government asserts that it has the right to retain Mr. Shin's crypto-assets because, under Title 18, U.S.C. § 981(e), the United States may "discontinue any forfeiture proceeding in favor of the institution of forfeiture proceedings by State or local authorities under an appropriate State or local statute." *See* ECF 12 at 9. Further, the government contends, when forfeiture proceedings are discontinued by the United States "in

6

favor of state proceedings," the United States "may transfer custody and possession of the seized property to the appropriate State or local official upon the initiation of the proper actions by such officials." *Id*. But of course, the statute only permits the discontinuance of federal proceedings upon the "institution" of State or local proceedings and only permits the transfer of assets upon the "initiation of the proper actions" by state and local officials. None of this has occurred here. And nothing in the statute allows the government to continue to retain assets that it has declined to forfeit under the theory that state or local officials may, in the future, attempt to forfeit those same assets.[5] Accordingly, it cannot be disputed that Mr. Shin is likely to prevail on the merits.

### C. MR. SHIN WILL SUFFER IRREPARABLE HARM IF TEMPORARY RELIEF IS NOT GRANTED.

As described above, the government's unlawful actions most certainly violate the Fifth Amendment to the United States Constitution, which prohibits unlawful takings without due process. When a motion for a TRO involves allegations of constitutional violations, like here, "irreparable harm" is almost always satisfied.

As an example, in the recent case of *Snitko et al v. U.S.*, No. 21-CV-04405-RGK-MAR, 2021 WL 3139707, at *3 (C.D. Cal. June 22, 2021), the plaintiffs sought a TRO prohibiting the government from forfeiting their seized property pending adequate notice of the grounds for seizure. In partially granting the TRO, the court held that "[t]he Ninth Circuit has held that a deprivation of Fifth Amendment due process rights "inexorably" amounts to an irreparable harm." *Id*. A copy of the court's order is attached as <u>Exhibit B</u>. The District of Colorado has

---

[5] The government's only response is to cite a mythical state freeze order, copies of which have not been provided to Mr. Shin or, as of July 12, 2021, even provided to the assigned federal prosecutors. *See* ECF 12, fn. 8. Yet even if the freeze order exists, a freeze order simply does not constitute the initiation of state asset forfeiture proceedings under the proper state statutes.

likewise recognized that the deprivation of a constitutional right creates a presumption of irreparable harm. *Lisco v. Creany*, No. 10-CV-02206-REB-BNB, 2011 WL 4345930, at *4 (D. Colo. July 28, 2011), report and recommendation adopted, No. 10-CV-02206-REB-BNB, 2011 WL 4345862 (D. Colo. Sept. 16, 2011) ("A presumption of irreparable injury exists where constitutional rights are infringed.")

Here, the government retains Mr. Shin's property without justification and in violation of federal constitutional and statutory law. The government retains this property despite the fact that the District of Colorado's chief federal law enforcement officer, the Acting United States Attorney, has decided that the property will not be federally forfeited. Accordingly, there is little doubt that Mr. Shin is already suffering a violation of his constitutional rights and that ongoing irreparable injury will be compounded and extended if the government continues to delay the return of his property by dispensing it to the State if the State decides to initiate forfeiture proceedings in the future.

Further, if the requested TRO is not granted, Mr. Shin will suffer irreparable injury for the additional reason that he could be deprived of any remedy against the federal government for the constitutional and statutory violations that he has already suffered. *Indiana Fine Wine & Spirits, LLC v. Cook*, 459 F. Supp. 3d 1157, 1170 (S.D. Ind. 2020) ("IFWS also has no adequate remedy at law because it cannot pursue compensatory damages against the state actor Defendants because of sovereign immunity."). Once Mr. Shin's property is transferred to the State, his claim against the federal government for the return of property may be extinguished and Mr. Shin could be barred from seeking monetary damages. *See* 18 U.S.C. § 981(e) ("The United States shall not be liable in any action arising out of the seizure, detention, and transfer of

seized property to State or local officials."). Therefore, unless temporary relief is granting preserving the *status quo*, and commanding the federal government to retain the crypto-assets (or return them to Mr. Shin) pending the resolution of Mr. Shin's Rule 41(g) motion, Mr. Shin will be left without any remedy at all.

### D.  BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR SHIN.

A careful balancing of the equities and an analysis of the public interests involved further command that a TRO and PI are warranted. *NMSURF, Inc. v. Department of Transportation*, No. 121CV00057KWRJHR, 2021 WL 2646754, at *7 (D.N.M. June 28, 2021) ("[t]he third and fourth preliminary injunction factors "merge" when the government is the party opposing the injunction.").

As to the third factor, a balance of equities, this factor strongly favors Mr. Shin and the maintenance of the status quo. As described above, if the government is allowed to transfer Mr. Shin's property to the State, Mr. Shin could be permanently deprived of any ability to seek recompense for the fact that his property has been illegally retained by the federal government, in violation of the constitutional, statutory and regulatory provisions noted above. Conversely, the government will suffer no injury if it is required to retain Mr. Shin's property for just a few more weeks pending this Court's ruling on Mr. Shin's 41(g) motion. Indeed, the government has already voluntarily (and without justification) held Mr. Shin's crypto-assets for approximately nine months, and the State has not yet commenced any forfeiture proceedings.

As to the fourth factor, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012); *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional

9

violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest."). In this case, the government is under a constitutional duty to return Mr. Shin's property to him and the government has violated that duty by intentionally delaying the release of the assets until the State makes a decision on how to proceed. A TRO is necessary to prevent this ongoing constitutional violation and therefore the fourth factor also weighs in favor of the issuance of preliminary relief.

## IV.  CONCLUSION

For the reasons set forth above, Mark Shin respectfully requests that this Court enter an order exercising jurisdiction over the property seized from him, as delineated in the Rule 41(g) motion, and prohibiting the government from releasing that property to anyone other than Mr. Shin, pending resolution of Mr. Shin's motion for return of property under Rule 41(g) (ECF 1).

DATED: August 4, 2021

Respectfully Submitted,

*s/ Jeffrey S. Pagliuca*
Jeffrey S. Pagliuca, #12462
HADDON MORGAN & FOREMAN, P.C.
150 E. 10th Avenue
Denver, CO 80203
Telephone: (303) 831-7364
Email: jpagliuca@hmflaw.com

Eric S. Rosen, #NY 4412326
Kyle Roche, #NY 5517776
ROCHE FREEDMAN, LLP
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Email: erosen@rcfllp.com
Email: kyle@rcfllp.com

*Counsel for Mark Shin*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2021, I electronically filed the foregoing **PLAINTIFF MARK SHIN'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

*s/ Holly Rogers*