IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Case No. 21-y-00065-WJM-SKC

In Re: Government Seizure of ICX Tokens

───────────────────────────────────────────────

**UNITED STATES' RESPONSE TO PLAINTIFF MARK SHIN'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

───────────────────────────────────────────────

COMES NOW the United States of America, by and through Acting United States Attorney Matthew T. Kirsch and Assistant United States Attorney Tonya S. Andrews, and herein responds to Mr. Mark Shin's Motion for a Temporary Restraining Order and Preliminary Injunction (hereinafter "Motion for Preliminary Injunction").

## RELEVANT FACTS

1. In October 2020, the ICON Foundation reported to the Federal Bureau of Investigation (FBI) that an individual, Mark Shin, had exploited a software bug on the ICON Network that generated over 13 million ICX, which is the cryptocurrency coin/token of the ICON Network.

2. On November 17, 2020, the United States of America (Government) obtained seizure warrants for numerous cryptocurrency wallets that held proceeds traceable to the unauthorized minted ICX.  (20-mc-00202, 20-mc-00203, 20-mc-0024, 20-mc-00205, 20-mc-00206, 20-mc-00207, 20-mc-00208, 20-mc-00209, 20-mc-00210, 20-mc-00211, 20-mc-00213, 20-mc-00214).  The warrants sought seizure of all

"identified cryptocurrency held in the wallet addresses at [cryptocurrency exchange] described in Attachment A" at various cryptocurrency exchanges.

3. On January 4, 2021, the Government obtained a supplemental warrant for BAM Trading Inc. (also known as Binance.us) for "all cryptocurrency, fiat, and other items of value held by BAM Trading Services, Inc. derived from and traceable to items of value deposited and transferred to the wallets identified in Attachment A." *See* 21-sw-4-MEH.

4. The FBI initiated administrative forfeiture on the first three assets remitted pursuant to the seizure warrants in January 2021: 275.004012053678388 Ethereum from Kraken; 149,999.94 Icon coin from Kraken; and 20167.2717325 Icon Coin from Binance.us.

5. On February 12, 2021, Mark Shin filed an administrative claim with the FBI asserting an interest in the 275.004012053678388 Ethereum from Kraken; 149,999.94 Icon coin from Kraken; and 20167.2717325 Icon Coin from Binance.us.

6. On June 29, 2021, the People of the State of Colorado indicted Mark Shin for violations of Colorado Revised Statute (CRS) § 18-5.5-102(1)(d), (3)(a)(IX) (Cybercrime -commit theft over $1 million) and CRS § 18-4-401(1),(2)(j),(6) (Theft over $1 million). *See People of the State of Colorado v. Mark Shin*, 2021cr1445, District Court, County of Arapahoe, Colorado.

7. On July 9, 2021, the People of the State of Colorado served the FBI with a freeze order, instructing the FBI to freeze the assets they hold in custody in relation to this matter. The freeze order is subject to grand jury disclosure rules and has not been

made available to the public; however, counsel for Plaintiff Shin confirmed he has received a copy of the freeze order as part of his underlying criminal case.

8. Specifically, the State of Colorado has initiated criminal proceedings against Mr. Shin and a state judge has issued a freeze order, instructing the Federal Bureau of Investigation to retain custody of the subject assets.

9. Prior to the state criminal indictment, Plaintiff Shin filed a Motion for Return of Property in this case asserting that he has not committed a crime and, therefore, the seizure warrants were unlawful and he is entitled to the equitable remedy for the return of property under Federal Criminal Rule 41(g) or the Fifth Amendment, Due Process Clause.  (ECF No. 1).

10. On July 12, 2021, the United States filed a Notice that it would not be filing a civil judicial forfeiture case against the subject assets in lieu of state proceedings.[1] 21-mc-00117-MEH, ECF No. 23.

11. On August 4, 2021, Plaintiff filed a Motion for a Temporary Restraining Order and Preliminary Injunction, to enjoin the FBI from transferring assets to the State of Colorado pending the resolution of the Plaintiff's Rule 41(g).  (Doc. 18).

