IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 21-y-00065-WJM-SKC

In re: Government Seizure of ICX Tokens

**REPLY MEMONRADUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION**

The government's response filed at ECF No. 21 (hereinafter, "Response") makes clear that its refusal to return Mr. Shin's seized assets to him is due to its misplaced reliance on a state court indictment and so-called "freeze" order. For the reasons set forth below, the government's arguments are meritless. This Court should grant the proposed preliminary injunction, which would maintain the *status quo* pending the resolution of Mr. Shin's 41(g) motion with this Court.

## I.  MR. SHIN IS LIKELY TO SUCCEED ON THE MERITS

**A.   The Supremacy Clause of the United States Constitution mandates that federal law, and not a state court "freeze order," controls the disposition of the crypto-assets currently held by the federal government.**

The government concedes in its response brief that the federal government has no basis to continue to retain any of Mr. Shin's crypto-assets. *See* ECF No. 21 at 5 ("there is no longer any federal hold on the assets"). Moreover, the government does not dispute that at least for the portion of the seized assets that were subject to administrative forfeiture, federal law compelled the immediate release of that property after the government failed to file a civil forfeiture

complaint within the requisite 90-day statutory period. *See* 18 USC § 983(a)(3)(B) (the government "*shall* promptly release the property pursuant to regulations promulgated by the Attorney General."); *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1320, 206 L. Ed. 2d 764 (2020) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). This release of property should have taken place weeks ago.

Nonetheless, the government refuses to return the seized assets. In justifying this response, the government relies entirely on a so-called "freeze order" issued by a court in the State of Colorado ("State"). This order was obtained three days before the government informed this Court and Mr. Shin on July 12, 2021, that it would not proceed with the federal asset forfeiture.[1] *See* ECF No. 21 at 5 ("but for the State freeze order, the FBI would return these seized assets to the rightful owners upon declination of federal forfeiture proceedings").

But left unsaid by the government's response to Mr. Shin's motion is that a state court cannot prohibit a federal officer from complying with federal law. *Denson v. United States*, 574 F.3d 1318, 1347 (11th Cir. 2009) ("The obligations imposed by federal law are supreme, and where any supposed right or claim under state law would impede an officer from performing his duties, it must relent."). Nor can a state court order compel a federal officer to disregard federal law. *See United States v. Yates*, 58 F.3d 542, 550 (10th Cir. 1995) ("Under the Supremacy Clause, … the [federal] guidelines must control over the wishes expressed in the order of the state court judge."); *Dixon v. von Blanckensee*, 994 F.3d 95, 105 (2d Cir. 2021) ("The Supremacy Clause renders a mandatory order from a state court to a federal officer void.").

---

[1] A copy of the state court "freeze order" was provided to Mr. Shin only on August 9, 2021, *after* the filing of Mr. Shin's motion for a TRO and preliminary injunction.

Notably, while these arguments were raised by Mr. Shin in his opening brief (ECF No. 15 at 9-10), the government failed to respond to or address these arguments in its response, thereby implicitly conceding the correctness of Mr. Shin's position.[2]

### B. The state court "freeze" order does not authorize the FBI to retain custody of the crypto-assets.

As explained, Mr. Shin was not provided with a copy of the so-called "freeze order" until August 9, 2021. *See* Exhibit A [freeze order]. It is immediately clear upon a review of this order that the term "freeze order" is a misnomer. The State court's order did not command or authorize the FBI to freeze or retain custody of the crypto-assets. Rather, it directed law enforcement to search and *seize* the listed crypto-assets *within fourteen days* — something that did not happen here. The "freeze" portion of the search warrant simply commanded law enforcement to maintain the crypto-assets within the wallet addresses in which the assets were located.

Thus, the federal government here retains control of the property, and the government has presented no evidence demonstrating that the crypto-assets were seized by the State within the requisite fourteen days and deposited into State custody. Instead, as the government notes in its response brief: "the District Attorney informed undersigned counsel that it does not intend to request that the subject assets be transferred to another state entity until the appropriate time in the related state civil forfeiture proceedings." *See* ECF No. 21 at 3-4. Accordingly, it is apparent that the State "freeze order," rather than being used properly by the State to seize the crypto-assets, was instead used improperly to maintain the assets in federal control for the purpose of

---

[2] The government, in its response brief (ECF No. 21), presents not a single case supporting its argument that a state court can compel a federal agency to retain property that it is under federal law obliged to release.

preventing their disbursement to Mr. Shin. For this reason too, the freeze order is null and void and should not be honored by this Court.[3]

### C. The Colorado state court proceedings are premised on fundamental factual inaccuracies and untruths; as a result, the state proceedings should not be credited by this Court.

