# EXHIBIT D

AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
District of Colorado

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
 )  Case No. 21-sw-4MEH
All cryptocurrency, fiat, and other items of value held )
by BAM Trading Services, Inc. in the wallets identified )
in Attachment A )

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the  **Northern**  District of **California** is subject to forfeiture to the United States of America under **18** U.S.C. § 981(a)(1)(C)  *(describe the property)*:

All cryptocurrency, fiat, and other items of value held by BAM Trading Services, Inc. derived from and traceable to items of value deposited and transferred to the wallets identified in Attachment A

The application is based on these facts:

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are set forth in the attached affidavit which is continued on the attached sheet and made a part hereof.

☒ Continued on the attached sheet.

s/Travis Wall
*Applicant's signature*

Travis Wall, FBI Special Agent
*Printed name and title*

Sworn to before me and: ☐ signed in my presence. ☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: 01/04/2021

*Judge's signature*

City and state: Denver, Colorado

Michael E. Hegarty, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANTS**

I, Travis Wall, being duly sworn, depose and state the following is true to the best of my information, knowledge, and belief:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Federal Bureau of Investigation (herein known as FBI) and have been since 2004. I have been assigned to the FBI Denver Division and have investigative responsibilities involving criminal matters particularly related to economic, white-collar crime, and cyber violations to include investigations involving crypto currency. I have participated in numerous fraud investigations, with many of those investigations involving wire fraud, mail fraud, money laundering, investment fraud, and corporate fraud.

2. Case agents are investigating Mark Shin (the attacker) and others known and unknown for, among other things, wire fraud in violation of 18 U.S.C. § 1343 and fraud in connection with computers, in violation of 18 U.S.C. § 1030.

3. At all times during this investigation described in this affidavit, I have been acting in my official capacity as a Special Agent with the FBI and have collected and reviewed documents, conducted interviews, and obtained information from various sources as they relate to the issues of probable cause.

4. This affidavit supports an application for a seizure warrant all cryptocurrency, fiat, and other items of value held by BAM Trading Services, Inc. derived from and traceable to items of value deposited and transferred to the wallets identified in Attachment A.

1

5. The facts set forth in this affidavit are based upon my personal observations and review of records, my training and experience, written reports, and information obtained by Icon founder Min Kim and his attorney representatives. This affidavit is intended to show that there is probable cause for the requested seizure warrants and does not purport to set forth all my knowledge of, or investigation into, this matter.

6. Based on the evidence developed, described and detailed herein, your affiant submits that there is probable cause to believe that Mark Shin (Shin) and others have committed criminal offenses as listed in paragraph 2 above, and that the aforementioned assets, are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable to one or more violations of 18 U.S.C. § 1343 (wire fraud) and fraud in connection with computers, in violation of 18 U.S.C. § 1030.

## CRYPTOCURRENCY TERMS

7. Cryptocurrency (also known as digital currency) is generally defined as an electronically sourced unit of value that can be purchased with, sold for, or used as a substitute for fiat currency (*i.e.*, currency created and regulated by a government). Cryptocurrency is not issued by any government, bank, or company; it is, instead, generated and controlled through computer software operating on a decentralized peer-to-peer network. Cryptocurrency is not illegal in the United States.

8. Icon Coin ("ICX"), Bitcoin ("BTC"), Ethereum ("ETH" or "ether"), and Tether are types of cryptocurrencies. Payments made with these cryptocurrencies are

2

recorded in a public ledger that is maintained by peer-to-peer verification (*i.e.*, a "blockchain") and is, thus, not maintained by a single administrator or entity.

9. Individuals can send and receive cryptocurrencies through peer-to-peer digital transactions or by using a third-party broker. Such transactions can be done on many types of computers, including laptop computers and smart phones.

10. Most cryptocurrencies have a "blockchain," which is a record or distributed public ledger of every transaction ever conducted that is distributed throughout the decentralized network. The blockchain makes it highly difficult for someone to retroactively alter the record for their benefit, such as claiming they still possess currency they have already spent.

11. Even though the public addresses of those engaging in cryptocurrency transactions are recorded on a public ledger, the true identities of the individuals or entities behind the public addresses are not recorded on the public ledger. If, however, an individual or entity is linked to a public address, it may be possible to determine what transactions were conducted by that individual or entity.

