# EXHIBIT E

1  Christopher L. Wanger (CA Bar No. 164751)       Jason Gottlieb (NY Bar. No. 4056008)
   cwanger@manatt.com                              *Admitted pro hac vice*
2  MANATT, PHELPS & PHILLIPS, LLP                  jgottlieb@morrisoncohen.com
   One Embarcadero Center, 30th Floor              Michael Mix (NY Bar. No. 5020201)
3  San Francisco, CA  94111                        *Admitted pro hac vice*
   Telephone:  (415) 291-7400                      mmix@morrisoncohen.com
4  Facsimile:   (415) 291-7474                     MORRISON COHEN, LLP
                                                   909 Third Avenue
5  Misa K. Eiritz (CA Bar No. 307513)              New York, NY 10022-4784
   meiritz@manatt.com                              Telephone:  (212) 735-8600
6  MANATT, PHELPS & PHILLIPS, LLP                  Facsimile:   (212) 735-8708
   2049 Century Park E, #1700
7  Los Angeles, CA 90067
   Telephone:  (310) 312-4000
8  Facsimile:   (310) 312-4224

9
   *Attorneys for Defendant and Counterclaimant*
10 *ICON Foundation, on behalf of itself and all others*
   *similarly situated*
11

12                        UNITED STATES DISTRICT COURT

13                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

14

15 MARK SHIN,                                 Case No. 3:20-CV-07363-WHO

16             Plaintiff,                      **CLASS ACTION COUNTERCLAIM OF**
                                              **THE ICON FOUNDATION**
17     vs.

18 ICON FOUNDATION,

19             Defendant.                      Complaint filed: October 20, 2020
                                              Second Amended Complaint filed: Juned 1,
20                                            2021
                                              Trial Date:  April 25, 2022
21  _____

22 ICON FOUNDATION,

23             Counterclaimant, on behalf of
               itself and all others similarly
24             situated

25     vs.

26 MARK SHIN,

27             Counterclaim Defendant.

28

MANATT, PHELPS &                                       1
PHILLIPS, LLP                     _____
ATTORNEYS AT LAW                            COUNTERCLAIM
SAN FRANCISCO

Defendant and Counterclaimant, ICON Foundation (the "Foundation"), individually and on behalf of all others similarly situated, files this Counterclaim against Defendant, Mark Shin ("Shin"), and alleges and complains as follows:

# I

## SUMMARY OF ACTION

1.      This is a class action arising from Shin's malicious exploit of the ICON Network – a decentralized computer system that hosts the blockchain protocol on which the cryptocurrency "ICX" is generated and transacted (the "Network"). On August 22, 2020, as a result of an unintended and unforeseen computer programming error, the Network experienced a malfunction. Specifically, as a result of a bug in Revision 9 - the latest software update to the Network - the Network malfunctioned and mistakenly generated new ICX tokens under a very specific set of limited circumstances. Shin discovered the malfunction soon after the software update was released. Before those responsible for maintaining the Network discovered the malfunction and were able to take remedial action, Shin ruthlessly exploited the malfunction 558 times over the course of an 11-hour attack on the Network.  During each individual exploit, Shin was effectively able to cause the Network to generate and deliver to him 25,000 new tokens that he knew or should have known were mistakenly created and were made available to him in error by the Network. By the conclusion of Shin's assault, Shin improperly caused the Network to generate and deliver to him almost 14 million new ICX tokens (the "Exploited ICX").

2.      At the time of Shin's exploit, the price of a single ICX token was approximately 65 cents, which translated into an ICX haul for Shin worth approximately $9 million.  Since the attack (and notwithstanding the dilutive effect of Shin's actions on the value of ICX), the price of an ICX token has generally increased and risen to more than $3 and currently stands at approximately $1.54 raising the amount at issue in this action to more than twenty-one million dollars ($21,000,000). But for the dilutive impact of Shin's actions, the price of ICX would be even higher.

3.      Shin knew that the Exploited ICX tokens were generated by mistake and did not belong to him and immediately embarked on a series of transfers, conversions and other actions designed to conceal the origin of the Exploited ICX, remove it from the ICON Network, launder it

and otherwise make it untraceable. Among other things, Shin: (1) transferred large numbers of the Exploited ICX to third-party cryptocurrency exchanges; (2) transferred large numbers of the Exploited ICX to his family and acquaintances; (3) converted large numbers of the Exploited ICX into other cryptocurrencies such as Bitcoin and Ethereum; and (4) used other tools to obfuscate the origin of the ill-gotten gains he acquired with the Exploited ICX. Shin's actions in generating, transferring, converting and laundering the exploited ICX resulted in substantial harm to the ICON Network and all existing owners of ICX. The millions of new tokens that Shin minted increased the number of ICX tokens in circulation by approximately 2.50% and materially diluted the value of tokens held by the class - all ICX holders at the time of Shin's exploit.

4.      As a result of his attack, Shin has received a multi-million dollar benefit to which he is not entitled and which is unjust for him to retain. Shin was aware that the Exploited ICX was generated as a result of a mistake and he provided no consideration in exchange for the Exploited ICX. Both the common law and principles of equity require that Shin disgorge the Exploited ICX and any assets acquired with it for the benefit of the class – all holders of ICX at the time of Shin's exploit. Accordingly, the Foundation hereby asserts on behalf of the class claims against Shin for: (1) money had and received, unjust enrichment and restitution; and (2) declaratory relief. The Foundation seeks for the class (1) an accounting of the Exploited ICX and all assets acquired by Shin therewith; (2) a restraining order, preliminary injunction and permanent injunction enjoining Shin from transferring any Exploited ICX or proceeds therefrom; (3) an order requiring Shin to return any Exploited ICX or proceeds therefrom for the benefit of the class or, alternatively, ordering the destruction of the Exploited ICX; (4) the imposition of a constructive trust on the Exploited ICX and assets Shin acquired therewith; and (5) the appointment of a receiver to oversee the Exploited ICX and all proceeds Shin acquired therewith.

