IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 21-y-00065-WJM-SKC

In re: Claimant Mark Shin (ICX)

---

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
TO SUPPRESS CRYPTO-ASSETS SEIZED PURSUANT TO
FEDERAL SEIZURE WARRANTS**

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

I.   INTRODUCTION ................................................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND .......................................................... 4

III. ARGUMENT .......................................................................................................... 9

   A.   Legal Standard for Suppression. ................................................................ 9

   B.   The Agent's Affidavit Neglected to Inform the Court that Mr. Shin had Filed
        a Lawsuit Against the ICON Foundation in Federal Court in California. .................. 10

   C.   The Seizure Warrant Affidavit Failed to Establish Probable Cause ........................... 13

      1.   The Elements of Wire Fraud and the Computer Fraud and Abuse Act
           (CFAA) ............................................................................................... 13

      2.   The Agent's Affidavit Does Not Support the Conclusion That There Was
           Probable Cause to Suspect Shin of Wire Fraud or Computer Fraud ................... 15

IV.  CONCLUSION ...................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Cases**

*ATS Group, LLC v Legacy Tank and Indus. Services LLC*,
    407 F. Supp. 3d 1186 (W.D. Ok. 2019) .................................................................... 11

*Cleveland v. United States*,
    531 U.S. 12 (2000) ..................................................................................................... 13

*Cloudpath Networks v. Secure W2 BV*,
    157 F. Supp. 3d 961 (D. Colo. 2016) ........................................................................ 14

*Franks v. Delaware*,
    438 U.S. 154 (1978) ..................................................................................................... 9

*Illinois v. Gates*,
    462 U.S. 213 (1983) ............................................................................................. 15, 17

*Leon v. United States*,
    468 U.S. 897 (1984) ..................................................................................................... 3

*MSC Safety Sols., LLC v. Trivent Safety Consulting, LLC*,
    No. 19-CV-00938-MEH, 2019 WL 5189004 (D. Colo. Oct. 15, 2019) .................... 14

*Satcom Sol. & Res. LLC v. Pope*,
    No. 19-CV-02104-CMA-GPG, 2020 WL 4511773 (D. Colo. Apr. 20, 2020),
    report and recommendation adopted, No. 19-CV-02104-CMA-NRN,
    2020 WL 2188922 (D. Colo. May 6, 2020) ............................................................. 14

*United States v Adams*,
    154 F. Supp. 3d 1202 (D.N.M. 2014, *aff'd*, 615 Fed App'x 502 (10th Cir 2015) .................... 10

*United States v. Avery*,
    295 F.3d 1158 (10th Cir. 2002) ............................................................................... 12

*United States v. Clark*,
    935 F.3d 558 (7th Cir. 2019) .................................................................................... 13

*United States v. Herrera*,
    782 F.3d 571 (10th Cir. 2015) ............................................................................... 9, 10

*United States v. Lake*,
    472 F.3d 1247 (10th Cir. 2007) ............................................................................... 13

*United States v. Leon*,
    468 U.S. 897 (1984) ................................................................................................. 10

*United States v. Moses*,
    965 F.3d 1106 (10th Cir. 2020) ............................................................................... 10

*United States v. Nelson*,
    190 F. App'x 712 (10th Cir. 2006) ............................................................................. 1

*United States v. O'Brien,*
    560 U.S. 218 (2010) ................................................................................................. 12

*United States v. Xiang*,
  12 F.4th 1176 (10th Cir. 2021) ............................................................... 13

*United States. v. Janusz*,
  135 F.3d 1319 (10th Cir. 1998) .............................................................. 11

*Van Buren v. United States*,
  593 U.S. __ (2021)................................................................................. 14

**Other Authorities**

18 U.S.C., § 1030........................................................................... 9, 13, 14

18 U.S.C., § 1343................................................................................. 9, 13

Plaintiff Mark Shin respectfully submits the following brief in support of his motion to suppress crypto-assets the FBI seized pursuant to federal seizure warrants issued in November 2020. *See* Shin's Motion Pursuant to Fed. R. Crim. P. 41(g) and the Fifth Amendment For the Return of Property ("41(g) Motion"), Exhibit I (Dkt. 1-9) (listing the warrants).[1] Given that these crypto-assets should be suppressed, there is no justification for their continued seizure and possession by the FBI. *See United States v. Nelson*, 190 F. App'x 712, 715 (10th Cir. 2006) (the retention of "innocuous and irrelevant" seized materials is unreasonable under Rule 41(g)).

