IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 21-y-00065-WJM-SKC

In re: Claimant Mark Shin (ICX)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO SUPPRESS CRYPTO-ASSETS SEIZED
BY THE FBI AND FOR A HEARING PURSUANT TO *FRANKS V. DELAWARE***

Claimant Mark Shin hereby submits this reply memorandum of law in response to the government's response (Dkt. 29) ("Response") to his motion, made as part of his Rule 41(g) filings, to suppress the crypto-assets seized by the government and have the government return the seized assets to Mr. Shin.

### A. THE SEIZURE WARRANT AFFIDAVIT DID NOT ESTABLISH PROBABLE CAUSE, AND A *FRANKS* HEARING IS WARRANTED.

#### 1. The seizure warrant affidavit failed to establish wire fraud.

The government's Response effectively concedes that Agent Wall's affidavit (the "Wall Affidavit," filed at Dkt. 27 Ex. F) did not "set forth a sufficient basis to believe that he had taken property from another," as is required to establish probable cause to believe that evidence or assets were proceeds of wire fraud. (Response at 10.)

The government's argument regarding Mr. Shin's alleged theft is premised almost entirely on paragraphs 16 and 31 of the Wall Affidavit, which purport to establish prior ownership of the ICX by claiming that ICON had a subjective belief that Mr. Shin "had taken property from the ICON Network." (Response at 10-11.) A company's subjective belief about ownership of crypto-assets is irrelevant without strong corroboration, which the Wall Affidavit did *not* provide. *Cf. United States v. Minh Hoang*, 2019 WL 5696306 (D. Utah Nov. 4, 2019) (court considered subjective belief regarding the *existence* of a trade secret to be relevant because there were compelling corroborating factors including "employment contracts and the monitoring of its employees' computers" that confirmed this subjective belief).

In addition, the paragraphs referenced by the government support no inference that the crypto-assets obtained by Mr. Shin had been owned before by the ICON Network. Paragraph 16 describes an "attack" that allowed an "attacker" to "fraudulently acquire millions of dollars in cryptocurrency." Paragraph 31 describes a "blockchain intrusion and unauthorized minting and transfer of ICX." Even if accepted as true, these allegations provide no basis for believing that Mr. Shin had taken ICX *from the ICON Network*, as the government now argues. (Response at 10.) Just as fundamental, the generic allegations referred to by the government concerning the blockchain (paragraphs 8, 10 and 23) actually undermine the government's argument. For example, paragraph 23 of the Wall Affidavit (Response at 11) states that "Icon Network is structured to be a 'self-governing' *decentralized* autonomous organization," meaning that there is no central authority that owns or controls the currency. In short, unlike with a centralized system (such as the Federal Reserve), a *decentralized* network, such as the "Icon Network," does not own or control the crypto-assets produced by the Network.

Finally, the government acknowledges that ICON's own attorneys have conceded that the crypto-assets obtained by Mr. Shin did not belong to the ICON Foundation/Network, but were "created out of the ether." (Response at 11 n.4.) This admission is devastating to the government's argument and confirms that any allegations contained in Agent Wall's affidavit, which purports to establish that the ICX initially belonged to the ICON Network, are flat-out wrong. Rather than addressing this contradiction, the government merely says in a footnote that "the arguments of an attorney are not facts, especially when the evidence of record demonstrates otherwise." (*Id*.) This unintentionally ironic argument flies in the face of the fact that the government's Response relies almost exclusively on unverified and uncorroborated assertions *by those same ICON attorneys* to claim that the Wall Affidavit established probable cause. *See, e.g.*, ¶ 16 ("[T]he Denver Division of the FBI was *contacted by attorneys with Mannatt, Phelps and Phillips*, representing Icon Foundation and its owner, Min Kim. *The attorneys advised* the FBI that an attack had occurred on the Icon Foundation and its owner, Min Kim."); ¶ 31 ("On October 15, 2020, the Icon Foundation, *through its attorneys*, advised that an internal investigation revealed that Mark Minsuk Shin … [was] involved in the blockchain intrusion and unauthorized minting and transfer of ICX."). The government's attempt to have it both ways should be rejected.