12. Undersigned counsel was informed today, August 12, 2021, that the 18th Judicial District filed a civil forfeiture complaint against the subject assets, which is pending with the Court. Because the FBI is part of the underlying investigatory team for the state prosecution, the District Attorney informed undersigned counsel that it does

---

[1] The related federal criminal case has not yet been closed or declined.  Moreover, the government has not conceded, as Plaintiff Shin asserts, that a federal crime has not been committed.  Rather, the federal government has declined to proceed in lieu of related state proceedings.

not intend to request that the subject assets be transferred to another state entity until the appropriate time in the related state civil forfeiture proceedings.

## ARGUMENT

At the crux of Plaintiff Shin's request is his concern that a State court will exercise its legal jurisdiction to obtain physical custody over the assets in question, such that his request to have this Court order the FBI to turnover these assets to him in violation of a state freeze order will be moot. Each request by Plaintiff Shin before the Court, both the motion for return of property and the injunction, is essentially a request for the Court to contravene a state court order, both real and anticipated. This Court should not exercise its equitable jurisdiction to interfere with the legal jurisdiction of the State of Colorado as requested by Plaintiff Shin.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To be entitled to a preliminary injunction[2], the moving party must demonstrate four things: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). A preliminary injunction is appropriate only when the movant's right to

---

[2] Although styled as a Motion for a Temporary Restraining Order and Preliminary Injunction, a temporary restraining order relates only to restraints sought without notice to the adverse party. *See* Federal Rule of Civil Procedure 65(a); *First Tech. Safety Sys., Inc. v. Depinet,* 11 F.3d 641, 650 (6th Cir.1993). Because the United States was given notice of the request, it is solely addressing Plaintiff's request as a request for a preliminary injunction.

relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

### A. Plaintiff Shin is Not Likely to Succeed on the Merits

Plaintiff Shin's underlying motion is for a return of property under Federal Rule of Criminal Procedure 41(g) - a request for equitable relief. *United States v. Caldwell*, 18-cr-00190-CMA, 2019 WL 7900061, at * 1 (D. Colo. Feb. 9, 2019) (citing *United States v. Clymore*, 245 F.3d 1195, 1201 (10th Cir. 2001))  "Courts of equity should not act when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Morales v. TransWorld Airlines, Inc.*, 504 U.S. 374, 381 (1992) (citation and internal quotation marks omitted).  "Rule 41(g) jurisdiction should be exercised with caution and restraint." *United States v. Bacon*, 900 F.3d 1234, 1237 (10th Cir. 2018) (citing *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir. 1988)).  As set forth in the United States' Response to Plaintiff Shin's Motion for Return of Property (hereinafter "Response to Return of Property"), Plaintiff Shin has an adequate remedy at law in the state court proceedings, especially in light of the recently filed State forfeiture complaint.  There is no precedent for the exercise of relief under Rule 41(g) when the movant has a legal remedy, as here with related state proceedings.

Plaintiff Shin suggests that the federal government is violating his rights by not releasing all of the seized assets to him, including assets in which he does not appear to have an interest, because it has declined to initiate federal judicial forfeiture proceedings.  While there is no longer any federal hold on the assets, and but for the State freeze order, the FBI would return these seized assets to the rightful owners upon declination of federal forfeiture proceedings, neither the Plaintiff, the FBI or the Court

5

can ignore that a freeze order exists. The FBI has been served with a State freeze order, directing it to maintain custody of the assets in a related state criminal case. To return the assets to Plaintiff Shin would be in direct contravention to the state freeze order.

Deferring to a state court's jurisdiction and complying with orders issued from such jurisdiction is not an "end-run" around Mr. Shin's rights as he suggests. Moreover, the theoretical, future proceedings Plaintiff Shin was worried might not transpire – the initiation of state civil forfeiture proceedings – has now occurred. And as he notes, this renders his pending Motion for Return of Property and Motion for a Temporary Restraining Order moot, as he now has a legal forum in which to address his grievances. ECF. No. 1, p. 24. Because he has an adequate remedy at law, Plaintiff Shin will not prevail on the merits of his Motion for Return of Property.