The government's primary basis for opposing the Rule 41(g) motion and the preliminary injunction is that the State has served a freeze order and initiated forfeiture proceedings. For the reasons set forth below, the State's proceedings are fundamentally flawed and should not be given any credit by this Court.

In addressing this argument, it is critical to have a proper understanding of the procedural history of this case. This investigation was initiated in October 2020 by the FBI and the US Attorney's Office (at ICON's request). The federal government put a significant amount of time and energy into the investigation by gathering evidence, interviewing witnesses, and drafting affidavits. The FBI even obtained more than a dozen seizure warrants from federal magistrate judges. However, despite the significant efforts and time put in by the federal government, there was a fundamental problem with the investigation – Mr. Shin had committed no crime.

The federal government could not prove that Mr. Shin violated the Computer Fraud and Abuse Act (CFAA) because, under then-existing precedent as well as the recent Supreme Court decision of *Van Buren v. United States*, 593 U.S. ___ (2021), he had not hacked or intruded into ICON's network. *See* ECF No. 15 at 4-5 (explaining why the CFAA does not apply). Further, Mr. Shin had not violated the federal fraud statutes because, amongst other reasons, the crypto-

---

[3] The State now appears to have moved for its own temporary restraining order in state court to maintain Mr. Shin's assets at the FBI. *See* Exhibit E [draft order]. An order has not yet been entered by a state court judge.

assets that he had minted through the Bug had not previously belonged to another person or entity. *See Cleveland v. United States*, 531 U.S. 12 (2000) ("It does not suffice, we clarify, that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, *the thing obtained must be property in the hands of the victim*."); *see also* ECF No. 1 at 23 (explaining why the federal fraud statutes are not applicable to Shin's conduct). Rather, as ICON's own counsel explained in federal court in San Francisco, the crypto-assets at issue had been minted "out of the ether" and had *not* belonged to anyone else before they were obtained by Mr. Shin. *See* ECF No. 1 at 14-15. As a result, on June 10, 2021, a few weeks *after* Mr. Shin had filed his Rule 41(g) motion in this Court, the FBI informed the United States Attorney's office that it had begun working instead with State prosecutors.

While the federal prosecutors here can be commended for not moving forward with a legally infirm prosecution and asset forfeiture, the State, sadly, cannot. Although the federal government investigated this case for nearly nine months, the State moved with remarkable speed. Less than three weeks after first being approached by the FBI about this case, the State chose to indict Mr. Shin for theft-related crimes. These offenses require the State (like with the federal fraud statutes) to prove that Mr. Shin took something "of value *of another*." *See* C.R.S. 18-4-401. While the federal government recognized that this element of ownership could not be proven, the State, remarkably, crafted an indictment that boldly misstated the undisputed facts of this case. *See* ECF No. 15, Ex. D [indictment]. The State's indictment claimed, for the first time, that Mr. Shin had, in fact, stolen the ICX from "ICON Nation," meaning that the unauthorized ICX that had been minted "out of the ether" had previously been owned by all the other holders of ICX (ICON Nation). As described below, however, the State's theory of the case is mistaken,

5

and this Court should reject any attempt by the federal government here to rely on the State orders to retain control of the crypto-assets.

*First*, the State's theory regarding the ownership of the ICX, as explained at ECF No. 15 at 14-16, is nonsensical. The undisputed facts surrounding the creation of the ICX at issue were that the ICX had been minted through a software bug in ICON's Revision 9 operating system. These minted ICX were never supposed to exist; they were, as ICON's counsel claimed, minted out of the "ether." If ICON's own theory is true (meaning that the ICX had been mistakenly created), it could not have been possible for ICON Nation (a group that purportedly includes "all holders" of ICX) to have ownership rights over that very same mistakenly manufactured ICX. It makes no sense that other individuals who just happened to own ICX at the time of the Bug could have an ownership stake in ICX that had been inadvertently created, and the federal government in its briefing does not and cannot explain this glaring inconsistency.[4]

Moreover, as this Court is aware, Mr. Shin sued ICON in federal court in San Francisco in October 2020 for interfering with his ownership rights to the minted ICX, amongst other issues. *See* 20-cv-07363-WHO. ICON moved to dismiss Mr. Shin's complaint, and on August 9, 2021, federal Judge William Orrick *denied* ICON's motion to dismiss. *See* Exhibit B [court decision]. In ruling, Judge Orrick addressed the very issues raised in the State's indictment: the