12. Cryptocurrency can be stored in digital "wallets." A wallet essentially stores the access code that allows an individual to conduct cryptocurrency transactions on the public ledger. To conduct transactions on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key"). The public address can be analogized to a traditional bank account number, while the private key is like the password or PIN used to access that bank account.

13. Exchanges, such as Binance, Kracken, and Coinbase, are companies that each offer a cryptocurrency wallet service. Some cryptocurrency exchanges maintain

3

access to, and custody of, their customers' wallets, akin to a financial institution and its customers' bank accounts. Other exchanges simply offer a wallet that can be used by a customer independently of the exchange, who would not maintain custody or access to any cryptocurrency stored on that wallet.

14. "Staking" is a way for individuals to effectively earn interest on cryptocurrency. Staking requires participants within the network to "stake" or wager their cryptocurrency by locking them away. The participants then place bets on blocks they think can be added to the chain, using their locked cryptocurrency as a wager. If they are correct, they will earn an amount proportional to the amount they "staked." This incentivizes users to participate in a particular cryptocurrency's community, which benefits the whole network as more stakers means the network is more secure. Typically, staked coins must be locked up for a specified time period.

15. "Unstaking" is the process of removing a "stake" or hold on cryptocurrency, such that it can once again be exchanged, transferred, or otherwise used by the owner.

## ICON FOUNDATION BACKGROUND

16. On October 15, 2020, the Denver Division of the FBI was contacted by attorneys with Mannatt, Phelps and Phillips, representing Icon Foundation and its owner, Min Kim. The attorneys advised the FBI that an attack had occurred on the Icon Foundation blockchain, permitting an "attacker" to fraudulently acquire millions of dollars in cryptocurrency.

17. In approximately August 2017, the Icon Foundation (IF) was established as an entity registered in Switzerland. The Icon Foundation is a decentralized network of

4

blockchain communities to facilitate the validation and exchange of various cryptocurrencies. It connects disparate cryptocurrencies with different blockchain governances, as well as facilitates the use of cryptocurrency in the "real world." Its technology allows different blockchains to connect. The network is comprised of an online community with users from around the world.

18. Within the Icon Foundation community, users are referred to as "validators." Validators are users who invest their own money in the network and have decision-making power, which is referred to as the "governance" of the network. They are responsible for voting and approving policies and procedures that are used within the network.

19. As part of its product offerings, Icon Foundation created its own cryptocurrency called Icon coin (herein known as ICX).

**Revision 9 Update**

20. On August 13, 2020, the Icon Foundation Network released Revision 9 Update, which included a new feature called the 'Multiple Unstaking Period' function.

21. In the Icon Foundation blockchain, the unstaking period usually takes about a week to complete. Previously, when a user unstaked a portion of his or her ICX and then wanted to unstake more ICX before the first unstaking had completed, the user would have to start all over. With Revision 9, a user could unstake ICX on different dates and times simultaneously.

22. There was a vulnerability in the Revision 9 Update, which allowed for the exploitation of the network by allowing the unauthorized creation or minting of unlimited ICX. This exploitation could only be done by holders of accounts that were in the

5

middle of unstaking; if such holders had been unstaking a portion but not all of the ICX in the account, and decided to "change votes" (select delegates) within the ICX network.

23. As described above, the Icon Network is structured to be a "self-governing" decentralized autonomous organization. In other words, Icon Foundation operates as a community with selected representatives or delegates to perform basic governing functions, including verifying blocks in a blockchain and participating in the governance or rules of the network community. Each ICX held by a participant allows that participant to vote for certain community representatives or delegates. Thus, in order to exploit the network glitch, a participant would also have to select to change the votes or delegates associated with the ICX that was being unstaked.

24. To gain access to ICX in an account on the ICON blockchain, a participant would need to download and install ICONex, a wallet system created and supported by Icon Foundation, and must have either his private key or keystore file and password to access the ICX in his account on ICONex. Once a participant has access to his or her account, s/he may manage his or her account, including options to stake or unstake ICX, and changing votes, as described above.

25. In this case, the attacker was unstaking approximately 25,000.00 ICX. When the attacker discovered the vulnerability, he exploited the vulnerability by repeatedly using the "SetDelegate" function. This allowed him to create or mint approximately 25,000 unauthorized ICX every time he changed the vote/select delegate function. Over an 11-hour time period, on August 22, 2020, the attacker did this over 558 times, resulting in an approximate total of 13,927,157 unauthorized ICX (estimated $8,988,406.00 in U.S. dollars).