## II

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1367, 2201 and 2202 because complete diversity exists between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and

1   costs.

2       6.    The Court has personal jurisdiction over Shin because he has sued the Foundation

3   in this Court and consented to its jurisdiction.

4              **III**

5           **PARTIES**

6       7.    The Foundation is a Swiss foundation with its principal place of business in Zug,

7   Switzerland.  The Foundation was formed to develop and support the ICON Network, a blockchain

8   protocol for decentralized applications. The Foundation is the largest holder of ICX, the

9   cryptocurrency native to the ICON blockchain. The Foundation owns approximately 10% of the

10   total supply of ICX tokens.

11       8.    Shin is an individual and a resident of Denver, Colorado.

12              **IV**

13       **FACTUAL BACKGROUND**

14   **A.**    **Blockchain, Cryptocurrencies and the ICON Network.**

15       9.    The ICON Network is a next generation blockchain protocol that competes with

16   other cryptocurrency blockchains, including Bitcoin and Ethereum. The ICON Network was

17   designed to solve many of the problems faced by those early iterations of blockchain technology,

18   including smart contract functionality, scalability and interoperability.

19       10.    The units of exchange in cryptocurrency networks are typically referred to as

20   "tokens" or "coins".  Like the Bitcoin and Ethereum blockchains, the ICON blockchain has an

21   associated or native cryptocurrency. "ICX" is the cryptocurrency native to the ICON Network. The

22   ICX token was launched in 2017 when a token generation event ("TGE") was held that raised

23   approximately $43 million. Participants in the TGE, which was limited to non-U.S. citizens,

24   received ICX in exchange for fiat currency or cryptocurrency. After the TGE, U.S. citizens were

25   able to acquire ICX on third-party cryptocurrency exchanges.

26       11.    A blockchain protocol allows two people to transact without the need for a "trusted

27   third party" intermediary.  What is transacted between them is a specific line of code that is

28   mathematically impossible to replicate.  Each ICX has an address with its own alphanumeric

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

designation, serving a function like a bank account number. Knowing the public address allows anyone to deposit funds into it. But to use the digital funds associated with an ICON address, one must also possess the private key, which is a different alphanumeric string of characters. Only the possessor of an address's private key may make withdrawals—outgoing payments.

12.     ICX are effectively record-keeping entries and their value largely depends on the willingness of people to buy them based on their trust in the ICON Network, including its dependable operation and strong and reliable security and governance. ICX is not backed by any specific identifiable assets.

13.     A blockchain is an electronic distributed ledger or database, similar to an accounting ledger, that is maintained by various participants in a network of computers or "nodes". The ICON blockchain is distributed or decentralized because it is hosted and perpetuated by nodes spread across computers around the globe. The ICON blockchain is not controlled or maintained by any single entity, but exists simultaneously on computers all over the world. The users of the ICON blockchain and Network consist of owners of ICX, software developers, vendors, as well as municipal governments, financial institutions, small and medium-sized businesses and universities, among others (the "ICON Community").

14.     Like other blockchains, the ICON blockchain records all transactions in the network in digitally recorded data packages called "blocks." Each block contains a batch of records of transactions, including a timestamp and a reference to the previous block, linking the blocks together in a chain – hence the term "blockchain". For a transaction to be valid on the ICON blockchain, validators must first reach a distributed consensus on the validity of the transaction. Each time a transaction is validated by a node, a state change occurs. These state changes are recorded through block production which occurs approximately every 2 seconds on the ICON Network. The ICON blockchain uses cryptography to process and verify transactions on the ledger. Because the ICON blockchain records and secures information for all transactions, each transaction in the chain can be verified.

15.     The ICON Network is "peer-to-peer," meaning that the computers or nodes that actively run the Network's open-source software are linked together. Because the ICON

blockchain protocol is open-source, anyone with an internet connection can download and run it on his or her server.

16.     The benefits of ICX and other cryptocurrencies include that they (1) eliminate the need for a trusted intermediary to negotiate payments; (2) allow for "non-reversible payments," thereby reducing transaction costs; and (3) eliminate the need for gathering party information for creditworthiness or verification-of-funds purposes.

**B.     Transaction Verification on and Governance of the ICON Network**

17.     There are various methods employed by cryptocurrency networks to verify transactions on and to govern the network.  The ICON Network employs a "delegated-proof-of-stake" process in which all holders of ICX are entitled to a say in network operations and governance.  Through this process, delegates are selected by ICX holders to serve in a governance role and to validate Network transactions.

18.     Delegates in the ICON Network are selected through a two-step process known as "staking" and "delegation".  During staking and delegation, ICX token holders commit tokens as votes to elect delegates who manage and verify transactions on the blockchain. Those delegates who receive the most staked ICX obtain the right to produce blocks, govern and validate the data or state of the Network.

19.     The delegates involved in the governance and transaction validation process of the ICON Network are known as "Public Representatives" or "P-Reps".  P-Reps are selected through the staking and delegation process and are organizations or individuals who set up a validator node on the ICON Network. P-Reps have responsibility for creating and voting on Network proposals, producing blocks for the Network and developing and promoting the Network. The P-Reps are selected based on their qualifications and ability to make positive contributions to the ICON Network and its operation. The P-Reps are all highly sophisticated persons who possess the technical skills needed to operate, maintain and oversee the system of computers that makes up the ICON Network, including the ability to test and review software updates to the Network. There are currently one hundred and forty-three (143) P-Reps. However, only the top 22 P-Reps validate transactions and govern the Network.