## I. INTRODUCTION

In November 2020, acting in conjunction with the U.S. Attorney's Office in Colorado, the FBI obtained and executed a dozen seizure warrants targeting crypto-assets held by Mr. Shin personally as well as on a number of crypto exchanges both in the United States and abroad. *See* 41(g) Motion at 15-17 (Dkt. 1); *id.*, Exhibit I (Dkt. 1-9). The FBI thereby seized crypto-assets now valued at approximately $20 million. These seizure warrants targeted ICX tokens minted through a software bug that the issuer of the tokens, ICON, inserted into its own software as an apparent error during a network update.

After extensive briefing, the federal government declined to pursue forfeiture of the seized assets, informing Magistrate Judge Hegarty in matter 21-MC-00117 on July 12, 2021, that the United States "will not be filing a federal civil forfeiture complaint by the July 12, 2021, deadline and has foregone federal forfeiture proceedings in favor of state related proceedings, pursuant to 18 U.S.C. Section 981(e)." Shin's Reply in Support of Motion Pursuant to Fed. R. Crim. and the Fifth Amendment for the Return of Property ("41(g) Reply") at 7 (Dkt. 15). The

---

[1] The majority of the warrants were issued in November 2020 (20-MC-00202-KLM through 211, 213 and 214); a follow-on warrant was issued in January 2021. *See* 21-SW-00004-MEH.

State of Colorado had been informed about the case for the first time in June 2021. Concurrent with the federal government's decision not to pursue forfeiture of the seized assets, the State issued an indictment on June 29, 2021, charging Mr. Shin with theft of the minted ICX crypto-assets from "ICON Nation," an ill-defined entity that the State sometimes identifies with "every user of the ICON Network," and, at other times with actual holders of ICX in August 2020. *See* Exhibit A, *People v. Shin*, 21-CV-31394, Indictment (June 30, 2021).[2]

In other words, the State's theory of the case—created out of thin air in only three weeks after three Assistant United States Attorneys led a nine-month federal investigation that culminated in a declination—is that Mr. Shin's ICX were unauthorized by ICON and minted directly into Mr. Shin's digital wallet, while at the same time, these same ICX were stolen from all users of the ICON Network or owners of *other* ICX, including Mr. Shin himself. The State's indictment makes no sense, and to this day, the State has produced no discovery supporting this novel and unprecedented theory of ownership.

In the interim, the government has prevented Mr. Shin from recovering his unlawfully seized assets. The State's indictment contained *no* forfeiture provisions. And while State authorities did *file* a civil asset forfeiture complaint on August 13, 2021 (*see* Arapahoe County district court case 21-CV-31394), the State *neglected* to serve the complaint by October 17, 2021, despite a State court order mandating service within 63 days of filing. *See* Exhibit B, *People v. Shin*, 21-CV-31394 Delay Reduction Order (Aug. 13, 2021).[3] The seized crypto-assets

---

[2] Either definition includes Mr. Shin himself, who both owned ICX and used the ICON Network in August 2020.

[3] Together with the civil complaint, the State sought a Temporary Restraining Order concerning the crypto-assets seized by the FBI pursuant to the federal seizure warrants at issue in this motion. On November 10, 2021, Arapahoe County District Court Judge John E. Scipione granted the TRO and ordered the seized federally seized crypto-assets to remain in the "custody of the

thus remain in federal possession more than a year after this Court issued federal seizure warrants and six months after Mr. Shin moved for their return, leaving Mr. Shin with no adequate remedy to contest the unlawful seizure of the assets.[4]

Accordingly, while reasserting the claims that are *sub judice* in this Rule 41(g) action, Mr. Shin also respectfully asks this Court to suppress the crypto-assets obtained through the federal seizure warrants and return his property to him for the additional reason of the material omissions in the affidavit filed in support of the seizure warrants that would have vitiated the probable cause supporting the warrant had the omitted material been included in the affidavit. In the alternative, a *Franks* hearing is needed to ascertain whether the seizure warrants can withstand judicial scrutiny in light of these material omissions.[5] Moreover, the affidavit filed in support of the warrant was so lacking in probable cause, moreover, that a reasonable agent's belief in the warrant's "existence" was entirely "unreasonable" under *Leon v. United States*, 468 U.S. 897 (1984).

---

Arapahoe County Court and in *possession* of Federal Bureau of Investigations [sic] until further order of this Court." This court order was served on Mr. Shin via mail on November 19, 2021.