2. **The seizure warrant affidavit failed to allege violations of the Computer Fraud and Abuse Act (CFAA).**

The government makes no effort to explain how the affidavit establishes probable cause to believe that Shin violated the CFAA. The government simply states, in conclusory fashion, that the "affidavit also set[s] forth a basis to believe that Shin had violated" the CFAA. (Response at 11.) The lack of citation in the government's brief is hardly surprising given that

3

there is not a single allegation detailing how Shin exceeded his "authorized access" to ICON's Network. To the contrary, the affidavit details how Mr. Shin did *not* exceed his "authorized access." The affidavit explained how all participants in ICON's network may "manage his or her account, including options to stake or unstake UCX, and changing votes," ¶ 24, and that Mr. Shin then did precisely that, repeatedly using the SetDelegate (changing votes) to mint ICX. Far from exceeding his authorized use, the affidavit establishes that Mr. Shin's use fell squarely within the access ICON provided to all its users.

The government's only argument for probable cause concerning violations of the CFAA is that *Van Buren v. United States*, 593 U.S. ____ (2021), was decided after the warrants were issued here and that, as a result, "a resolved prior ambiguity in law does not invalidate the probable cause of an affidavit based on the law at the time it was issued." (Response at 11.) The government misses the point. Not only were there no allegations in the affidavit that demonstrate how Mr. Shin exceeded his authorized access under any reading of the law, but as Mr. Shin argued in his opening brief, the *Van Buren* court's decision was the law in Colorado even *prior* to that decision. *See Cloudpath Networks v. Secure W2 BV*, 157 F. Supp. 3d 961, 983 (D. Colo. 2016) (holding that the term "exceeds authorized access" in "the CFAA does not impose criminal liability on individuals who are authorized to access company data but do so for disloyal purposes; it applies only to individuals who are allowed to access a company computer and use that access to obtain data they are not allowed to see for any purpose"). For Colorado courts, *Van Buren* did not resolve any prior ambiguity.

3. **Mr. Shin is entitled to a *Franks* hearing due to the deliberate omission of Mr. Shin's civil complaint from the seizure warrant affidavit.**

The government does not dispute that Agent Wall was sent Mr. Shin's federal civil complaint prior to filing the warrants, and that the Agent then decided not to include this information in his affidavit. Instead, the government contends that the addition of this information (both the fact that a civil complaint by Mr. Shin was filed and its contents) would not have been material to a finding of probable cause. The government is wrong.

*First*, the government asserts that this information would not have been material because of "all of the circumstances set forth in the affidavit." (Response at 13.) But as described in Mr. Shin's opening brief, and as further argued here, the government's "probable cause," to the extent it existed, was extraordinarily thin. Given the paucity of the allegations, *every* fact contrary to the agent's assessment of the evidence would have been material to the court's decision as to whether to issue the warrants. Indeed, the questionable existence of probable cause is underscored by the fact that a federal judge has held, in parallel civil litigation, that Mr. Shin has "plausibly assert[ed] that he has a stronger claim to possession of and title to the ICX tokens than ICON because he minted, created, and staked a claim to the ICX tokens on the blockchain"—in other words, *Mr. Shin,* not ICON, is the likely victim here. Ex. A. Likewise, the same federal judge recently held that ICON itself failed to present arguments that "all ICX, including the tokens at issue, 'belong[]' to the ICON Community." Ex. B at 9.  Given that finding, any conclusions about "probable cause" would have been at least a very close call, raising the relevance and salience of every single piece of contrary evidence.