Plaintiff Shin also asserts he will prevail on the merits of his Fifth Amendment Due Process claims, because the federal government has violated his constitutional and statutory rights by not returning the assets after 10 months and declination of federal forfeiture proceedings. This argument again completely and entirely ignores the existence of the state freeze order that prevents the FBI from doing so, lest they willfully violate such a court order. Further, when a delay in due process is justified, not unreasonably long, and not unduly prejudicial to the property owner, it is not a violation of the owner's Fifth Amendment due process rights. *United States v. $8,850 in U.S. Currency,* 461 U.S. 555 (1983) (finding an 18-month delay justified). As set forth in detail in United States' Response to Return of Property, these factors do not weigh in Plaintiff Shin's favor. ECF. 12, pp.15-18. Plaintiff Shin intimates that he has been

6

deprived of all of his property for over 10 months.  ECF No. 18, p.1.  However, this is misleading as the vast majority of the seizures occurred as recently as March, April and May 2021, with the oldest being in December 2020 (just over nine months ago).  Because the length of delay has not been unreasonable in light of the circumstances justifying the delay, and the lack of prejudice to Plaintiff Shin as a result of the delay, Plaintiff Shin is also not likely to prevail on his Fifth Amendment claim under existing caselaw.

      B.  Irreparable Harm

"[T]he concept of irreparable harm does not readily lend itself to definition, nor is it an easy burden to fulfill. In defining the contours of irreparable harm, case law indicates that the injury must be both certain and great, and that it must not be merely serious or substantial." *Dominion Video Satellite. Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1263 (10th Cir.2004) (internal quotations and citations omitted).  Plaintiff Shin would not suffer irreparable harm if the FBI transfers the underlying assets to the State as he fears.  Plaintiff Shin is not without recourse in the State legal system, including the ability to file similar Motions for Return of Property.  *See* Colorado Rule of Criminal Procedure 41(e) (2021).  The transfer of custody is not a final determination on the merits of an underlying forfeiture case or a permanent deprivation of assets from Plaintiff Shin.

      Plaintiff Shin's argument for irreparable harm is largely an assertion that his Fifth Amendment due process rights have been violated because he has not been afforded a right to contest the seizure in timely enough fashion.  ECF No. 18, p.7-8.  However, the injunctive relief sought – the retention of assets by the FBI – does not address this

harm.  *See Shamrock Power Sales, LLC v. Scherer*, 2016 WL 6102370 *3 (S.D.N.Y. Oct. 18, 2016) ("[W]hether a court may afford the type of preliminary relief sought . . . turns on whether the injunction acts 'in aid of the recovery' sought in equity.").  Indeed, Plaintiff Shin's present request, ironically, seeks to potentially enjoin the FBI from compliance with a process that would be part of the proceedings in which he would be afforded due process.  In true circular logic, Plaintiff Shin requests the Court to inhibit a part of the process[3] that would afford him due process because he is not being afforded due process.  Notably, the case cited by Plaintiff Shin for the proposition that the lack of due process constitutes irreparable harm, *Paul Snitko et al v. United States*, 2021 WL 3139707, is clearly distinguishable.  The *Snitko* Plaintiff sought to enjoin the entry of an administrative declaration of forfeiture based on a lack of due process.  Unlike the present case, the lack of due process in *Snitko* was notice, not timing.  Plaintiff Shin has clearly been apprised of all stages of these proceedings, federal and state; rather, his assertion is that his due process rights have been violated because said proceedings have not moved quickly enough.  Second, the deprivation of due process in the *Snitko* case would result in a final order against the individual's property rights, not simply a change of forum.  Plaintiff Shin is not in jeopardy of the same irreparable harm as the individuals in *Snitko*, as he is not facing the permanent deprivation of his property without due process if the preliminary injunction is not granted.