---

[4] Of course, if the ICX tokens *did* belong to all ICON holders (ICON Nation), then Mr. Shin would be immune from any charge of theft as a co-owner and member of that "Nation," given that he owned approximately 150,000 ICX at the time of the Bug in August 2020. *See People v. Clayton*, 728 P.2d 723, 725 (Colo. 1986) (holding that "[a] co-owner of property cannot ordinarily be guilty of theft and further, that joint owners, or tenants in common, cannot steal from each other, and members of a voluntary association having an interest in its funds cannot commit larceny of such funds.") (*quoting People v. McCain*, 191 Colo. 229, 552 P.2d 20, 22 (1976)).

ownership of the ICX prior to their minting through the Bug, and the property rights of other ICX holders who may have suffered a "dilution" due to the minting. Judge Orrick's reasoning is instructive here:

> At the previous motion to dismiss hearing, ICON stated that it is not asserting a right of ownership over the ICX tokens. *See* Transcript of Proceedings Held on April 28, 2021 [Dkt. 56] at 16:23–24 ("It's certainly not our position that those 14 million ICX belong to the Foundation. They don't. Those 14 million tokens ought to be destroyed."). In its briefing now, **ICON concedes that the ICX tokens at issue do not technically belong to anyone else**, but argues that Shin's act of minting a large amount of new ICX tokens adversely impacted all other ICX holders who suffered a dilution of their ICX holdings. It cites one case in support of this argument but fails to explain how that case, involving a different type of claim, supports its position that when person A acquires property that dilutes the value of property owned by person B, then person A does not have a possessory right in the acquired property. *See Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1191–94 (C.D. Cal. 2017) (finding no genuine dispute of material fact as to whether plaintiff had proven the elements of her "Money Had and Received Claim," which includes "(1) defendant received money; (2) the money defendant received was for plaintiff's use; and (3) defendant is indebted to plaintiff").

Simply put, Judge Orrick rejected the very heart of the State's indictment.[5] That alone should give this Court pause in looking to the State proceedings for guidance.

*Second*, the State's theory of ownership by "ICON Nation" runs counter to the facts unearthed in the federal government's own investigation. As the Court is aware, federal authorities obtained more than a dozen seizure warrants, and the government filed affidavits in

---

[5] On or about August 12, 2021, the State filed (but did not yet serve) a civil asset forfeiture complaint. *See* Exhibit F [affidavit]. Notably, while the affidavit still describes Shin's actions as a theft, the affidavit no longer claims that Shin stole from ICON Nation. The affidavit neglects to state who owned the ICX prior to the ICX being acquired by Shin, and in fact describes the ICX as being "mistakenly" created, which runs counter to their argument that the ICX was owned by ICON Nation.

support of each warrant. These affidavits were recently unsealed.[6] *See,* e.g., Exhibit C [Nov. 17, 2020, affidavit] and Exhibit D [Jan. 4, 2021, affidavit]. Each of these affidavits claimed that the ICX obtained by Mr. Shin had resulted from the "exploitation of the network by allowing the *unauthorized* creation or minting of unlimited ICX." *See* Exs. C and D ¶22. None of the affidavits presented to the federal magistrate judges ever once indicated that this "unauthorized" ICX belonged to Icon Nation, which is what is alleged in the State indictment and freeze order affidavit.

*Third*, it is not surprising that the federal government never once contended that the ICX minted by the Bug belonged to "ICON Nation." This is because ICON itself has never claimed that "ICON Nation" owned the ICX. To the contrary, on January 4, 2021, ICON's lawyer at the law firm of Manatt Phelps sent an email to the US Attorney's office that addressed numerous questions that the government had for ICON. Amongst those was the question of who "owns" ICON before "it goes to the user?" In response, ICON's attorney effectively conceded that no one person or entity owned the ICX prior to its creation, writing that "this is a very complicated question and given the nascent stage of blockchain technology, there is no straightforward

---

[6] There are multiple errors in the Special Agent's affidavits filed in support of the seizure warrants. Those errors may be the subject of a separate motion pursuant to *Franks v. Delaware*. Most notably, the Agent's affidavits failed to inform the magistrate court that just weeks before Agent Wall applied for the first set of seizure warrants in November 2020 to seize the "unauthorized" ICX, Shin *himself* had filed a complaint *against* Icon in federal court in California asserting: that he had not done anything wrong or hacked into ICON's network, that the ICX that had been minted through the Bug belonged to him, that ICON was falsely labeling him as an attacker, that Icon had attempted to extort him, and that ICON had then seized Shin's ICX. Clearly, these critical facts would have been material to the Magistrate Court's decision as to whether there was probable cause to believe that Shin had committed crimes under the CFAA and wire fraud statutes. Instead, the agent simply chose to ignore the complaint. Recent discovery provided by the State prosecutors confirms that the Special Agent had received a copy of Shin's complaint from ICON itself prior to applying for the seizure warrant.