6

26. When Icon Foundation personnel learned of the attack, they blocked the attacker's IP address; however, the attacker changed the IP address he was using for the attack, and then continued the attack of the network.

27. The Icon Foundation provided the FBI eight IP addresses used by the attacker to mint and/or transfer unauthorized ICX. The FBI used an open-source online tool to analyze the geolocation of the eight IP addresses. Six of the eight IP addresses resolved to the Denver, Colorado area.

28. During the attack, the attacker also moved the newly minted, but unauthorized ICX to other cryptocurrency exchanges where some of the ICX was exchanged for other cryptocurrencies. Specifically, the attacker withdrew ICX cryptocurrencies 131 times during the attack.

29. The attacker also created multiple accounts on other cryptocurrency exchanges in what appears to be an attempt to circumvent withdrawal restrictions in place on those other cryptocurrency exchange platforms.

30. The Icon Foundation maintains servers located in South Korea. However, the ICON network is decentralized and located in numerous locations, domestic and foreign.

**Identity of the Attacker**

31. On October 15, 2020, the Icon Foundation, through its attorneys, advised that an internal investigation revealed that Mark Minsuk Shin and potentially his father Joongsoo (Jason) Shin were involved in the blockchain intrusion and unauthorized minting and transfer of ICX. In addition, Icon Foundation representatives relayed to

7

investigators that an attorney representing Mark Shin had contacted the Icon Foundation indicating Mark Shin was involved in the attack.

32. The Icon Foundation worked with another cryptocurrency exchange where unauthorized ICX had been transferred. The cryptocurrency exchange froze the wallet address associated with the unauthorized ICX transfer. As a result of the Icon Foundation's inquiries and request to freeze the account, the exchange received an email from an individual named "Jason" with jsshin2002@msn.com, who is the owner of the account that was frozen, stating that he could not access his account. This further corroborates the involvement of an individual named Jason Shin.

33. Based on the IP addresses and email address, your affiant verified that Jason Shin is Mark Shin's father, and that they reside in Aurora, Colorado. Specifically, as discussed above, six of the eight IP addresses related back to the Denver, Colorado area. In addition, attorneys for Mark Shin have represented to Icon Foundation that he was the individual involved in the above-described conducted. Finally, the email address jsshin2002@msn.com is associated with an address in Aurora, Colorado based on publicly available databases. In the same databases and DMV records, Mark Shin and Jason Shin are identified as residing at this residence.

## BLOCKCHAIN ANALYSIS

34. As stated above, beginning on August 22, 2020, for a time-period of eleven hours, the attacker(s) accessed ICON servers approximately 558 times to mint approximately 13,927,157 unauthorized ICX cryptocurrency valued at approximately $8,988,406.00 United States dollars.

8

35. The ICX was minted into the Icon Foundation wallet hx76dcc464a27d74ca7798dd789d2e1da8193219b4.

36. From this Icon Foundation wallet, 10,135,087 in unauthorized ICX, valued at approximately $6,541,054.00, was withdrawn from the ICX wallet and transferred to 26 wallet addresses and at least 16 other cryptocurrency exchange accounts, including Binance US, Binance.com, Coinbase, Gemini, Kraken, VELIC, Kucoin, BitMax.io, ODEX, HitBtc.com, and IDEX.

37. Based on blockchain information from the Icon Foundation wallet mentioned above and provided to the FBI, your affiant confirmed the transferring, purchasing, and exchange of the newly and unauthorized minted ICX through the blockchain (i.e. the public ledger or record of all transfers) to the cryptocurrency and numerous wallets identified with over eleven different exchanges. Specifically, the blockchains for the cryptocurrencies revealed the date and time of the transactions involved, the originating public addresses for each transaction, the destination public addresses for each transaction, the amount of cryptocurrency transferred for each transactions, and the transaction hash (an identification number uniquely associated with that particular transaction that becomes part of the blockchain going forward). Based on this information, each transfer and exchange was confirmed in the blockchain of the cryptocurrencies as originating from the fraudulently minted ICX that was then subsequently transferred to the specified wallets at centralized and decentralized exchanges (Binance US, Binance.com, Coinbase, Gemini, Kraken, VELIC, Kucoin, BitMax.io, ODEX, HitBtc.com, and IDEX), as well as wallets believed to be in Mark Shin's individual custody and control.