20.     The top 22 P-Reps are known as the "Main P-Reps". The Main P-Reps are responsible for proposing and approving any major initiative for the ICON Network, such as material updates to the Network software. Approval of any major initiative requires both (1) the affirmative vote of 15 of the Main P-Reps; and (2) 67% approval of the "stake weighted ICX vote".

21.     The ICON Network has a Constitution that establishes the philosophy of the Network and its principles of governance, which is available at the following web address: https://m.icon.foundation/resources/file/ICON_Yellowpaper_ICONstitution_and_Governance_E N_V1.0.pdf?v=180914 (the "ICON Constitution").  By its terms, the ICON Constitution acts as a guiding principle for ICONists and sets out the operating principles of the ICON Network. Each participant who uses the ICON Network is called an "ICONist". As a user of the ICON Network, Shin qualified as an ICONist. Through his use of the ICON Network, Shin expressly or impliedly agreed to be bound by the terms of the ICON Constitution. Under Section 2, Article 12, of the Constitution, all ICONists, including Shin, are subject to the provisions of the Constitution. Under Section 2, Article 3, all ICONists, including Shin are required to strive to ensure that the ICON Network runs properly and to oppose any transgression against the ICON Network. Under Section 3.5.4(4), all ICONists, including Shin, are required to abide by resolutions passed by the representatives.

22.     All holders of ICX are eligible to participate in staking and delegation to contribute to the governance of the Network. ICX tokens that are staked and delegated to a P-Rep remain locked up in the user's wallet until the user decides to stop using those tokens to contribute to governance. At that point, the user first "undelegates" the staked tokens and then  "unstakes" the tokens. The period necessary to complete the unstaking process varies as Network activity changes but typically lasts approximately 7 days. To encourage ICX holders to participate in staking, the ICON Network protocol provides rewards in the form of ICX tokens to users who stake their tokens. To receive ICX rewards, the user must delegate staked ICX to one or more P-Reps.  The Network employs a detailed scoring system to determine the number of tokens a user is entitled to be awarded for staking and delegating.  The current percentage annual reward rate is approximately 10%.  The staking reward program operates in a manner similar to an interest bearing checking account. Just

as a banking customer accrues and receives interest at the applicable rate based on the balance of funds deposited into the account for as long as funds remain on deposit, ICX holders receive staking rewards based on the amount of ICX they have staked for as long as it remains staked. And just as a banking customer earns no interest on funds that are withdrawn from his or her accounts, an ICX owner earns no rewards on tokens he or she unstakes.

23.     Each time a transaction is validated on the ICON Network by a node, a state change occurs. State changes are recorded through block production which occurs approximately every two seconds on the Network. During each block, the Network calculates the respective reward score for ICX holders who are staking and delegating.

24.     In order to delegate tokens to a selected P-Rep, ICON token holders use a cryptocurrency "wallet". A wallet is simply a user interface on which a user can interact with a blockchain. The most common wallet used by ICX holders on the ICON Network is the "ICONex" wallet, which is a non-custodial wallet where the user controls both the public and private keys. (In contrast, for custodial wallets, another party controls the private keys.)

25.     The Network continually calculates reward scores based on a user's staking activity. The Network sends these reward scores to the public address of the ICX holder's wallet and the holder can redeem his score for ICX. A reward score of 1,000 is redeemable for 1 ICX. As token holders earn reward scores, the Network mints new tokens and adds them to the Public Treasury so that reward holders can redeem them and deposit them to their wallets.

26.     These newly generated ICX tokens are first created by and reside on the ICON Network. At formation, the reward tokens do not reside on the staker's computer or in the staker's wallet and must be delivered to the staker by the Network through interaction with a smart contract. At formation, the reward tokens are created for the benefit of and belong to the entire ICON Community, including all current holders of ICX. They are specifically created so that they can be awarded by the ICON Community to those persons who contribute to Network governance by engaging in true staking and delegating.

27.     Currently, the Network's intended reward rate in ICX for staking and delegating is approximately 10% annually. For example, a user who stakes 100,000 ICX tokens for a year, would

earn a reward of 10% of the total staked tokens or 10,000 ICX over the one-year period (100,000 x .10 = 10,000). Users are not intended to receive and historically have never received a reward either for simply undelegating or unstaking tokens. Neither process results in any newly staked tokens and thus was not intended to be rewarded by the Network. However, as a result of an unintended and unforeseen malfunction in the software described below, Shin was able during his exploit to generate millions of tokens to which he was not entitled for simply undelegating tokens from a P-Rep.

### C.   The ICON Network Experiences a Malfunction

28.   On August 22, 2020, the ICON Community, through the Main P-Reps, approved the release of software update "Revision 9" to the ICON Network. The update included a new feature known as the "Multiple Unstaking Period" function. Under the Network protocol in effect at the time, a user who sought to undelegate and unstake tokens from a P-Rep typically experienced a wait time of approximately one week to complete the unstaking process. Also, a user could only make one unstaking request at a time - a pending request had to be completed before a new unstaking request could be initiated. Revision 9 was intended, among other things, to enable users to engage in multiple and simultaneous unstaking requests.