[4] Mr. Shin's Rule 41(g) motion, which is *sub judice*, raised due process claims in May 2021 based on the length of time that the crypto-assets had been seized without providing him with an opportunity to challenge the seizure. Now, more than a year after the initial warrants were issued, and six months after the original due process concerns were raised, Mr. Shin reiterates those same due process claims. Indeed, the additional passage of time here only buttresses his due process arguments. Moreover, the State's failure to provide Mr. Shin with *any* evidence supporting their novel theory of theft from "ICON Nation" compounds the need for resolution of Mr. Shin's due process claims in federal court.

[5] At Dkt. 15 (filed on July 19, 2021), Mr. Shin moved for a *Franks* hearing; however, Mr. Shin did not yet have the underlying seizure warrants' affidavits at that time. With this brief, Mr. Shin reiterates his request for a *Franks* hearing, providing additional factual analysis and legal support based on the seizure warrant affidavits. *See also* Dkt. 1 at 25-26.

## II. RELEVANT FACTUAL BACKGROUND

The factual history of this case is set forth in prior briefs. *See* Dkt. 1, 15, 18 and 22. The facts relevant to this brief, however, are recounted below.

The FBI began the investigation into Mr. Shin's conduct in early October 2020 based on a false report from ICON's counsel to the FBI, which claimed that Mr. Shin had engaged in an "attack on the ICON Blockchain," and that ICON had been the victim of an "unauthorized hack." Exhibit C at 6 (Oct. 13, 2020, email stating that ICON would like "to formally report the *unauthorized hack* of the Icon blockchain"); *id.* at 2 (October 19, 2020, email attaching a "summary of the attack on the Icon Blockchain"). As is now clear with the federal government's declination, there was no unauthorized hack and ICON's representations were inaccurate.[6]

On October 20, 2020, shortly after the FBI began its investigation, Mr. Shin, the purported "attacker," publicly filed a civil complaint in federal district court in California *against* ICON. *See* Exhibit E, Complaint, 20-CV-07363-WHO (N.D. Cal. Oct. 20, 2020). One week later, on October 27, 2020, ICON's counsel provided the FBI, including the agent who became the affiant on the seizure warrant affidavits, with a copy of that civil complaint. *See* Exhibit D (Oct. 27, 2020, email attaching the civil complaint). The complaint provided a detailed description of Mr. Shin's conduct, which demonstrated that Mr. Shin had not hacked ICON, had not stolen ICX from anyone, and in fact had been criminally extorted by the ICON Foundation. *See* Exhibit E.

Specifically, the Complaint described how Mr. Shin discovered the Bug:

---

[6] This was deliberate misinformation provided by the ICON Foundation to the government, which knew that no "hack" or "attack" had occurred. Had ICON simply told the truth—that there was a software bug that allowed hundreds of users to create ICX out of the ether—the FBI would not have pursued the case because those actions do not violate federal law.

1     62.    On August 22, 2020, Shin attempted to direct some of his staked ICX tokens from

2 being delegated to one Rep to being delegated to another through the ICONex wallet. He selected

3 a new Rep and "voted" his delegated tokens toward that Rep.

4     63.    After initiating the redelegation process within ICONex, a process he had

5 performed many times before, Shin noticed that 25,000 new ICX tokens had appeared in his wallet.

6     64.    Shin thought that there was a visual bug with the wallet software. He tried

7 redelegating his tokens again and saw that another 25,000 ICX tokens had appeared in his wallet.

8     65.    Shin did nothing to access or alter (nor could he have) the underlying ICON

9 network protocol, nor does he know why the protocol awarded him 25,000 newly minted ICX

10 tokens every time he initiated the redelegating process.

*Id.* ¶¶ 62-65. The Complaint also provided visual images of the computer processes Mr. Shin

undertook to engage the Bug. *Id.* ¶¶ 66-70. These images showed that Mr. Shin was awarded

25,000 extra tokens every time he initiated the redelegation process of the ICON network as any

other user of ICON would do. The complaint provided that: "Shin's actions were not malicious.

The authors and developers of the Revision 9 Proposal may not have intended for the software

fork to behave as it did, but this was the proposal that the Reps had agreed to and did adopt into

the network." *Id.* ¶ 73.

The complaint next discussed an August 24, 2020, blog post on Medium made by ICON.

The complaint stated that: "On August 24, 2020, ICON announced on Medium the release of

another software fork proposal (the "Revision 10 proposal") that sought to correct the bug that

Shin discovered." *Id.* ¶ 79-80. The Medium post explained that on August 22, "an account had

"attack[ed] the ICON Network" and so they had to remove a function and "blacklist the

attacker's accounts." *Id.* ¶ 79. ICON also disclosed Shin's wallet address, which linked the attack

to Shin for many members of the cryptocurrency community. *Id.* ¶ 80. "ICON admitted that [e]xchanges were notified with specific accounts to freeze and to disable deposits and withdrawals" and "informed the ICON community that they were able to recover the majority of the stolen funds and had plans to destroy 20 million ICX tokens from circulation to account for additional tokens that had been created." *Id.* (internal citations omitted).