The cases the government cites do not support its argument and in fact are inapposite. In *Gehrmann v. United States*, 731 Fed. App'x 792 (10th Cir. 2018), the agent's healthcare fraud

affidavit contained "detailed allegations of healthcare fraud from two independent reviews of Defendants' files—one by United and the other by Dr. Elder, an expert that the Colorado Department of Regulatory Agencies ("DORA") retained for purposes of investigating the allegations of healthcare fraud." The affidavit then did not include a letter from the state's licensing board that, as the appellate court found, did not "draw any conclusions or make any findings regarding the healthcare-fraud allegations that precipitated DORA's investigation." The letter was thus neither exculpatory nor, in light of the substantial evidence presented in the warrant, material. Here, in contrast, the allegations in the affidavit were extraordinarily thin and largely consisted of conclusory allegations regarding an "attack." Further, unlike in *Gehrmann*, Mr. Shin's own civil complaint (filed before Mr. Shin knew law enforcement was investigating) clearly explained why Mr. Shin had not committed a crime and why the ICON Foundation was the one at fault. This case is nothing like *Gehrmann*.

The government's reliance on *United States v. Kennedy*, 131 F.3d 1371, 1377 (10th Cir. 1997), is similarly unavailing. The court ruled that minor record-keeping discrepancies in an affidavit regarding the aptitude of a narcotics-sniffing canine did not warrant a *Franks* hearing or suppression. Mr. Shin is *not* arguing that there were any minor discrepancies that needed to be addressed; he *is* arguing that a civil complaint which directly contradicted the government's case was omitted, *in its entirety*, from the probable cause affidavit. *Kennedy* too is unpersuasive.

The decision in *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985), significantly *supports* Mr. Shin's demand for suppression. In *Fama*, a wiretap investigation revealed that a major drug deal was to take place on Mulberry Street in Manhattan, and surveillance by investigators prior to the meeting indicated that cash or narcotics was being stored at a home on

6

Mulberry Street near where the deal was to take place. A search warrant was obtained for the home and an "amazing hoard of drugs, cash and firearms" was seized. In spite of the intensive investigation that had been undertaken prior to the drug deal, the defendant protested, stating that there could have been a "perfectly innocent explanation" for what was seen by the investigators during this surveillance. The court rejected this argument.

When the evidence is overwhelming, as in *Fama*, that an innocent explanation may exist matters little. But here, the evidence was weak *and* insufficient. Every allegation mattered in this affidavit, and every innocent explanation would have been important to the Magistrate Judge's determination. By intentionally denying the Magistrate Judge an opportunity to assess critical, exculpatory evidence, the Agent unfairly and wrongly tipped the balance in his favor. Accordingly, a *Franks* hearing is needed to determine whether suppression is warranted.

The government's further argument that the civil complaint and the "warrant affidavit" do not "materially differ regarding Shin's conduct" is quickly disproven. The seizure warrant affidavit repeatedly referred to an "attack" instigated by Mr. Shin, and he was described as an "attacker." The warrant also claimed that Mr. Shin had "fraudulently acquire[d]" ICX, that this ICX had been "unauthorized," and that the attacker had "changed the IP address he was using for the attack."[1] Suffice it to say, the civil complaint's allegations were far different and set forth a detailed and credible explanation for why Mr. Shin's conduct did not violate any law, including that Mr. Shin clearly did not have the requisite *mens rea*. *See* Dkt. 27, Ex. E.

---

[1] Based on discovery obtained from the State of Colorado, the allegation in the Wall Affidavit claiming that Mr. Shin had intentionally changed his IP address during the attack is false. The State has produced no evidence indicating that Mr. Shin himself changed his IP address; to the contrary, Mr. Shin has a dynamic IP address from CenturyLink, which typically changes automatically.

Finally, and contrary to the government's arguments, there is no *Leon* good-faith exception for *Franks* violations. *United States v. Leon*, 468 U.S. 897 (1984). Moreover, it is clear that the Agent here was not acting in good faith. Just weeks after having personally received the complaint via email directly from the ICON Foundation, the Agent deliberately chose not to include this highly exculpatory filing in his affidavit because it directly negated the conclusory "facts" contained in the affidavit. By excluding this exculpatory information, the Agent was not acting in "good faith" but was rather aggrandizing the role of the supervisory role of the judiciary to himself. The FBI should not be rewarded for this behavior.