In truth, the irreparable harm Plaintiff Shin actually seeks to avoid is the mooting of his Rule 41(g) motion, that is his lawsuit against the federal government – not the

---

[3] It is unknown at what stage of the state court proceedings an order directing the transfer of custody will be entered.

permanent deprivation of the assets.  ECF No. 18, p. 8.  This is akin to forum shopping and not the sort of irreparable harm that should warrant the granting of an injunction.  While Mr. Shin calls it gamesmanship, it is entirely appropriate and routine for one sovereign, state or federal, to pursue a matter in lieu of another sovereign based on a number of factors. The federal government has informed him that it would not be pursuing federal civil forfeiture.[4]  Although Plaintiff Shin would clearly have preferred for the federal government to return all of the assets to the owners based on its declination, the State of Colorado initiated its own legal proceedings against Plaintiff Shin and the subject assets.  Plaintiff Shin's request, and clear preference, that this Court determine the outcome of the subject assets while State proceedings is pending is inappropriate and does not constitute irreparable harm.  To the contrary, an order directing the FBI to remit assets to Plaintiff Shin, including those in which he does not appear to have an interest, would cause irreparable harm to any future State proceedings, including the return of assets to the victims of Plaintiff Shin's charged theft.

    C. Balance of Equities and Public Interest

The balance of equities also do not weigh in favor of Plaintiff Shin.  As discussed above, Plaintiff Shin will not suffer irreparable harm if this injunctive relief is not granted.  However, there is a potential for the FBI to be put in the untenable position of violating a state court order if the relief is granted, such that the equities do not weigh in favor of this injunctive relief.

Although articulated as a request to maintain the status quo, implicit within Plaintiff Shin's request is a request to enjoin the FBI from compliance with future state

---

[4] Mr. Shin's federal criminal case has not yet been declined.

court orders.  *See* ECF. No. 18. p. 6 (arguing that 18 U.S.C. § 981(e) only permits the transfer of assets upon the initiation of proper actions by state and local officials, which Plaintiff Shin asserts has not occurred); p.8 (citing irreparable harm if the delay of the return of property is frustrated by the government "dispensing it to the State if the State decides to initiate forfeiture proceedings in the future);" p. 9 "the State has not yet commenced any forfeiture proceedings").  The Court should not proactively grant such an injunction in an attempt by Plaintiff Shin to prevent the issuance or compliance with such an order.  Injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time in the future."  *Lisco v. Creany*, No. 10-CV-02206-REB-BNB, 2011 WL 4345930, at *4 (D. Colo. July 28, 2011), report and recommendation adopted, No. 10-CV-02206-REB-BNB, 2011 WL 4345862 (D. Colo. Sept. 16, 2011) (citing *Connecticut v. Massachusetts,* 282 U.S. 660, 674 (1931).)  Such action is specifically precluded by 28 U.S.C. § 2283, which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[5]  The Court should not exercise its equitable jurisdiction to prevent another from sovereign from proceeding with civil forfeiture and the attendant processes.  Nor should the Court issue injunctive relief that could result in the non-compliance by the FBI with a subsequently issued state court order.

---

[5] Despite its caption, the underlying motion for return of property before the Court is an equitable civil complaint against the Federal Bureau of Investigation.  *See United States v. Ortiz,* 110 F.3d 74, at *1 (10th Cir. 1997) (unpublished); ECF No.6.  It does not convey *in rem* jurisdiction over the subject assets, such that any subsequent state court order, seeking the transfer of physical custody would interfere with the jurisdiction of this court.

Finally, it is in the public interest that the proceeds of crime be divested from the perpetrator of said crime. A restraint on property that is subject to forfeiture is an appropriate means of "fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions." *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679 (1974). Plaintiff Shin has been charged by the State of Colorado with theft and money laundering. The parties do not dispute that the subject assets are derived from the conduct charged. Thus, the public interest weighs in favor of not interfering with the state related proceedings, criminal and civil, that have been filed and seek to address the conduct of Plaintiff Shin within its jurisdiction.

DATED this 12th day of August, 2021.

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By: *s/ Tonya S. Andrews*
Tonya S. Andrews
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Phone: (303) 454-0100
Email: tonya.andrews@usdoj.gov
*Attorney for the United States*

### CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July 2021, I electronically filed the foregoing with the Clerk of Court using the ECF system, and sent a copy via email to the following:

Eric. S. Rosen
Email: erosen@rcfllp.com

Kyle W. Roche

Email: kyle@rcfllp.com

Jeffrey S. Pagliuca
Email: jpagliuca@hmflaw.com

                                                s/ Jasmine Zachariah
                                                FSA Data Analyst
                                                United States Attorney's Office