'answer.'" ICON's attorney then went on to hypothesize as to what arguments the government *could* make about ownership:

> As you may know, the ICON Network is a delegated proof of stake network that is operated by and secured by the validators (or nodes). These validators-who are voted in by holders of ICX-invest their own time and capital for the hardware which runs the software that forms the basis for the blockchain network. Without these validators, new ICX cannot be created. Further, validators can vote on the economic incentives of the protocol. Validators have responsibility (at least from a public-facing perspective) if the network is not operating properly (e.g., producing blocks and reaching consensus) and may face financial or reputational harm in these instances. For this reason, *there is at least an argument* that the validators are the "owners" of the ICX before it is created.

In short, while there may be some cases where it is appropriate to defer to state authorities who have commenced asset forfeiture proceedings based on an investigation conducted by federal authorities, this is not one of them.[7] The State's accusations as set forth in its Indictment were rejected by Judge Orrick, and effectively contradict what ICON itself told federal authorities. Moreover, the State's allegations run counter to what was alleged by federal authorities in the federal seizure warrant affidavits. That the State's indictment was drafted and put in front of a grand jury in less than three weeks should give this court great concern about deferring to the State in this matter.[8] Put differently, it strains credulity for the federal

---

[7] The affidavit filed in support of the freeze order search warrant has language that is similar to the Indictment, claiming that the ICX was "stolen from the ICON Foundation and ICON Nation." As described in Judge Orrick's opinion, and as relayed to federal authorities by ICON's counsel, this allegation has been rejected by ICON itself.

[8] The State has produced extensive discovery as part of their obligations after indicting Mr. Shin. Nothing that the State has produced indicates that it has developed independent evidence suggesting that the "unauthorized" ICX belonged to "ICON Nation." Indeed, the State's discovery sheds no light on what ICON Nation is or whether it even exists.

government to ask this Court to acquiesce to State authorities on the basis of a State indictment and freeze order that federal authorities *know*, from their own investigation, cannot be accurate.[9]

### D. Mr. Shin's Claims Are Not Moot.

The government argues that Mr. Shin is not likely to succeed on the merits here because, under the law governing Rule 41(g) motions, Mr. Shin has a legal remedy, in that he can choose to contest the forfeiture in state court. *See* Response at 5.

But the government's argument can be quickly dismissed for two reasons. First, the federal government was mandated to release Mr. Shin's assets on or around July 12, 2021, which is when federal prosecutors filed notice with the court declining to proceed with federal forfeiture. Prosecutors have not done so, in violation of Mr. Shin's constitutional and statutory rights, as described above. Simply put, the state court proceedings do not provide Mr. Shin with an adequate forum to litigate the federal government's illegal seizure and retention of Mr. Shin's assets and the federal government cannot be allowed to violate its statutory duties as part of a scheme to evade the court's jurisdiction. *London Fin. Grp., Ltd v. Internal Revenue Serv.*, No. 2:15-AP-01070-BR, 2016 WL 10907056, at *6 (C.D. Cal. Aug. 1, 2016) ("When a citizen has invoked the jurisdiction of a court by moving for return of his property, we do not think that the government should be able to destroy jurisdiction by its own conduct." (*quoting United States v.*

---

[9] Notably, despite the fact that nearly three weeks ago Mr. Shin provided a detailed analysis concerning why the State's indictment should be given no deference (*see* ECF No. 15 at 13-16), the federal government, in its responsive brief, never attempts to defend the State's indictment on the merits. And while the federal government may wish to defer the adjudication of the State indictment to the state courts, because the federal government attempts to use the state proceedings as a sword to delay the return of Mr. Shin's property, this Court should conduct its own investigation and independent analysis of the state court proceedings (indictment and freeze order) prior to allowing the transfer or disposal of any property.

*Martinson*, 809 F.2d 1364 (9th Cir. 1987). Only a Rule 41(g) proceeding can provide an adequate remedy, which is why a preliminary injunction is appropriate.

Second, and more fundamentally, it is the federal government that continues to hold and retain Mr. Shin's property. The federal government cannot retain property and then turn around and tell Mr. Shin that he cannot seek the return of that same property in federal court. That simply is not the law. *United States v. Hurtado*, No. CV 09-4206 SVW (EX), 2009 WL 10671968, at *6 (C.D. Cal. Oct. 7, 2009) (holding that a 41(g) motion can be maintained where the federal government has actual or constructive possession of the property, or acted in conjunction with state authorities that have possession).