9

### November 17, 2020 Seizure Warrants

38. Based on a blockchain analysis, on November 17, 2020, seizure warrants were obtained for over 50 wallet addresses, including wallets located with Binance.us, identified as containing cryptocurrency that is directly traceable to the fraudulent activity and are believed to contain proceeds of the fraud.

39. Binance.us is a trade name for BAM Trading Services Inc., which is a corporation incorporated in Delaware.

40. Subsequent to the service of the seizure warrant for four wallets identified as held with Binance.us, representatives of Binance.us informed your affiant that some of the cryptocurrency identified in the Binance.us wallets had been transferred and/or converted to other cryptocurrency, wallets, or fiat currency. Representatives of Binance.us confirmed that they were able to trace the cryptocurrency identified in the initial seizure warrant and originating from ICX to these additional forms of cryptocurrency, wallets, and fiat currency. They also represented that they had frozen all such items of value.

### CONCLUSION

41. Based on the investigation described above, probable cause exists to believe that Mark Shin committed violations of 18 U.S.C. § 1343 (wire fraud), which prohibits a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, transmits or cause to be transmitted by means of wire communication in interstate or foreign commerce any writings for purposes of executing such scheme or artifice. In this case, the attacker's knowing and intentional decision to "change votes" and reselect delegates over 500 times in an 11 hour period to exploit the

10

glitch in Icon Foundation's network constitutes a scheme to defraud through false or fraudulent pretenses to obtain ICX through a wire communication in foreign commerce.

42. In addition, there is probable cause to believe that Mark Shin committed violations of 18 U.S.C. § 1030(a)(2)(C) and (a)(4) (fraud in connection with computers), making it unlawful to: intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from a protected computer; and knowingly and with intent to defraud exceed authorized access to a protected computer, and by means of such conduct furthers the intended fraud and obtains anything of value over $5,000.00.

43. Title 18, United States Code, section 1030(e)(2) defines "protected computer" as a computer which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States.

44. Title 18, United States Code, section 1030(e)(6) defines the term "exceeds authorized access" to access a computer with authorization and to use such access to obtain or alter information in the computer that the person accessing is not entitled so to obtain or alter.

45. As described above, there is probable cause to believe that Mark Shin exceeded his authorized access to the Icon Foundation network and servers and obtained information, that is ICX cryptocurrency, that he was not entitled to as a result of his access, and that this was done with the intent to defraud and obtain items of value over $5,000.00.

11

46. Title 18 U.S.C. § 981(a)(1)(C) provides for the civil forfeiture of any proceeds constituting or derived from, proceeds traceable to any violations of 18 U.S.C. § 1030, and any "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), which includes 18 U.S.C. § 1343 as listed in 18 U.S.C. § 1961.

47. Title 18 U.S.C. § 981(b) provides for the seizure of any assets subject to forfeiture pursuant to Title 18 U.S.C. § 981(a).

48. Pursuant to 18 U.S.C.§ 981(b)(3), a seizure warrant may be issued in any district in which a forfeiture action against the property may be filed under 28 U.S.C. § 1355(b), and executed in any district in which the property is found, or transmitted to the central authority of any foreign state for service in accordance with any treat or other international agreement.

49. Accordingly, your Affiant seeks a seizure warrant for all cryptocurrency, fiat, and other items of value held by BAM Trading Services, Inc. derived from and traceable to items of value deposited and transferred to the wallets identified in Attachment A.

I, Travis Wall, a Special Agent with the Federal Bureau of Investigation, being duly sworn according to law, hereby state that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

*s/Travis Wall*
Travis Wall
Special Agent FBI

Reviewed and submitted by Tonya S. Andrews, Assistant United States Attorney. Subscribed and sworn to before me on the __4th__ of January 2021.

12

_____
Michael E. Hegarty
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

13

## Attachment A

| Custodian/ Exchange | Location | Wallet Address | Form of Crypto-currency |
|---|---|---|---|
| Binance US | San Francisco, CA | hx10d12d5726f50e4cf92c5fad090637b403516a41 | ICX |
| Binance US | San Francisco, CA | hx0796fc1f8f907b710abec77ba7c75700a0cbd49f | ICX |
| Binance US | San Francisco, CA | hx10e8a7289c3989eac07828a840905344d8ed559b | ICX |
| Binance US | San Francisco, CA | hx0607341382dee5e039a87562dcb966e71881f336 | ICX |