29.   Prior to its release, members of the ICON Community reviewed and tested Revision 9. The P-Reps and other members of the ICON Community have strong incentives to conduct such tests. Malfunctions of or vulnerabilities in the Network can undermine trust in the Network and trust in ICX. The value of ICX depends in large part on users' trust in the ICON Network. Nevertheless, as a result of an undetected and unforeseen computer programming error, Revision 9 contained a software defect or bug. Despite reasonable efforts of the ICON Community to test and verify the software, the ICON Community did not discover that Revision 9 contained the bug prior to its release. The effect of the bug was significant. Under the Network's intended operation, a user would receive a deduction to his or her reward score for every token that was undelegated and not redelegated. However, as a result of the bug, under a set of very limited specific circumstances, the Network malfunctioned and erroneously awarded users who undelegated tokens a reward score equal to the amount of unstaked tokens and awarded the users that same number of

1   tokens.  The P-Reps who approved Revision 9 did not intend for the Network to operate in this

2   manner or to provide such grossly outsized token rewards. The malfunction resulting from the bug

3   in Revision 9 is analogous to a software malfunction in an automated teller machine that causes the

4   machine to distribute more cash than requested by the customer. The effect of both is to provide a

5   windfall in the form of currency to persons who were not authorized or entitled to receive it.

6       30.     The malfunction affected a very small number of users (less than 0.05% of all

7   accounts) and was implicated only when a specific and limited set of circumstances were present.

8   First, the user had to be engaged in unstaking ICX on August 22, 2020 at the time Revision 9 was

9   released and distributed to the Network. Second, the user had to be unstaking less than all of the

10  ICX in the account at issue. Finally, the user had to be not merely unstaking tokens but rather

11  undelegating or redelegating tokens from one P-Rep to another. Where these circumstances were

12  present, the software inadvertently generated and awarded to the user an amount of tokens equal to

13  the number of tokens that the user was attempting to unstake. The P-Reps did not intend for

14  Revision 9 to operate in this manner and did not intend for any user to receive such a significant

15  token reward merely for undelegating or redelegating staked tokens from one P-Rep to another.

16      **D.      Shin Discovers the Malfunction and Exploits It to Maximum Effect**

17      31.     Shin is an owner of ICX.  As of August 18, 2020, Shin currently had staked 150,000

18  ICX tokens, which were delegated to a certain P-Rep.  Shin was engaged in the process of unstaking

19  25,000 ICX tokens on August 22, 2020 when Revision 9 was released. As noted above, the

20  unstaking process can last seven days. That same day, Shin was attempting to unstake 25,000 of

21  his tokens to redelegate them from one P-Rep to another using the "SetDelegate" function.  Under

22  the intended operation of the Network, Shin would have not received any reward for simply

23  removing the delegation of or redelegating ICX tokens.  However, as a result of the software bug,

24  the Network malfunctioned and erroneously generated 25,000 ICX, the amount Shin was unstaking

25  during the malfunction.  The Network subsequently made the 25,000 tokens immediately available

26  to Shin.

27      32.     Shin was a highly sophisticated user of the ICON Network and had written on public

28  message boards about the Network's staking processes. When he undelegated the 25,000 tokens on

August 22, 2020, Shin was not expecting to generate or receive tokens for simply undelegating them and knew or should have known that they were generated and made available to him by the Network in error. Shin had engaged in numerous prior undelegating or unstaking requests and had never previously received any reward for such activity. Nevertheless, as soon as Shin discovered the malfunction and realized its implications, he immediately began to repeat the undelegating process by using the "SetDelegate" function to exploit the Network vulnerability to maximum advantage.

33.     Each time Shin used the function, he was able to cause the Network to generate another 25,000 new tokens as a result of the malfunction, regardless of the number of tokens he undelegated. Once Shin realized that he could cause the Network to generate 25,000 new tokens each time he exploited the malfunction, he began reducing the number of tokens that he undelegated. After undelegating 25,000 tokens in each of his first two exploits, he reduced the number of tokens he undelegated in subsequent exploits first to 10,000 tokens, then to 1,000 tokens and finally to 1 token. By reducing limiting the number of undelegated tokens to 1 token in subsequent exploits, Shin intended to give himself the maximum number of opportunities to exploit the malfunction. If Shin had been completely successful in his scheme, Shin had the potential to cause the Network to generate and deliver to him a virtually unlimited number tokens. Shin's actions in exploiting the malfunction were malicious and oppressive and had the potential to effectively destroy or dilute the value of all outstanding ICX.

34.     In the 11-hour period following his discovery of the malfunction, Shin implemented the "SetDelegate" function a total of 558 times, which enabled him to cause the Network to erroneously generate and deliver to him the astounding total of thirteen million nine hundred twenty-seven thousand one hundred and fifty-seven (13,927,157) new ICX tokens. Under the intended operation of the Network, Shin would not have received any tokens for his undelegating activities. However, as a result of the malfunction, he obtained in a matter of hours an unprecedented and unintended number of Exploited ICX.

35.     The market price of an ICX token on August 22, 2020 was approximately 65 cents, putting the value of Shin's haul at eight million, nine hundred and eighty-eight thousand four

hundred and six dollars ($8,988,406) as of the date of his attack. ICX's price subsequently rose above $3.00 and today, the price of an ICX token is approximately $1.54 putting the amount at issue in excess of $21 million. Shin's grossly disproportionate haul of 14 million ICX tokens was solely the result of the software malfunction. Instead of simply doing the right thing and notifying the Community of the malfunction, Shin ruthlessly took undue advantage of the situation to exploit the malfunction 558 times. In a hearing before this Court, Shin's own counsel referred to his actions as a "hack" of the ICON Network.

36.     The Foundation is informed and believes that, given the sheer number of functions and steps involved in the process of causing the Network to generate and deliver such a huge number of tokens in an 11-hour period, Shin must have written and implemented a computer script to facilitate his attack on the Network. The Foundation is informed and believes based on representations made by Shin to others that Shin is knowledgeable about computer programming and capable of writing and implementing such a script.