The complaint then explained how ICON's Medium blog post was not true. The complaint provided:

> • *First*, it is simply false that ICX recovered the majority of the funds. Shin still has access to the majority of the 14 million ICX tokens he generated, despite ICON's unlawful attempts to prevent him from accessing them.

> • *Second*, Shin did not "attack" the network. The ICON foundation issued a software fork that empowered any user to create additional ICX tokens. Shin merely found the bug before many other people.

> • *Third*, it is simply false that the tokens were all created by a single account. Shin created 14 million tokens, and ICON admitted that nearly 20 million ICX tokens were created through the bug. Other users thus created 6 million tokens.

*Id.* ¶ 81. The Complaint then detailed how ICON had extorted Shin after the Bug by threatening to report to "law enforcement with 24 hours" if Shin did not "return the ICX tokens." *Id.* ¶ 85.

On November 20, 2021, three weeks after having received the publicly filed complaint directly in an email from ICON, the FBI agent went ahead and submitted an affidavit for 11 seizure warrants in federal district court in Colorado. In describing the agent's basis for writing the affidavit, the agent stated that the "facts set forth came from his "personal observations and review of records, [his] training and experience, written reports, and information obtained by Icon founder Min Kim and his attorney representatives." Exhibit F ¶ 5.[7]

---

[7] The affidavits submitted by the federal agent in support of the dozen search warrants are nearly identical; as a result, only one sample affidavit is being included here.

The affidavit went on to use ICON's description of Shin as an "attacker," stating that ICON's attorneys had advised the FBI "that an attack had occurred on the Icon Foundation blockchain," which permitted an "attacker" to "fraudulently acquire millions of dollars in cryptocurrency." *Id.* ¶ 16. To explain how this "attack" happened, the affidavit stated that there "was a vulnerability in the Revision 9 Update, which allowed for the exploitation of the network by allowing the unauthorized creation or minting of unlimited ICX. This exploitation could only be done by holders of accounts that were in the middle of unstaking; if such holders had been unstaking a portion but not all of the ICX in the account, and decided to "change votes" (select delegates) within the ICX network." *Id.* ¶ 22. While labeling this an "attack," in actuality, the affidavit merely described how users were supposed to interact with the ICON Network—by undelegating ICX and changing their votes to a different P-Rep—and that a byproduct of using the network *as intended* was additional tokens being generated in the user's wallet. *Id.* ¶¶ 23, 25.

The affidavit continued on to note that "the attacker was unstaking approximately 25,000.00 ICX. When the attacker discovered the vulnerability, he exploited the vulnerability by repeatedly using the 'SetDelegate' function. This allowed him to create or mint approximately 25,000 unauthorized ICX every time he changed the vote/select delegate function." *Id.* ¶ 25. Once again, the affidavit described Mr. Shin's performance of a process—SetDelegate—that was created, enabled, and encouraged by ICON.

The affidavit then declared that "over an 11-hour time period, on August 22, 2020, the attacker did this over 558 times, resulting in an approximate total of 13,927,157 unauthorized ICX (estimated $8,988,406.00 in U.S. dollars)." *Id.* From these actions, the affidavit concluded that "the attacker's knowing and intentional decision to 'change votes' and reselect delegates over 500 times in an 11-hour period to exploit the glitch in Icon Foundation's network

constitutes a scheme to defraud through false or fraudulent pretenses to obtain ICX through a wire communication in foreign commerce." *Id.* ¶ 39. The affidavit did *not* state that users of the ICON Network are somehow prohibited from delegating or voting over 500 times or that doing so violates any contractual or statutory rule; instead, because ICON Network is a decentralized network, there are no limitations on the number of times that users can delegate their ICX to various P-Reps. The affidavit also omits any allegation that the ICX created were the property of another, or property in another's hands. In short, the affidavit concocted a scheme to defraud out of conduct entirely permitted by ICON's network with consequences stemming from ICON's shoddy coding.

The affidavit claimed that when ICON discovered the "attack," they blocked the "attacker's IP address." *Id.* ¶ 26. The "attacker," in response, "changed the IP address he was using for the attack, and then continued the attack of the network." *Id.* The affidavit provided no basis for how the affiant "knew" this—a short call to Shin's internet provider would have revealed that Mr. Shin did not change his IP address, but rather the internet provider automatically changed it as part of its Dynamic IP service. This conclusion was simply presented as a fact with no corroboration.