**B. THE SUPPRESSION OF EVIDENCE AND RETURN OF ICX TO MR. SHIN IS AN APPROPRIATE REMEDY GIVEN THAT THE FEDERAL GOVERNMENT CONTINUES TO RETAIN POSSESSION OF THE CRYPTO-ASSETS.**

    **1. Relevant Procedural Overview**

The federal government began the process of seizing millions of dollars' worth of Mr. Shin's crypto-assets more than one year ago. The seizure warrants at issue here were signed on November 17, 2020. These warrants were presented by a federal agent to a federal magistrate judge and concerned violations of federal law. No state crimes were alleged.

For months after their seizure, the crypto-assets were held in federal custody without justification, and Mr. Shin was deprived of their use. Despite three Assistant United States attorneys assigned to the case, the federal investigation went nowhere. In May 2021, Mr. Shin filed a Rule 41(g) motion in federal court. After much prodding, and after litigation over an extension of time sought by the government, the government filed a notice of declination, telling this Court on July 12, 2021 that the government had declined to proceed forward with filing a federal asset forfeiture complaint. *See* 21-MC-00117 Dkt. 23.

Yet instead of returning the seized crypto-assets to Mr. Shin, as the government is required to do under federal law, the same federal agent assigned to the federal investigation shopped the case to State prosecutors in Arapahoe County. The assigned State prosecutors conducted no independent investigation, but instead decided almost immediately to indict Mr. Shin on state theft charges. The State case is, unsurprisingly, extraordinarily weak. The State claims, for example, that Mr. Shin stole ICX from all members of "ICON Nation," an undefined entity that purportedly consists of all individuals who held ICX at the time of the Bug. Even the federal government cannot support this novel theory; in the present motion, the government clings to the mistaken notion that Mr. Shin stole the ICX from the "ICON Network" (*i.e.,* the computer program created by ICON to control the distribution and maintain the ledger of ICX).

Critically, for purposes of this motion, the Indictment contains no asset-forfeiture charges. Further, although the State filed a civil asset forfeiture complaint in early August 2021, the State failed to serve the complaint within the required 63 days (and has still not served the complaint). There is thus no State criminal or civil asset forfeiture case.

While the State prosecution languishes, moreover, the federal government has attempted to have it both ways. On the one hand, the government now claims that, although the FBI holds the crypto-assets in its possession, because Mr. Shin has not been charged federally, Mr. Shin cannot seek suppression in federal court as a remedy, and must look to the State for relief. As a result, the government argues, Mr. Shin's arguments are frivolous, and this Court should abstain from hearing this motion. On the other hand, the government continues to claim that the "related federal criminal case has not yet been closed or declined . . . [only that] the federal government has declined to proceed [with] civil forfeiture proceedings in lieu of related state proceedings."

9

(Response at 2 n.1.) The government's statements in that regard are extraordinary given that the FBI has already brought the case to the State, and the State has already filed State felony charges against Mr. Shin as part of this same investigation. Put simply, the federal government's gamesmanship, by using the State prosecution as an end-run around federal asset forfeiture statutes to unlawfully hold the crypto-assets beyond the statutory deadlines while federal authorities continue to investigate, should not be tolerated by this Court.

> **2. Rule 41(g) permits Mr. Shin to file a motion to suppress evidence as part of his demand for the return of property.**

The government's argument that suppression is not a remedy in a Rule 41(g) proceeding is plainly wrong. Rule 41(g) unequivocally states that a person "aggrieved by an *unlawful search and seizure of property* or by the deprivation of property may move for the property's return." One obvious way for a claimant to establish that the government unlawfully seized his property is to show that the seizure warrant was improperly authorized, which is what Mr. Shin is doing here. *See, e.g., In re Grand Jury,* 635 F.3d 101, 105 (3d Cir. 2011) ("While it is true that a Rule 41(g) motion no longer necessarily seeks suppression, this hardly means that it is impossible for such a motion to seek suppression."); *Patel v. United States*, 2019 WL 4251269, at *2 (S.D. Fla. Sept. 9, 2019) (in analyzing Rule 41(g), court held that federal courts have the "power to order the suppression or return of unlawfully seized property even though no indictment has been returned and thus no criminal prosecution is yet in existence").