## II.  MR. SHIN FACES IRREPARABLE HARM

The government contends that Mr. Shin will not suffer irreparable harm because he can always contest the forfeiture in state court and because the remedy sought – an injunction prohibiting the transfer of the seized crypto-assets to the State – does not address the harm. The government is wrong on both counts.

*First*, the violation of Mr. Shin's constitutional rights is a presumed irreparable injury. *See,* e.g., *Lisco v. Creany*, No. 10-CV-02206-REB-BNB, 2011 WL 4345930, at *4 (D. Colo. July 28, 2011), report and recommendation adopted, No. 10-CV-02206-REB-BNB, 2011 WL 4345862 (D. Colo. Sept. 16, 2011) ("A presumption of irreparable injury exists where constitutional rights are infringed.") The government claims that its refusal to return Mr. Shin's property does not raise Fifth Amendment concerns, because "when a delay in due process is justified, not unreasonably long, and not unduly prejudicial to the property owner, it is not a violation of the owner's Fifth Amendment due process rights." Response at 6. But this applies, as

the government makes clear, only when a due process delay is "justified." Here, the federal government has declined to initiate forfeiture proceedings and therefore its failure to return the seized property is deliberate, and not justified. As a result, the government's continued refusal to return the property violates Mr. Shin's Fifth Amendment rights and constitutes irreparable harm.

*Second*, the government wrongly claims that the remedy sought by Mr. Shin (injunctive relief) does not address the harm inflicted. Yet Mr. Shin seeks to prevent the federal government from transferring the seized assets to State authorities because if the federal government were allowed to do so, the federal government's current constitutional and statutory violations *could* go unaddressed. It is unlikely that state courts will properly consider and address the government's violations of federal law. Thus, the remedy sought will enable this Court to hold the government accountable for its current violations of federal statutory and constitutional law.[10] Moreover, the remedy sought will allow this Court to examine the state court proceedings (including the indictment and freeze order) and determine whether those proceedings are proper.

### III.  THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR SHIN.

The government disingenuously argues that the balance of equities favors the government because an order granting the relief that Shin has sought would "put [the FBI] in the untenable position of violating a state court order." Response at 9. But as described above, a state court order cannot compel a federal official to ignore his official duty. The Supremacy Clause of the

---

[10] It is surprising that the federal prosecutors in this investigation accuse Mr. Shin of forum shopping given that it was the federal government who, after months of investigation, passed off this case to state authorities after it became clear that Mr. Shin had committed no federal crime. Given that federal authorities directed the investigation from start to finish, it is entirely proper for Mr. Shin to seek a remedy in federal court to demand the release of property currently held in federal custody.

Constitution commands the FBI to comply with federal law, and not defer to a state court order. As a result, the FBI is not being put in an "untenable position"; rather, Mr. Shin is simply asking the FBI to follow federal law, as it is tasked with doing.

## IV.  CONCLUSION

For the reasons set forth above, Mark Shin respectfully requests that this Court enter an order prohibiting the government from releasing his seized property to anyone other than Mr. Shin, pending resolution of Mr. Shin's motion for return of property under Rule 41(g). Further, Mr. Shin respectfully asserts that a hearing on this matter would aid this Court in rendering a decision on both the Rule 41(g) motion and the request for a preliminary injunction. At this hearing, the federal government should establish, with witness testimony and documentary evidence, that there is a sufficient factual basis for the State to charge Mr. Shin with stealing from ICON Nation. If the federal government cannot do that, the seized property should be immediately released to Mr. Shin.

DATED: August 17, 2021

Respectfully Submitted,

*s/ Jeffrey S. Pagliuca*
Jeffrey S. Pagliuca, #12462
HADDON MORGAN & FOREMAN, P.C.
150 E. 10th Avenue
Denver, CO 80203
Telephone: (303) 831-7364
Email: jpagliuca@hmflaw.com

13

Eric S. Rosen, #NY 4412326  
Kyle Roche, #NY 5517776  
ROCHE FREEDMAN, LLP  
99 Park Avenue, 19th Floor  
New York, NY 10016  
Telephone: (646) 350-0527  
Email: erosen@rcfllp.com  
Email: kyle@rcfllp.com  

*Counsel for Mark Shin*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2021, I electronically filed the foregoing **REPLY MEMONRADUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

*s/ Holly Rogers*