37.     Shin's receipt of the Exploited ICX was wholly without consideration. Shin's actions in exploiting the malfunction provided no benefit to the Network, the ICON Community or the class. As noted above, users are not intended to receive a token reward for simply undelegating tokens, as undelegating does not result in any newly staked tokens. The purpose of staking, delegating tokens to P-Reps and the related reward program is to encourage ICX holders to stake more tokens to secure the Network.  Moreover, in order for staking and delegating to have any meaningful effect from a governance standpoint, the staker must elect to delegate some material amount of tokens to a P-Rep. Shin's actions during the exploit, however, were not designed to have any governance or beneficial effect. Instead, he undelegated the minimum number of tokens possible - 1 token - as many times as possible in order to maximize the number of times he could take advantage of the malfunction to generate a grossly outsized number of tokens for himself. Regardless, neither the P-Reps nor the ICON Community, including class members, ever intended Shin or anyone else to be able to generate or retain the Exploited ICX simply for unstaking and redelegating tokens.

38.     As discussed above, the governance of the ICON Network, including the staking

and delegating process, is accomplished through numerous decentralized computers and servers. The cost to maintain the Network is borne by the ICON Community, including the P-Reps and ICX owners. Specifically, the reward tokens that are generated in connection with staking as described above increase the supply of outstanding tokens and dilute the ownership of existing ICX holders. As new ICX enter the system, all existing ICX decrease in value by a tiny amount to the benefit of the person receiving the new ICX.

39.     The Exploited ICX are not Shin's property.  As discussed above, reward tokens like the Exploited ICX, are created by the ICON Network for the benefit of and belong to the entire ICON Community, including all current holders of ICX. They are specifically created so that they can be awarded by the ICON Community to those persons who contribute to Network governance by engaging in true staking and delegating. Based on the code developed and employed by the ICON Community that governs the Network, at the moment that any new ICX tokens – including the Exploited ICX – are generated, those new ICX tokens are first generated onto the Network and reside on specific nodes and not the user's or staker's computer.  Before being delivered to a user's wallet, the tokens belong to the ICON Community, including the owners of ICX. And, for delivery to a user's wallet to occur, the tokens must be paid for in some way, through some exchange of value – which, of course, Shin did not do.  Shin was never a rightful owner of the Exploited ICX.  He received the Exploited ICX in error based on a malfunction in the Network. The Exploited ICX belonged to the ICON Community, including the holders of ICX, and Shin then converted the Exploited ICX for himself.

40.     As noted above, the malfunction affected a very small number of users (less than 0.05% of all accounts). The overwhelming majority of all ICX that were erroneously generated as a result of the malfunction of Revision 9 were generated by Shin. There were, however, other tokens generated by the malfunction, including 3.5 million ICX tokens that had not yet been delivered by the time the ICON Community discovered the malfunction in Revision 9.  When the ICON Community discovered the malfunction and the undelivered 3.5 million tokens erroneously generated by the Network, the Community destroyed the tokens. Such destruction is further evidence that the erroneously generated ICX, including the Exploited ICX, belonged to the ICX

1    Community.

2       41.    At the same time that Shin was exploiting the malfunction with the intent to cause

3    the Network to mistakenly generate and deliver to him new tokens, Shin went to extreme lengths

4    to transfer, convert and launder the Exploited ICX in an effort to put them beyond the reach of the

5    Network. The Network delivered the Exploited ICX to Shin in his ICONex wallet. During his 11-

6    hour attack, Shin made 131 separate withdrawals from his wallet and transferred the Exploited ICX

7    to numerous different accounts. In connection with these withdrawals, Shin transferred Exploited

8    ICX to separate accounts at various cryptocurrency exchanges, including Kraken, Gemini,

9    Coinbase, Velic, Binance.US, Bianance.com, Kucoin, BitMax.io, ODEX, HitBtc.com and IDEX.

10   Shin's transfers to Binance.com violated that exchange's terms of service, which expressly preclude

11   U.S. citizens and residents from transacting on the exchange. At some of these exchanges, Shin

12   created new accounts to circumvent withdrawal restrictions. The Foundation is informed and

13   believes that Shin failed to comply with Know You Customer or "KYC" requirements in

14   connection with his opening of such accounts. For example, Shin opened at least four separate

15   accounts at Binance.com and four accounts at Binance.US. However, the terms of service of

16   Binance.com provide that each user of that exchange may maintain only one main account at any

17   given time. Once he transferred the Exploited ICX to the exchanges, Shin also used the tokens to

18   acquire other cryptocurrencies and fiat currency, including Bitcoin (BTC), Ethereum (ETH),

19   Chainlink (LINK), Cardano (ADA), Ripple (XRP), USD Tether (USDT), Binance Coin (BNB),

20   Ren (REN), Tezos (XTZ), Augur (REP) and U.S. dollars. Shin also exchanged some of the

21   Exploited ICX for Monero's cryptocurrency (XMR), a privacy-focused cryptocurrency that

22   employs an obfuscated public ledger. Shin also withdrew much of the converted currencies and

23   sent it to Tornado Cash, a privacy tool for obfuscating the history of cryptocurrency transactions.

24       42.    Shin also transferred large amounts of the Exploited ICX to his family and friends.