Critically, the agent's affidavit at no point mentioned that Mr. Shin had just filed a lawsuit against ICON or even that a civil lawsuit had been initiated. Instead, the agent chose to simply ignore the allegations in the already filed civil lawsuit, thereby making it appear that the information obtained from ICON and its attorneys was corroborated and uncontested. In fact, as we now know, Mr. Shin did not break any federal laws, and the information provided by ICON to the government neither supported a prosecution nor a federal seizure.

Based on the allegations in the agent's affidavit, the FBI obtained nearly a dozen federal seizure warrants in November 2020, and an additional warrant in January 2021, which resulted in the seizure of what is now approximately $20 million worth of crypto-assets. These seizure warrants purported to establish probable cause to believe that Mr. Shin had committed wire fraud and computer fraud, in violation of Title 18, U.S.C., §§ 1030 and 1343. *See* Exhibit F ¶¶ 39*-43. For the reasons that follow, it is clear that these warrants must be suppressed, removing any shred of justification for the continued retention of the crypto-assets.

### III. ARGUMENT

The seizure warrants must be suppressed, and the assets obtained through the warrants returned to Mr. Shin, because there were material omissions in the warrants' affidavit that, if included in the warrants, would have vitiated the affidavit's attempt to show probable cause. And, regardless of the omissions, there was never probable cause to believe that Mr. Shin violated either federal statute (wire fraud and computer fraud), despite the assertions in the warrants.

### A.    Legal Standard for Suppression.

Under *Franks v. Delaware*, 438 U.S. 154 (1978), the Fourth Amendment is violated when "(1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued." *United States v. Herrera*, 782 F.3d 571 (10th Cir. 2015).[8] If a warrant contains any "intentional, knowing, or reckless misstatements in the warrant application affidavit," the

---

[8] In moving for a *Franks* hearing or to prove a *Franks* violation, a defendant's allegations "must be accompanied by an offer of proof … affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks*, 438 U.S. at 171. Here, Mr. Shin attaches emails and a complaint publicly filed in federal court in San Francisco which confirms that the agent was aware of certain information but neglected to put it in the seizure warrant affidavit.

court must strike those averments and "assess the affidavit without them." *Id.* at 575. Likewise, if a warrant contains "intentional, knowing or reckless omissions, a court must add in the omitted facts and assess the affidavit in that light." *Id.* If a defendant makes a substantial preliminary showing of either false statements or material omissions, and, a correct affidavit does not support a finding of probable cause, a defendant is entitled to a *Franks* hearing. *United States v. Moses*, 965 F.3d 1106, 1110 (10th Cir. 2020).

In addition, it is axiomatic that the government, when seeking a search or seizure warrant, must provide a magistrate with a substantial basis for determining the existence of probable cause for issuance of a warrant. When assessing whether suppression is an appropriate remedy for evidence or assets seized pursuant to a warrant, *United States v. Leon*, 468 U.S. 897 (1984), sets forth the governing standard. Suppression of evidence obtained from a warrant is an appropriate remedy where, like in *Franks*, "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* at 923. Suppression is also appropriate where, as relevant here, the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.*

### B.     The Agent's Affidavit Neglected to Inform the Court that Mr. Shin had Filed a Lawsuit Against the ICON Foundation in Federal Court in California.

The Agent's affidavit contained this glaring omission: it neglected to tell the magistrate judge that Mr. Shin, the alleged perpetrator of a vast fraud, had retained a law firm with a specialization in in crypto-assets to sue ICON in federal court in the Northern District of California. The Agent's omission was undeniably material to the magistrate judge's determination of probable cause. *United States v Adams*, 154 F. Supp. 3d 1202, 1214 (D.N.M. 2014, *aff'd*, 615 Fed App'x 502 (10th Cir 2015) (the relevant "question is whether the affidavit

he submitted to the magistrate judges, without all of the intentional or reckless misrepresentations, would convince a reasonable person that Defendant" committed a crime).

*First*, it is almost unprecedented for someone who allegedly commits a crime (Mr. Shin) to turn around and file a lawsuit against the purported crime "victim" (ICON). That Mr. Shin did so, *in and of itself*, would have been material to the magistrate judge's determination that probable cause existed. Clearly, Mr. Shin did not believe that he had done anything wrong given that he sued to recover his property from ICON. *See United States. v. Janusz*, 135 F.3d 1319, 1323 (10th Cir. 1998) ("In order to prove a scheme to defraud, the government must show conduct *intended* or reasonably calculated to deceive persons of ordinary prudence or comprehension.") (emphasis added); *ATS Group, LLC v Legacy Tank and Indus. Services LLC*, 407 F. Supp. 3d 1186, 1191 (W.D. Ok. 2019) (violating the CFAA requires "intentionally" transmitting code). The fact of the filing alone therefore would have been material to the court's probable cause determination.