The Government's citation to *In re The Matter of the Search of Kitty's East*, 905 F.2d 1367 (10th Cir. 1990), is unavailing. *Kitty's East* concerned the prior Rule 41(e), which stated:

> A person aggrieved by an unlawful search and seizure or by the deprivation of property *may move the district court for the district in which the property was seized for the return of the property on*

10

> *the ground that such person is entitled to lawful possession of the property.* The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. *If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.*

*Id.* at 1369-70 (emphasis added). In contrast, the current rule has eliminated both the grounds on which a Rule 41(g) motion may be filed ("on the ground that such person is entitled to the lawful possession of the property") as well as the clear references to a post-indictment suppression motion. The logical conclusion from those changes is that Rule 41(g) permits motions for the return of property to be filed for all reasons, including for the reason that property was subject to an "unlawful search and seizure."[2]

This Court should exercise its discretion to hear this motion to suppress because in determining whether to return property pursuant to Rule 41(g), a relevant factor is whether the

---

[2] The decision in *Christie v. United States*, 2021 WL 5744382 (N.D. Cal. Dec. 2, 2021) is inapposite. The defendant was already facing state animal cruelty charges. The first trial resulted in a deadlocked jury, and the second trial is scheduled for January 31, 2022. On October 7, 2021, federal agents executed a federal search warrant at Christie's property, and Christie moved to suppress, averring only that the State prosecutor "has stated he intends to use evidence gained from the federal search in the upcoming trial in State court." The district court in *Christie* correctly dismissed the defendant's Rule 41(g) motion for return of property and suppression given the underlying state charges, observing that "a court in this country will have an opportunity to rule on the constitutionality of the search and seizure." *Id.* at *3. The opposite is true here. The State of Colorado did not file a forfeiture complaint within the statutory timeframe, and therefore Mr. Shin has no current recourse against the State for the return of his property. His only recourse is in federal court. The court in *Christie* also based its decision on the fact that "it appears Christie's main goal in litigating this motion is the suppression of evidence, not the return of property." *Id.* at *4. Here again, the opposite is true: Mr. Shin just wants his property returned. Finally, unlike in *Christie*, Mr. Shin has not rushed into court to prevent a state court prosecution from obtaining federal evidence. Rather, Mr. Shin filed his Rule 41(g) motion months before state charges were even filed. *Christie* is irrelevant to this case.

11

Government "displayed a callous disregard for the constitutional rights of the movant." *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993); *Richey v. Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975). The suppression motion at issue here, which has been included within this Rule 41(g) case, will establish that by failing to provide probable cause to issue the seizure warrants, and by purposely leaving out highly exculpatory information from the affidavit, the government here acted with a "callous disregard" for the constitutional rights of Mr. Shin.

Finally, the government's argument that there is no evidence to suppress is perplexing. The government does not dispute that it obtained millions of dollars as a result of the seizure of crypto-assets through court-issued seizure warrants. By suppressing this seized evidence, this property would be returned to Mr. Shin. *See, e.g., United States v. One 1974 Learjet 24D, Serial Number 24D-290, Mexican Registration XA-RMF*, 191 F.3d 668, 673 (6th Cir. 1999) ("A lack of probable cause to seize the plane would permit its return to its owner, but would not, by itself, have ended the forfeiture proceedings."). Mr. Shin is not seeking to immunize his property from forfeiture; the federal government has already declined civil asset forfeiture. Mr. Shin simply wants his assets returned to him, and demonstrating an illegal seizure is one method of achieving that goal.[3]

    3. **The *Younger* abstention doctrine is inapplicable here.**

Mr. Shin wants his crypto-assets back. It has been more than 13 months since the government (both federal and state) began seizing his property, and he has not yet even been

---

[3] Although the government seized significant amounts of crypto-assets via seizure warrants, the government also unlawfully directed the crypto-exchanges to liquidate Mr. Shin's accounts. This resulted in the seizure of crypto-assets that far-exceeded the amount permitted by the seizure warrants. *See* Dkt. 1 at 15-18. This illegally seized crypto should also be returned to Mr. Shin.