25   For example, Shin transferred at least one hundred thousand (100,000) Exploited ICX to his father,

26   Jason (Joongsoo) Shin on the day of the attack. Shin also transferred one hundred twenty-five

27   thousand (125,000) Exploited ICX to an acquaintance. Shin acknowledged to his acquaintance that

28   he was able to generate the ICX as a result of a malfunction and transferred the Exploited ICX to

the acquaintance because he wanted "to take care of his friends and family". The acquaintance subsequently acknowledged that he was not entitled to the Exploited ICX that Shin had transferred to him and intends to return the tokens to the Community for destruction.

43.     Based on his prior staking history, Shin himself was aware that the Exploited ICX was generated in error and that he was not entitled to the Exploited ICX. The Foundation is informed and believes that Shin made the foregoing transfers and conversions in order to obfuscate the source of and launder the Exploited ICX and assets Shin acquired with it in order to retain as much as possible of the Exploited ICX and the proceeds therefrom.

44.     Shin's actions described above violated the terms of the ICON Constitution and represented breaches of his duties to strive to ensure that the ICON Network ran properly and to oppose any transgression against the ICON Network. Shin's attack on the Network also posed a grave threat and resulted in substantial harm to the class. As a result of causing the Network to erroneously generate and deliver to him millions of new tokens and his evident willingness to cause the generation of a virtually unlimited number of tokens without cost, Shin possessed the potential to gain control of the Network's governance through a "51% attack" on the ICON Network.  A 51% attack is a well-known threat to cryptocurrencies. Such an attack occurs when miners take control of more than 50% of a network's mining power, computing power or hashrate. If a 51% attack is successful, the miners responsible essentially control the network and transactions that occur within it.  The sheer numbers of tokens that Shin caused the Network to erroneously generate threatened to significantly dilute or destroy the value of outstanding ICX and to eliminate public trust in the Network. Prior to Shin's exploit there were approximately 561,000,000 ICX tokens in circulation. The Exploited ICX that Shin erroneously caused the Network to generate represented approximately 2.5% of all such ICX tokens. Shin's malicious attack caused the total number of minted ICX to significantly increase by over 13 million, therefore diluting the value of the ICX held by the ICON Community. Applying basic supply and demand principles, Shin's actions caused the total supply of ICX to increase, but there was no concomitant increase in demand, causing the existing ICX to become less valuable. Shin gained value for himself by misappropriating over 13 million tokens, and arrogated value to himself from the other members of the ICON Community

by causing the value of their tokens to decrease. Shin subsequently sold substantial amounts of the Exploited ICX on exchanges which had the effect of depressing the price of ICX and damaging the reputation of the ICON Network. In the two-week period between August 22 and September 5, 2020, when Shin's exploit became widely known within the ICON Community, the price of ICX decreased by almost 40% from 65 cents to 40 cents. Shin's actions confirmed that he could not be trusted and had no regard for the impact of his actions on the Network or ICX holders.  Shin has expressed no remorse and instead seeks judicial sanction for his actions.

45.     Several hours into Shin's attack, members of the ICON Community noticed with alarm that a huge number of ICX were being generated and transferred from the Network to an ICONex wallet and from that wallet to third-party cryptocurrency exchanges. The Community immediately investigated and discovered the issue with Revision 9. The P-Reps were alerted and worked together on an emergency basis to implement a plan to address the malfunction and related attack. First, the P-Reps approved the creation and release of Revision 10 to the Network, a new software release that was intended to and did correct the issues with Revision 9.  The P-Reps' approval and distribution of Revision 10 confirmed that they did not intend Revision 9 to operate in the manner it did and that the generation of the Exploited ICX was not intended or authorized by the ICON Community. At the same time, the Foundation blocked and prevented the IP Address associated with Shin's ICONex wallet from being able to access the citizen nodes used by ICONex on the Network, thereby effectively preventing further transfer of the Exploited ICX that remained in Shin's wallet. (Although the Foundation was aware of the IP address from which the attack was being conducted, the Foundation did not know Shin's identity at any time prior to the time Shin filed his complaint in this action.) The Foundation oversees the operation of ICONex wallets and the ICONex mobile app. The Foundation's action in blocking the IP Address was consistent with and authorized by the terms of service of the ICONex mobile app (available at http://docs.icon.foundation/ICON-Terms-and-Conditions-en.pdf) which provide that "We may suspend or stop providing our Services to you if you do not comply with our terms or policies or if we are investigating suspected misconduct." The Foundation is informed and believes that when Shin discovered that his current IP address was blocked, Shin changed his IP address and began

attacking the Network from a new IP address again demonstrating his intent to inflict maximum harm on the Network and the class.

46.     Ultimately, the P-Reps decided to take other programmatic steps on the Network to address the attack. Specifically, the P-Reps approved and implemented a plan to restrict transfers from all of the wallets to which Shin deposited Exploited ICX. The P-Reps and Community members had full authority and the legal and equitable right to release a software update that corrected the bug and limited the harm to ICX token holders caused by Shin's exploit, including by restricting transfers from his wallets. However, by the time that the P-Reps were able to implement this programmatic restriction, Shin had already transferred a substantial portion of the Exploited ICX (6,383,526 ICX tokens worth approximately $4,149,292) from his wallets to third party exchanges. Accordingly, members of the ICON Community reached out to the exchanges to enlist their assistance in addressing the harm from Shin's attack. The Community explained that the Exploited ICX had been erroneously generated as the result of a software malfunction and the exchanges readily agreed to freeze the exchange accounts holding Exploited ICX. Between the actions of the exchanges and the ICON Community, a significant portion of the Exploited ICX has been frozen, including approximately 6.7 million Exploited ICX in Shin's ICONex wallets.  Under Section 3.5.4(4) of the ICON Constitution, Shin was required to abide by those resolutions passed by the P-Reps intending to address the harm from Shin's attack.