*Second*, the 20-page civil complaint provided the agent (and would have provided the court) with a detailed explanation of why Mr. Shin's conduct was not illegal. The complaint provided significant evidence demonstrating that Mr. Shin did not hack into or alter ICON's computer code; the complaint explained conclusively how the bug actually worked and why it was not an attack; and the complaint provided evidence that ICON chose to extort Mr. Shin after discovering the Bug. Similarly, the complaint demonstrated that Shin had no "scheme to defraud" but rather stumbled upon a bug issued by ICON. Ultimately, the Complaint conclusively showed that ICON was hardly a victim of fraud, but rather the producer of shoddy code who sought to deflect responsibility for that code onto one of its consumers.

The government was not obliged to accept the allegations in Mr. Shin's civil complaint as

true, but that is not the standard at issue. Instead, once presented with a plausible (and ultimately correct) version of events filed by legal counsel in federal court, the FBI agent was required to include that competing version of events in the search warrant affidavit (or, at a minimum, included the fact that a civil lawsuit filed by Shin existed). When drafting the warrant, the agent could have chosen to include the allegations in the complaint and not dispute them (thereby leaving it to the magistrate judge to determine whether probable cause existed for the issuance of the warrants); *or*, the agent could have provided evidence or analysis to refute the allegations. Either way, knowing that there were facts that reputable attorneys had endorsed and that directly contradicted the tale ICON had spun, the agent was obligated to inform the court about these contrasting views. Simply put, the court was misled, and this omission was obviously material to the probable cause finding.

*Third*, the affidavit expressly relies on the information provided by ICON's founder (Min Kim) and ICON's attorneys. No competing information is presented. The magistrate judge was thus led to believe that the information that these individuals provided to the federal government was accurate and reliable. In fact, as we now know—including given the federal government's declination here—the information was inaccurate. Mr. Shin was not an "unauthorized hacker," as ICON claimed, and he did not intrude into ICON's blockchain. *See* Exhibit C. By leaving out Mr. Shin's publicly filed allegations, ICON effectively bolstered the credibility of ICON and its counsel, which misled the magistrate court into granting the warrant. *See United States v. Avery*, 295 F.3d 1158, 1168 (10th Cir. 2002), *abrogated on other grounds by United States v. O'Brien*, 560 U.S. 218 (2010) ("[C]ourts reviewing the alleged omission of information bearing on an informant's credibility ask whether, assuming the magistrate judge had been apprised of the omitted information, the judge still would have found probable cause to issue the search

12

warrant."); *United States v. Clark*, 935 F.3d 558, 565 (7th Cir. 2019) (in determining whether to grant a Franks hearing, "where a warrant is obtained based on an informant's tip, information about the informant's credibility or potential bias is crucial") (internal citation omitted).

The agent's intentional or reckless omissions thus render the warrant lacking in probable cause. Accordingly, the warrant must be suppressed, and the property that is still in federal custody returned. Where an affidavit excludes material information from a search warrant, and the inclusion of those omissions would vitiate a finding of probable cause, the district court must suppress the evidence seized under the warrant. *United States v. Xiang*, 12 F.4th 1176, 1182 (10th Cir. 2021)

**C.   The Seizure Warrant Affidavit Failed to Establish Probable Cause**.

1.   *The Elements of Wire Fraud and the Computer Fraud and Abuse Act (CFAA)*

The seizure warrants at issue asserted that the government had probable cause to believe that Mr. Shin committed two crimes: wire fraud, under 18 U.S.C. § 1343, and fraud in connection with computers, under 18 U.S.C. § 1030 (Computer Fraud and Abuse Act).

The elements of wire fraud are a scheme to defraud, an interstate wire communication, and a purpose to use the wires to execute the scheme. *United States v. Lake*, 472 F.3d 1247, 1255 (10th Cir. 2007). The government must establish that the property obtained by the alleged perpetrator must first belong to a cognizable victim. *Cleveland v. United States*, 531 U.S. 12, 15 (2000) ("It does not suffice, we clarify, that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained *must be property in the hands of the victim*.") (emphasis added).