12

afforded a substantive hearing on the matter. Now, despite acknowledging a criminal investigation into Mr. Shin, the government demands that this federal court decline to hear this case, citing the "*Younger*" abstention doctrine for support. *See Younger v. Harris*, 401 U.S. 37 (1971). This doctrine counters against hearing a case when there is an ongoing "state criminal, civil, or administrative proceeding," the "state court provides an adequate forum to hear the claims raised in the federal complaint," and the "state proceedings involve 'important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Weitzel v. Division of Occupational and Professional Licensing*, 240 F.3d 871, 875 (10th Cir. 2001).

The government's argument in favor of abstention fails. As an initial matter, there is only a single active State court proceeding: the state court criminal case. This is because the State has failed to properly serve the civil asset forfeiture complaint, and the time has expired for the State to do so.[4] The seized crypto-assets are not even listed for forfeiture in the State indictment. Accordingly, as of now, Mr. Shin has no direct remedy in State court to seek the return of his seized assets. Abstention is not available under *Younger* for this reason alone.

Finally, the government presents virtually no argument about the last prong of *Younger*, intoning that the "state has a valid interest in enforcing its criminal and forfeiture laws." But that is not the inquiry. The burden is on the government to show not only that the state proceedings involve "important state interests," but also that the case involves "matters which traditionally

---

[4] As Mr. Shin noted in his opening brief (Dkt. 27 fn. 3), the State moved for a temporary restraining order (TRO) in the civil asset forfeiture case, which was granted by Arapahoe County District Court Judge John E. Scipione on November 10, 2021. Mr. Shin has moved to vacate the TRO, and the State has not responded. It is unclear as to the status of the TRO given that the State has not moved to even serve the underlying civil complaint.

look to state law for their resolution or implicate separately articulated state policies." The government offers no argument on this score, nor could it: the entire case is federal. Federal seizure warrants, supported by the affidavit of a federal agent, were authorized by a federal judge. The seized assets were placed in federal custody, where they remain. The federal investigation lasted for approximately nine months (and, according to the AUSAs, is ongoing). In contrast, the State investigation was non-existent. The State indicted almost immediately after getting a call from the Agent. The State prosecutors manufactured a victim by claiming that Mr. Shin had stolen from ICON Nation. Moreover, the State has not even bothered to serve its civil asset forfeiture complaint, and Mr. Shin's discovery requests have gone unanswered by State prosecutors. In short, to exercise abstention under *Younger*, the government must articulate "important state interests" involving issues of state law or policy. Here, the federal government cannot do so because the State has not articulated its own interests.

## CONCLUSION

Shin respectfully submits that, for the reasons set forth above, the crypto-assets seized by the government must be suppressed and returned to Mr. Shin.

DATED: December 28, 2021          Respectfully Submitted,

*/s/ Eric S. Rosen*
Eric S. Rosen
Kyle Roche
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Email: erosen@rochefreedman.com
Email: kyle@rochefreedman.com

**HADDON MORGAN FOREMAN**
Jeffrey S. Pagliuca
150 E. 10th Avenue
Denver, CO 80203
Telephone: (303) 831-7364
Email: jpagliuca@hmflaw.com

*Counsel for Mark Shin*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2021, I electronically filed the foregoing Reply Memorandum In Support Of Plaintiff's Motion To Suppress Crypto-Assets Seized By the FBI And for a Hearing Pursuant to *Franks v. Delaware* with the Clerk of the Court using CM/ECF which will send notification of such filing to all parties of record.

                                                              */s/ Eric S. Rosen*
                                                              Eric S. Rosen