47.     Shortly after Shin's attack, the ICON Community began attempting to identify the person(s) behind the attack.  Ultimately, Community members were able to identify a Twitter account (https://twitter.com/ICXFnatic) associated with the attack, which was held by an anonymous individual who went by the initials "MA", who the Foundation later confirmed was Shin. The Community reached out and sent a message to MA on Twitter notifying MA of the Community's knowledge of his involvement in the exploit, and their intent to enlist the assistance of law enforcement should he refuse to return the Exploited ICX voluntarily.  The Community also notified MA of their willingness to pay MA a "bug bounty" – a reward for discovering the software bug in Revision 9.  MA responded that he wanted "to negotiate peacefully" and inquired about the magnitude of the bug bounty. The Community advised Shin that it was prepared to pay him a

reward of two hundred thousand dollars ($200,000). Shin subsequently refused that offer and refused to return any of the Exploited ICX.

48.     Members of the ICON Community subsequently reported Shin's exploit to federal authorities. The Foundation is informed and believes that the Criminal Division of the U.S. Attorney's Office for the District of Colorado conducted an investigation and seized a substantial amount of the Exploited ICX and proceeds therefrom that Shin transferred to six different cryptocurrency exchanges: Kraken, Gemini, Coinbase, Velic, Binance.US and Binance.com.  The current value of the assets seized by the U.S Attorney is in excess of $15 million.  A breakdown of the seized assets which consist exclusively of Exploited ICX or other crypto or fiat currency that Shin acquired with Exploited ICX is reflected in the table below:

|  | Kraken | Gemini | Coinbase | Binance .US | Velic | Binance .com | TOTAL | Exchange rate to USD (Coin MarketCap (8/23/21 at 10:40 am) | Value in USD (at current exchange rate) |
|---|---|---|---|---|---|---|---|---|---|
| ETH | 275 | 25 | 0.18 | 591.55 | 13.00 | 1,788.76 | 2,693.49 | $3,342.79 | $9,003,771.44 |
| ICX | 149,999.94 |  |  | 20,167.27 | 100,101.68 | 1,620,084 | 1,890,353.88 | $1.54 | $2,911,144.98 |
| BTC |  | 6.50 | 0.05 | 37.90 |  | 3.29 | 47.75 | $ 49,581.44 | $2,367,017.95 |
| USD |  | 12,030.21 |  | 212,383.21 |  |  | 224,413.42 | $1.00 | $224,413.42 |
| LINK (Chainlink) |  |  |  | 4,153.39 |  |  | 4,153.39 | $28.72 | $119,285.36 |
| ADA (Cardano) |  |  |  | 105,960 |  |  | 105,960 | $2.92 | $309,403.20 |
| XRP (Ripple) |  |  |  | 120,826.75 |  |  | 120,826.75 | $ 1.24 | $149,825.17 |
| USDT (Tether) |  |  |  | 50,628.07 |  | 87,967.88 | 138,595.95 | $1.00 | $138,595.95 |
| BNB (Binance Coin) |  |  |  | 179.22 |  |  | 179.22 | $498.50 | $89,341.17 |
| REN (Ren) |  | 100,000 |  |  |  |  | 100,000 | $0.66 | $66,000.00 |
| XTZ (Tezos) |  |  |  | 4,805.15 |  |  | 4,805.15 | $4.20 | $20,181.63 |
| REP (Augur) |  |  | 12.91 |  |  |  | 12.91 | $29.95 | $386.65 |

TOTAL     $15,399,366.92

49.     The Foundation is further informed and believes that the District Attorney for Arapahoe County (the "DA") obtained a grand jury indictment of Shin in connection with Shin's attack on the Network. The Foundation is further informed and believes Shin was indicted on three

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  separate counts, including cybercrime for theft over $1 million, theft for over $1 million and money

2  laundering. A copy of a court filing evidencing the indictment is attached hereto as **Exhibit A**.  The

3  Foundation is further informed and believes that, based on the indictments, the DA is pursuing

4  criminal charges against Shin for his actions in exploiting the Network.

5  **V**

6  **CLASS ALLEGATIONS**

7  50.     The Foundation brings this action as a class action pursuant to Rules 23(a) and

8  23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following class of persons:

9  **CLASS**: All persons and entities who held ICX on August 22, 2020 at the time of Shin's exploit.

10  Excluded from the class is Shin and any person to whom he transferred Exploited ICX or assets

11  traceable to the Exploited ICX.  The Foundation seeks certification of the foregoing class.

12  51.     The Foundation reserves the right to amend the Class definition if further

13  investigation and/or discovery indicate that the class definition should be narrowed, expanded, or

14  otherwise modified.

15  52.     The members of the class for whose benefit this action is brought are so numerous

16  that joinder of all members is impracticable. Upon information and belief, there were thousands of

17  persons or entities who held ICX on August 22, 2020. The number of individuals and entities who

18  comprise the class are so numerous that joinder of all such persons is impracticable and the

19  disposition of their claims in a class action, rather than in individual actions, will benefit both the

20  parties and the courts. Class members may be identified from records maintained by the Foundation

21  and others in the ICON Community, and may be notified of the pendency of this action by mail or

22  electronic mail using the form of notice similar to that customarily used in class actions.

23  53.     The Foundation's claims are typical of the claims of the other members of the class.

24  All members of the class have been and/or continue to be similarly affected by Shin's wrongful

25  conduct as complained of herein. The Foundation is unaware of any interests that conflict with or

26  are antagonistic to the interests of the class.

27  54.     The Foundation will fairly and adequately protect the class members' interests and

28  has retained counsel competent and experienced in cryptocurrency, class actions and complex

1    litigation.