The CFAA, in turn, prevents individuals from accessing a computer without authorization or exceeding his or her authorized access. On June 3, 2021, the Supreme Court

rejected the government's expansive interpretation of the CFAA. *See Van Buren v. United States*, 593 U.S. __ (2021). The Court explained that the CFAA created criminal liability for two kinds of violations. *First*, the CFAA applied to those who "knowingly access[] a computer without authorization," 18 U.S.C. § 1030 (a)(2), which encompasses only "so-called outside hackers— those who access a computer without any permission at all." *Van Buren*, 593 U.S. at __ (slip op. at 13). This prong could not apply to Mr. Shin, because he did not hack into or manipulate ICON's network, and he was fully permitted to access and use the ICON network. The *second* prong of the CFAA covered those who "exceed[ ] authorized access," 18 U.S.C. § 1030 (a)(2), which applies to a so-called "inside hacker," who "accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren*, 593 U.S. at __(slip op. at 13).

The standard set forth in *Van Buren* was already the law in Colorado. *See Cloudpath Networks v. Secure W2 BV*, 157 F. Supp. 3d 961, 983 (D. Colo. 2016) (holding that the term "exceeds authorized access" in "the CFAA does not impose criminal liability on individuals who are authorized to access company data but do so for disloyal purposes; it applies only to individuals who are allowed to access a company computer and use that access to obtain data they are not allowed to see for any purpose"); *MSC Safety Sols., LLC v. Trivent Safety Consulting, LLC*, No. 19-CV-00938-MEH, 2019 WL 5189004 (D. Colo. Oct. 15, 2019) (adopting the analysis in *Cloudpath*); *Satcom Sol. & Res. LLC v. Pope*, No. 19-CV-02104-CMA-GPG, 2020 WL 4511773 (D. Colo. Apr. 20, 2020), report and recommendation adopted, No. 19-CV-02104-CMA-NRN, 2020 WL 2188922 (D. Colo. May 6, 2020) (same).

2.      *The Agent's Affidavit Does Not Support the Conclusion That There Was Probable Cause to Suspect Shin of Wire Fraud or Computer Fraud*

It is black-letter law that "an affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). The allegations here fall far short of providing probable cause. In fact, the allegations, even accepted as true, do not show that Mr. Shin could have committed *any* federal crime. Because of this, the affidavit was so lacking "in indicia of probable cause" that no reasonable agent would have relied on the warrants, and as a result, the evidence obtained must be suppressed.

*First*, the affidavit did not set forth probable cause to believe that Mr. Shin committed wire fraud, for two separate reasons. As an initial matter, the affidavit does not allege any fraud or scheme to defraud. The affidavit alleges that Mr. Shin used the SetDelegate feature *as every other person used the feature*, and that as a result of his normal and permitted use, ICON awarded Mr. Shin with 25,000 ICX each time he did it. There was no hacking, no code intrusion, and no false representations that would have rendered Mr. Shin's use of ICON as intended a "scheme to defraud." The only argument for why what Mr. Shin did was fraudulent was the fact that he engaged in this action more than 500 times over an 11-hour period. Such use was permissible within ICON's ecosystem. The decentralized ICON network placed no limitations on the number of times a user could employ the SetDelegate function, and in fact, some wallets have engaged in *millions* of transactions using ICON's ecosystem.[9] Mr. Shin's counsel can find

---

[9] For example, the wallet address starting with hx03 has engaged in 2,556,029 transactions between May 21, 2020, and the present (avg. approx. 4,647/day). *Available at* https://iconwat.ch/address/hx037c73025819e490e9a01a7e954f9b46d89b0245 (last accessed Nov. 22, 2021).  Likewise, the wallet address starting with hx79 has engaged in 1,258,900 transactions between August 25, 2020, and the present (avg. approx. 2,773/day). *Available at* https://iconwat.ch/address/hx79dec00316ca695637d7d02143c07ac72cd3018 (last accessed Nov. 22, 2021).  The wallet address starting with hx1a has engaged in 1,173,633 transactions between February 16, 2021, and the present (avg. approx. 4,207/day). *Available at* https://iconwat.ch/address/hx1a5f0ce1d0d49054379a554f644f39a66a979b04 (last accessed Nov.

no case law suggesting that using a computer network *as it was meant to be used* somehow transforms a computer bug into a scheme to defraud.