2    55.    The Foundation and its counsel will adequately and vigorously litigate this class

3    action, and the Foundation is aware of its duties and responsibilities to the class.

4    56.    Shin has acted with respect to the class in a manner generally applicable to each

5    class member. Common questions of law and fact exist as to all class members and predominate

6    over any questions affecting individual class members. The questions of law and fact common to

7    the class include, *inter alia*:

8         a.    Whether Shin is entitled to ownership of the Exploited ICX or the assets he

9    acquired with it;

10        b.    Whether the Exploited ICX should be destroyed and whether the assets Shin

11   acquired with the Exploited ICX should be held in trust for the benefit of the class.

12   57.    A class action is superior to all other available methods for the fair and efficient

13   adjudication of this controversy since joinder of all class members is impracticable. Furthermore,

14   as the injury suffered by individual class members may be relatively small, the expense and burden

15   of individual litigation makes it impossible as a practical matter for class members to individually

16   redress the wrongs done to them. There will be no difficulty in managing this action as a class

17   action.

18   58.    Shin's actions have generally had the same effect on each member of the class with

19   respect to the matters complained of herein, thereby making appropriate the relief sought herein

20   with respect to the class as a whole.

21   ## **FIRST CAUSE OF ACTION**

22   **(Money Had and Received / Unjust Enrichment / Restitution)**

23   59.    The Foundation incorporates the allegations contained in paragraphs 1 through 58

24   above as if fully set forth herein.

25   60.    The Network's generation of and delivery to Shin of the Exploited ICX was caused

26   by a computer malfunction and was the result of a reasonable mistake. Shin's receipt of the

27   Exploited ICX was wholly without consideration. At the time of his actions leading to his receipt

28   of the Exploited ICX, Shin was aware that the Network was operating in error as a result of a

1   software malfunction and took undue advantage of the situation.  Under the circumstances, Shin

2   had no legal right to the Exploited ICX mistakenly generated and delivered to him. Equity and good

3   conscience require Shin to return the Exploited ICX and the proceeds therefrom to the class.

4     61. The Foundation has demanded that Shin return the Exploited ICX but Shin has failed

5   and refused to return the Exploited ICX or the proceeds therefrom. The Foundation and the class

6   are entitled to restitution of disgorgement of, and/or the imposition of a constructive trust upon the

7   Exploited ICX and all profits, benefits, and other compensation obtained by Shin, attorneys' fees

8   and costs pursuant to California Civil Code section 1021.5, or as otherwise provided by statute or

9   contract and for such other relief that this Court deems just and proper.

10   **SECOND CAUSE OF ACTION**

11   **(Declaratory Relief)**

12     62. The Foundation incorporates the allegations contained in paragraphs 1 through 58

13   above as if fully set forth herein.

14     63. An actual controversy currently exists between the parties in that (i) Shin contends

15   that the Exploited ICX is his property and that he is entitled to retain the Exploited ICX and all

16   assets he acquired therewith and the Foundation and the class dispute Shin's contentions.

17   Accordingly, the Foundation and the class are entitled to a declaratory judgment under 28 U.S.C.

18   § 2201 setting forth the respective rights and obligations of the parties with respect to the Exploited

19   ICX.

20     64. Specifically, the Foundation and the class are entitled to a declaration that (a) the

21   Exploited ICX was generated as a result of a mistake; (2) Shin took undue advantage of an

22   unintended malfunction in the Revision 9 Update generating the Exploited ICX; (3) principles of

23   equity and good conscience require the return and/or destruction of the Exploited ICX; (4) Shin

24   holds any proceeds or assets acquired with the Exploited ICX in constructive trust for the benefit

25   of the class; and (5) Shin should be ordered to return for the benefit of the class any proceeds or

26   assets acquired with the Exploited ICX or, alternatively, the Exploited ICX should be destroyed.

27   **PRAYER FOR RELIEF**

28     WHEREFORE, the Foundation and the Class pray for relief and judgment as follows:

1.     Declaring that this action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying the Foundation as the Class representative and its counsel as Counsel for the Class;

2.     For an order requiring Shin to show cause, if any, why he should not be enjoined from transferring any Exploited ICX or proceeds therefrom during the pendency of this action;

3.     For a temporary restraining order, preliminary injunction and permanent injunction enjoining Shin from transferring any Exploited ICX or proceeds therefrom;

4.     An order requiring Shin to return any Exploited ICX or proceeds therefrom for the benefit of the class or, alternatively, the destruction of the Exploited ICX;

5.     Restitution of disgorgement of, and/or the imposition of a constructive trust upon the Exploited ICX and all profits, assets benefits, and other compensation obtained by Shin with the Exploited ICX;

6.     For the appointment of a receiver to oversee the Exploited ICX and all proceeds Shin acquired therewith;

7.     For an accounting of the Exploited ICX and all proceeds Shin acquired therewith;

8.     For an award in favor of the Foundation and the Class for their reasonable costs and expenses incurred in this action, including the Foundation's attorneys' fees and expert fees pursuant to California Civil Code section 1021.5, or as otherwise provided by law or equity;

9.     For costs of suit; and

10.    For such other relief as the Court may deem just and proper.

Dated: August 23, 2021          MANATT, PHELPS & PHILLIPS, LLP


By:  /s/ *Christopher L. Wanger*
     Christopher L. Wanger
     Misa K. Eiritz

Jason Gottlieb *Admitted pro hac vice*
Michael Mix *Admitted pro hac vice*
MORRISON COHEN, LLP

*Attorneys for Defendant ICON Foundation*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

23

COUNTERCLAIM