The affidavit also failed to allege wire fraud in that there are no facts indicating, as *Cleveland* requires, that Shin obtained ICX from another person or entity. This is because, as ICON's counsel later conceded at a hearing in federal court in California, the ICX obtained by Shin was minted out of the ether. Dkt. 1 41(g) Motion, Exhibit H (Dkt. 1-8). The affidavit provides that a user could gain ICX by changing their votes or delegates, and that Shin did so, but does not explain how those tokens were plausibly taken from any other individuals or entity (and in fact, they were not). *See* Exhibit F ¶¶ 23, 25, 28 (explaining how a user could generate "*newly minted*" tokens via the bug). Indeed, the Agent's affidavit is clear that "the ICX was minted into the ICON Foundation wallet hx76" which is Mr. Shin's wallet *Id.* ¶ 35. The affidavit thus fails to allege wire fraud.

*Second*, the affidavit did not establish probable cause that he violated the CFAA, because he was neither an inside hacker nor an outside hacker under the law in *Colorado*, even before *Van Buren*. 41(g) Motion at 21-23 (Dkt. 1); 41(g) Reply at 4-6 (Dkt. 15). Shin used the ICON Network *exactly* as he found it and as ICON intended. He did not intrude into any networks, he did not alter code, and he certainly did not exceed the access that ICON provided him. *See* Exhibit F ¶ 23 (describing how the bug was triggered by selecting and changing delegates). Simply put, the affidavit does not allege that Mr. Shin either hacked into ICON's network or that Mr. Shin accessed protected areas of a computer network that were off-limits to him, and as a

---

22, 2021).  Counsel for Mr. Shin has located numerous other wallets that have engaged in hundreds of thousands of transactions. In short, engaging in approximately 500 transactions over an 11-hour period (as Mr. Shin allegedly did) is far from abnormal within the ICON Network, and it certainly does not mean that Mr. Shin committed fraud. This evidence, all publicly available, was also left out of the agent's affidavit.

result, it fails to allege violations of the CFAA.

*Third*, the affidavit provides no facts supporting significant conclusions made by the agent. *See Gates*, 462 U.S. at 239 ("An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue … failed to meet this requirement … Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.") For example, the affidavit states that Mr. Shin changed his IP address to continue attacking ICON. The affidavit provides no explanation for how the agent knew or obtained that information or why the information was correct. There is no corroboration at all. In fact, the IP service provider, CenturyLink, utilizes dynamically assigned IP addresses for home customers such as Shin, meaning that they change automatically, and there is no evidence indicating that Mr. Shin changed the IP address himself. By simply asserting a conclusion here, the agent made it appear that he had obtained evidence that Mr. Shin purposely changed his IP address, when in fact, he did not. Likewise, there is the same issue with him being labeled an "attacker" in the affidavit. There is no evidence that Mr. Shin attacked anything, and the civil complaint filed in federal court by Mr. Shin establishes as much.

*Fourth*, as described above, the affidavit improperly boosted the credibility of ICON and its counsel by making it appear that the information was true and uncontested, when in fact, the federal complaint filed by Mr. Shin showed otherwise.

In sum, the search warrant affidavit provides no basis to support a finding of probable cause for either wire fraud or computer fraud. The *Leon* "good-faith" exception would normally apply, but under these circumstances the agent's "official belief" in the warrants' existence was "entirely unreasonable." This is true for multiple reasons. *First*, the agent consciously omitted

facts from the affidavit that negated the allegations contained in the affidavit. *Second*, the affidavit, at best, showed that Mr. Shin had engaged with the ICON system as it was meant to be used. Mr. Shin did not defraud anyone. *Third*, the governing law in Colorado even prior to *Van Buren* made clear that Mr. Shin had not violated the CFAA. *Fourth*, and finally, the agent provided no corroborating information for many of the allegations in the affidavit (such as the intentional IP address changing). Given all this, the agent did not rely in "good faith" on the seizure warrants issued by the Magistrate judges.

## IV. CONCLUSION

For the reasons stated above, the Court should grant Shin's motion to suppress the seizure warrants, or, at a minimum, grant him a *Franks* hearing. In addition, the unlawfully seized crypto-assets, which still remain in federal custody, should be returned to Mr. Shin.

DATED: November 22, 2021

Respectfully Submitted,

*s/ Eric S. Rosen*
Eric S. Rosen, #NY 4412326
Kyle Roche, #NY 5517776
ROCHE FREEDMAN, LLP
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Email: erosen@rochefreedman.com
Email: kyle@rochefreedman.com

Jeffrey S. Pagliuca, #12462
HADDON MORGAN & FOREMAN, P.C.
150 E. 10th Avenue
Denver, CO 80203
Telephone: (303) 831-7364
Email: jpagliuca@hmflaw.com

*Counsel for Mark Shin*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2021, I electronically filed the foregoing **BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPRESS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record. Counsel has also emailed counsel for the government for their position, who oppose this motion on the grounds that it is "frivolous."

*s/ Christina Larkin*