# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SHIN,<br><br>        Plaintiff,<br><br>   v.<br><br>ICON FOUNDATION,<br><br>        Defendant. | Case No. 20-cv-07363-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT; RE-SETTING DATE FOR CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 59 |

Plaintiff Mark Shin alleges that defendant ICON Foundation ("ICON") improperly interfered with his ownership and possession of ICX tokens, a crypto-asset native to the ICON blockchain network ("ICON Network"), which he created while taking advantage of an unintended error in ICON's protocols. He appears to raise issues of first impression: both parties attempt to apply common law principles to the unique rules of the ICON Network to accuse the other of, among other things, interference with property rights. This area of law, and the rights of the parties, will benefit from a more complete factual record before decisions on the merits are made. At this stage, I find that Shin has stated a plausible claim. For the reasons set forth below, ICON's motion to dismiss the Second Amended Complaint is DENIED with respect to the conversion and trespass to chattel claims and GRANTED with respect to the punitive damages claim.

**BACKGROUND**

The allegations in the First Amended Complaint are detailed in my previous order, which I incorporate by reference here. *See* Order Granting Motion to Dismiss with Leave to Amend and Denying Motion to Strike Without Prejudice ("May 2021 Order") [Dkt. No. 57]. In the Second

1 Amended Complaint, Shin drops his claims for declaratory relief and defamation and now only
2 asserts three property-based claims: (i) conversion based on the frozen ICX tokens in his ICON
3 wallet; (ii) trespass to chattel based on the frozen ICX tokens in his ICON wallet; and (iii) trespass
4 to chattel based on the frozen crypto-assets in his accounts on exchange platforms Binance and
5 Kraken. *See* Second Amended Complaint ("SAC") [Dkt. No. 58]. His allegations are largely the
6 same, with some additions noted below.

7 The ICON Network hosts a "delegated proof of stake" blockchain, which allows for the
8 creation of a cryptocurrency called ICX. SAC ¶ 32. ICON "essentially aims for decentralized
9 governance," where transactions "are verified by a ledger shared within the community network
10 itself, *not controlled by a centralized authority*." *Id.* ¶ 54 (emphasis in original). To achieve such
11 decentralization, ICON "incentivized its users to run full nodes that themselves were comprised of
12 community Public Representatives ('P-Reps')." *Id.* ¶ 55. The ICON Network is controlled by 22 P-
13 Reps. *Id.* ¶ 68. P-Reps are able to "change the policies of the various nodes or communities of which
14 they are part" on the ICON Network, and, through their voting power can "determine when to update
15 the code underlying the ICON Network and help contribute to the overall ICON ecosystem by
16 developing new apps and new features for the code." *Id.* ¶ 55.

17 Sometime in early August 2020, ICON published a software proposal, the "Revision 9
18 Proposal," which included a series of updates and was adopted on August 13, 2020. *Id.* ¶¶ 67, 69. On
19 August 22, 2020, Shin "attempted to direct some of his staked ICX tokens from being delegated to one
20 P-Rep to being delegated to another through the ICONex wallet." *Id.* ¶ 69. After initiating the
21 redelegation process, "a process he had performed many times before," Shin "noticed that 25,000 new
22 ICX tokens had appeared in his wallet." *Id.* ¶ 70. He "thought that there was a visual bug" and when
23 he tried redelegating his tokens again, he saw that another 25,000 ICX tokens had appeared in his
24 wallet. *Id.* ¶ 71. "Considering that the protocol was awarding him ICX tokens every time he initiated
25 the redelegation process, Shin continued to repeat the process," and "[b]y the end of the day, he had
26 received approximately 14 million ICX tokens from the ICX protocol." *Id.* ¶ 78. Shin acknowledges
27 that "[t]he authors and developers of the Revision 9 Proposal may not have intended for the network
28 proposal to behave as it did," but alleges that "this was the proposal that the P-Reps had agreed to and

2

did adopt into the network." *Id.* ¶ 80. He claims he is the "lawful owner of the ~14 million ICX tokens rewarded to him on August 22, 2020." *Id.* ¶ 81.

Shin transferred "a significant portion of" the approximately 14 million ICX tokens to crypto-asset exchange platforms Kraken and Binance. *Id.* ¶ 82. "A few hours later, he learned that he could no longer transfer *any* of his crypto-assets—including the ICX tokens—out of his Binance and Kraken accounts." *Id.* (emphasis in original). He alleges that this was because ICON contacted Kraken and Binance and "directed them to freeze his accounts on those exchanges, which they did." *Id.* ¶ 83. Binance and Kraken froze his accounts based on allegedly false statements by ICON that "Shin was a 'malicious attacker' who acquired 'stolen' funds." *Id.* ¶ 85. Shin adds that Binance and Kraken were able to identify his specific accounts because "he had previously provided the exchanges with his personal information—including his driver's license and home address—when setting up and maintaining his accounts" and because ICON provided both exchanges with "the public key information related to Shin's ICX transactions." *Id.* ¶¶ 87–88.

On August 24, 2020, ICON announced on the Medium website (the "Medium Post") that another software proposal, the "Revision 10 Proposal," sought to correct the bug that Shin discovered, explaining that on August 22, 2020, an account had "attack[ed] the ICON Network." *Id.* ¶ 91.[1] Shin claims that the Medium Post "contains multiple misrepresentations" and that he did not "attack" the ICON Network as he "merely initiated a series of transactions directly facilitated by the ICON blockchain and expressly permitted by ICON and P-Reps." *Id.* ¶ 94. He adds that it is also false that "the tokens were created by a single account" because he only created 14 million tokens whereas ICON admitted "that nearly 20 million ICX tokens were created through the bug," and thus other users created 6 million tokens. *Id.* ¶ 95.

Shin also adds new allegations that "numerous affiliates of ICON *benefited* from the Revision 9 minting bug, dating back to at least August 14, 2020—eight days prior to Shin discovering its existence." *Id.* (emphasis in original). ICON publicly targeted him as a "scapegoat to distract from its culpability in introducing the Revision 9 minting bug" and "at the same time sought to

---

[1] The Medium Post was the basis of Shin's defamation claim, which he now abandons.

1 cover up the fact that many of its close affiliates received ICX tokens from the same mechanism as
2 Shin." *Id.* ¶ 108. Since filing this action, he claims that his counsel has investigated the ICON
3 blockchain to determine the identity of the other ICX wallets that benefited from the bug and has
4 so far identified at least four other entities: "Velic, StakingTeam, ICX Station, and Hyperconnect."
5 *Id.* ¶ 109. The SAC lists the number of tokens each of the entities minted and the date the minting
6 occurred, including one on August 17, 2020, two on August 21, 2020, and one on August 22,
7 2020, the same day as Shin. *Id.* ¶ 110. Shin alleges that the Revision 10 software update only
8 limited his access to the ICX tokens in his wallet, not the other alleged beneficiaries of the
9 Revision 9 bug. *Id.* ¶¶ 96–107.

10 Though ICON claims it has a decentralized system, Shin contends that it had de facto
11 control over the ICON Network, particularly the network proposal approval process, including the
12 Revision 10 update that deprived him of his property. *Id.* ¶¶ 117–32. He claims that ICON
13 "punitively changed its code to target Shin, and in doing so interfered with and precluded him
14 from exercising his rights of ownership over his property." *Id.* ¶ 98.

## LEGAL STANDARD

16 Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint
17 if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to
18 dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its
19 face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible
20 when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the
21 defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
22 (citation omitted). There must be "more than a sheer possibility that a defendant has acted
23 unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff
24 must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*,
25 550 U.S. at 555, 570.

26 In deciding whether the plaintiff has stated a claim upon which relief can be granted, the
27 Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the
28 plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court

4

1 is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

2 fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

3 2008).

## DISCUSSION

### I. CONVERSION

"Conversion is the wrongful exercise of dominion over the property of another." *Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 543–544, (1996). The elements of a conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Id.*; *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998).

In its previous motion to dismiss, ICON argued that it is not the "responsible actor" for the Revision 10 release because only P-Reps can vote to determine when to update the code and thus Shin failed to allege that ICON "substantially interfered with [his] property by knowingly or intentionally taking possession of that property." May 2021 Order at 16–17. I found that Shin had plausibly alleged ICON's de facto control over the ICON Network, particularly over the network update approval process that included the approval of the Revision 10 Proposal. *Id.* at 18. However, it was not clear "how the implementation of the Revision 10 Network Proposal impacted Shin's access to his ICX tokens" given conflicting allegations that he either still had access to the ICX tokens or that his access was restricted by ICON. *Id.* I gave him leave to amend "to fix this deficiency and plausibly explain what implementation of the Revision 10 Proposal did to his access to the ICX tokens, whether the access to all or specifically the 14 million generated ICX tokens were impacted and how the restriction at issue in this case qualifies as an 'assumption of control.'" *Id.*

ICON now moves to dismiss the conversion claim on the grounds that Shin fails to allege that: (i) the ICX tokens generated on August 22, 2020 belong to him; (ii) ICON was the one responsible for dispossessing Shin of that property, (iii) ICON engaged in any wrongful conduct; (iv) and Shin suffered damages because of ICON's conduct. The second argument fails because I previously found Shin's de facto control allegations plausible and he has now adequately

1  explained how the implementation of the Revision 10 Proposal dispossessed him of the property at

2  issue (essentially locking him out of his ICX wallet) *See* SAC ¶¶ 96–100 (alleging that after the

3  Revision 10 Proposal was adopted by the ICON Network, "all of [his] ICX tokens were frozen,

4  including ICX tokens he had previous purchased" and that he gets an error message that says

5  "Address is locked" when he attempts to access his ICX wallet).  The remaining arguments were

6  not raised in the previous round of motion to dismiss.  I address each in turn.

### A. Shin's Possessory Interest in the ICX Tokens

Property is a broad concept that includes "every intangible benefit and prerogative susceptible of possession or disposition." *Downing v. Mun. Court*, 88 Cal. App. 2d 345, 350 (1948) (internal quotation marks omitted).  The Ninth Circuit applies a three-part test to determine whether a property right exists: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (quoting *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir. 1992)).

ICON does not dispute that ICX tokens are capable of being possessed.  Instead, focusing on the third prong, it argues that Shin has not established a legitimate claim to exclusivity because he did not invest substantial time and money in the 14 million ICX tokens generated on August 22, 2020.  *See Kremen*, 337 F.3d at 1030 (plaintiff had legitimate claim to domain name because "many registrants . . . invest substantial time and money to develop and promote websites that depend on their domain names"); *Rasmussen*, 958 F.2d at 903 (plaintiff had legitimate claim to aircraft design permit because he "expended considerable time and effort in research and design" and permit approval activities).  Shin contends that he spent more time minting the ICX tokens—executing a function on the Revision 9 version of the ICON Network the entire day of August 22, 2020—than the plaintiff in *Kremen* who "[w]ith a quick e-mail to the domain name registrar Network Solutions, [] became the proud owner of sex.com." 337 F.3d at 1026; *see* SAC ¶ 78.  To the extent the parties dispute how much time and effort Shin spent acquiring the ICX tokens, that such factual question cannot be resolved on a motion to dismiss.

Regardless of whether Shin took actual possession of the ICX tokens, ICON further argues that Shin had no right to possess the ICX tokens at the time because he illegitimately minted them. It cites *Kimball v. Lohmas*, 31 Cal. 154, 159 (1866), where the defendant cut and chopped trees into "cord wood" and possessed the land at the time the wood was cut, but the court nevertheless found that the plaintiff could recover the cord wood because the defendant was a trespasser who lacked title to the land. Shin asserts that he is not like the trespasser in *Kimball* because the property he took did not belong to anyone else. That is, the ICX tokens were not owned by anyone before he took possession over them because he was the one who newly minted them on August 22, 2020.

At the previous motion to dismiss hearing, ICON stated that it is not asserting a right of ownership over the ICX tokens. *See* Transcript of Proceedings Held on April 28, 2021 [Dkt. No. 56] at 16:23–24 ("It's certainly not our position that those 14 million ICX belong to the Foundation. They don't. Those 14 million tokens ought to be destroyed.").[2] In its briefing now, ICON concedes that the ICX tokens at issue do not technically belong to anyone else, but argues that Shin's act of minting a large amount of new ICX tokens adversely impacted all other ICX holders who suffered a dilution of their ICX holdings. It cites one case in support of this argument but fails to explain how that case, involving a different type of claim, supports its position that when person A acquires property that dilutes the value of property owned by person B, then person A does not have a possessory right in the acquired property. *See Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1191–94 (C.D. Cal. 2017) (finding no genuine dispute of material fact as to whether plaintiff had proven the elements of her "Money Had and Received Claim," which includes "(1) defendant received money; (2) the money defendant received was for plaintiff's use; and (3) defendant is indebted to plaintiff").

ICON next undermines Shin's purported analogy that "[t]he circumstances were as if Shin walked into a casino, placed a quarter in a video poker machine, pressed a series of buttons, and won a jackpot" and "staying at the machine, Shin continued to put in quarters, press the same

---

[2] ICON's request for judicial notice of the April 28, 2021 hearing transcript is GRANTED. Request for Judicial Notice in Support of Motion to Dismiss [Dkt. No. 60]

1  buttons, and win another jackpot." SAC ¶ 79. Unlike the casino analogy, ICON argues that Shin
2  fails to allege that he provided any consideration for the ICX tokens he received and instead
3  acknowledges that he did not "know why the protocol awarded him 25,000 newly minted ICX
4  tokens every time he initiated the redelegating process." *Id.* ¶ 72. ICON does not provide any
5  case law, however, that requires Shin to allege some type of consideration in order to sufficiently
6  establish his possessory interest and survive a motion to dismiss.
7        On the other hand, Shin relies on the common law principle "that which belong to nobody
8  is acquired by the natural law by the person who first possesses it" to argue that he became the
9  owner of the unowned ICX tokens by exercising possession over them. *Geer v. Connecticut*, 161
10 U.S. 519, 522 (1896)[3]; *see Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked*
11 *& Abandoned Steam Vessel*, 833 F.2d 1059, 1064–65 (1st Cir. 1987) (applying this rule to
12 property found in the ocean); *Clajon Prod. Corp. v. Petera*, 854 F. Supp. 843, 853 (D. Wyo. 1994)
13 (applying this rule to wild animals). ICON attempts to distinguish those cases on grounds that
14 maritime law and law pertaining to possession (or lack thereof) of wild animals cannot stretch into
15 the cryptocurrency context at issue in this case.
16       It is clear that the parties strongly dispute whether Shin's actions in acquiring the ICX
17 tokens were proper and whether common law principles should apply in this unique context. The
18 inquiry at this stage, however, is whether Shin has plausibly alleged possessory interest in the ICX
19 tokens. I find that he has. Shin plausibly asserts that he has a stronger claim to possession of and
20 title to the ICX tokens than ICON because he minted, created, and staked a claim to the ICX
21 tokens on the blockchain. *See* SAC ¶¶ 21, 77, 81–82, 99 (describing that a blockchain is "a ledger
22 that tracks the ownership and transfer of bitcoin in existence," and in this case his acquired ICX
23 tokens are reflected in the ICON Network blockchain and appear in his ICX wallet address, from

---

[3] *Geer* was overruled in part by *Hughes v. Oklahoma*, 441 U.S. 322, 325 (1979), but the overall common law principle that Shin relies on still stands. *See People v. Rinehart*, 1 Cal. 5th 652, 661, 377 n.3 (2016) ("*Hughes* retracted *Geer*'s 19th-century view that state regulation of fish and game was immune to commerce clause objections, but left otherwise undisturbed the several states' power 'to protect and conserve wild animal life within their borders.'") (quoting *Hughes*, 441 U.S. at 338).

1   which he is currently locked out).  He also alleges that he was able to control the ICX tokens at

2   issue before ICON locked him out with the implementation of Revision 10.  *See id.* ¶¶ 43–47, 82.

3   (alleging that he was able to transfer a significant portion of the acquired ICX tokens from his ICX

4   wallet to exchange platforms Binance and Kraken).  Whether Shin's alleged ownership right is in

5   fact legitimate cannot, and need not, be resolved on a motion to dismiss.

### B.     Wrongful Conduct by ICON Foundation

ICON argues that Shin has not alleged that ICON engaged in any wrongful conduct in enacting Revision 10, which restricted his access to the ICX tokens, because he cannot establish that he was entitled to ICX free from the restrictions of the ICON Network or the other features inherent to all ICX.  Relying on the principle that "there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property" ICON cites to paragraphs in the SAC where Shin acknowledges that ICX are subject to the Network protocol and that the software that ran the Network could be updated.  *Chen v. PayPal, Inc.*, 61 Cal. App. 5th 559, 576, (2021), *reh'g denied* (Mar. 19, 2021), *review filed* (Apr. 8, 2021) (quoting *Farrington v. A. Teichert & Son, Inc.*, 59 Cal. App. 2d 468, 474 (1943)); *see* SAC ¶¶ 50, 51, 55, 56, 61.  It adds particular emphasis on paragraph 61, where Shin, after explaining that users who "engage with the ICON protocol and develop it . . . will be rewarded with additional ICX," *id.* ¶ 60, states: "At the same time, because the ICON blockchain is supposed to consist of no centralized authority, the system also includes penalties to discourage hacking or interrupting service.  Users who seek to disrupt the ledger-verification process are subject to the ecosystem automatically destroying a portion of their staked ICX.  This process, like all other ICON processes, is supposedly decentralized, without ICON or any other central authority controlling it."  *Id.* ¶ 61.  Accordingly, ICON argues, under Shin's own recitation of the facts, the P-Reps took authorized, remedial actions to protect the ICON Network via Revision 10, which cannot amount to a trespass on Shin's alleged property.

Shin responds that he never consented to the programmatic restriction of all of his ICX tokens.  He explains that paragraph 61 of the SAC only states that, under some circumstances, users "are subject to the ecosystem automatically destroying a *portion* of their *staked* ICX"—not

9

the entirety of their staked ICX or any of their other ICX. SAC ¶ 61. More importantly, unlike the plaintiffs in *Chen*, he points out that ICON never imposed any terms of service or any other contractual terms governing the use of ICX token that would have given ICON the right to freeze or destroy ICX tokens. *See Chen*, 61 Cal. App. 5th at 576 (affirming dismissal of the complaint because "by having consented to the user agreement, which expressly assigns any interest on the pooled funds to PayPal, appellants cannot assert a cause of action for breach of fiduciary duty arising out of that practice" and similarly cannot "frame PayPal's practice as 'conversion' of their funds" because they assented to the taking).

ICON fails to address this point (that no terms of service existed authorizing the ICON's restriction of Shin's ICX tokens), and instead doubles down on its argument that P-Reps used the "inherent features" of ICX to limit the harm Shin caused by his exploits and, consequently, that cannot give rise to a conversion claim. I am not persuaded that defeats the plausibility of Shin's allegations. Even if, as ICON contends, Shin has generally stated that P-Reps have the authority to set policies for the platform, he has not conceded that the authority stretches to restricting his access to ICX tokens, which is what he alleges the implementation Revision 10 Proposal did. To the extent that ICON rehashes the argument that it had no part in the alleged wrongful act because P-Reps passed the implementation of Revision 10, I have already rejected that argument in my previous order. The SAC contains the same de facto control allegations that I found sufficient and further explains how the implementation of Revision 10 restricted Shin's access to the ICX tokens. *See* SAC ¶¶ 96–107. As pleaded, Shin has sufficiently alleged conversion by a wrongful act.

### C. Cognizable Harm

ICON argues that because the ICX tokens were never Shin's property to begin with and are not property that he is entitled to retain, Shin was not harmed by the passage of the Revision 10 update that restricted his access to those ICX tokens. As discussed above, Shin has sufficiently alleged his possessory interest in the ICX tokens. He adequately alleges that he suffered cognizable harm when ICON's wrongful conduct (implementation of Revision 10) deprived him of access to the ICX tokens. *See* SAC ¶ 100 (alleging that "the implementation of Revision 10 effectively 'locked' Shin out of his ICX wallet, preventing him from staking or transferring the

1  ICX and thereby preventing him from enjoying any of the rights or privileges associated with his

2  ownership of these tokens"). ICON argues that Revision 10 simply prevented Shin from

3  transferring ICX that did not belong to him, but Shin alleges that Revision 10 restricted his access

4  to *all* of his ICX tokens—tokens he generated on August 22, 2020 as well as tokens he purchased

5  before that date. *See id.* ¶ 135.

6  Because Shin plausibly alleges a possessory interest in the ICX tokens, ICON's conversion

7  by a wrongful act or disposition of property rights, and cognizable damages, ICON's motion to

8  dismiss the conversion claim is DENIED.

## II. TRESPASS TO CHATTEL

10  To prevail on a claim for trespass to chattel, Shin must allege that ICON intentionally and

11  without authorization interfered with his possessory interest in personal property and that such

12  unauthorized use proximately resulted in damage to him. *See In re Facebook Internet Tracking*

13  *Litig.*, 263 F. Supp. 3d 836, 842 (N.D. Cal. 2017). "Conduct that does not amount to a substantial

14  interference with possession, but which consists of intermeddling with or use of another's personal

15  property, is sufficient to establish a cause of action for trespass to chattel." *eBay, Inc. v. Bidder's*

16  *Edge, Inc.*, 100 F. Supp. 2d 1058, 1070 (N.D. Cal. 2000).

17  In its previous motion to dismiss, ICON argued that "like the conversion claim, the

18  trespass to chattel claim fails because Shin has not alleged that ICON exercised dominion over his

19  property." May 2021 Order at 19. I found that Shin "adequately alleged that ICON had 'de facto

20  control' over the network proposal approval process, particularly with respect to the

21  implementation of the Revision 10 Proposal," but that he failed to "plausibly explain what exactly

22  the Revision 10 Proposal did and how that 'intermeddled' with his 'use' of his 'personal

23  property.'" *Id.* As discussed above, he has now fixed that deficiency. I also instructed Shin that

24  "[t]o the extent that he chooses to bring a trespass to chattel claim based on his frozen exchange

25  accounts, he must plausibly allege how ICON 'intermeddled' with his access and use of the tokens

26  in those exchange accounts, particularly in light of ICON's argument that it does not have any

27  'control' over those accounts." *Id.* at 20.

28  In the SAC, Shin now parses out his trespass to chattel claim based on the ICX tokens that

were frozen by the implementation of Revision 10 (count 2) and the crypto-assets in his Binance and Kraken accounts that were frozen by ICON's direction to those exchange platforms (count 3). ICON moves to dismiss both claims on multiple grounds, many of which have been addressed above.

### A. ICX Tokens Frozen Through Revision 10

AS with his conversion claim, Shin has plausibly alleged a true, legal possessory interest in the ICX tokens to maintain his trespass to chattel claim. ICON argues that the implementation of Revision 10 was not done "without authorization" because Shin concedes that P-Reps set policies for the ICON Network so the remedial actions the P-Reps authorized in this case cannot amount to trespass. *In re Facebook*, 263 F. Supp. 3d at 842. As discussed above, those allegations do not defeat the plausibility of his claim. ICON faults Shin for not citing any legal authority or binding agreement by the parties that would prohibit his ICX tokens from being restricted by the P-Reps. On the flip side, ICON has not cited any binding agreement (like a user terms of service agreement) that necessarily authorized the restriction of his ICX tokens and that would undermine Shin's allegation that his access was restricted "without authorization."

ICON's motion to dismiss the second cause of action is DENIED.

### B. Crypto-Assets Held by Shin on Binance and Kraken

Shin alleges that ICON "intermeddled with his use of his crypto-assets . . . by directing Kraken and Binance to freeze Shin's accounts on those exchanges, and through falsely informing Kraken and Binance that Shin was a 'malicious attacker' and that the ICX tokens that he transferred to their exchanges were 'stolen. . . .'" SAC ¶ 147. ICON raises two arguments with respect to this claim. The first is already resolved above—Shin has adequately alleged possessory interest in the ICX tokens that were subsequently transferred to the exchange accounts. Second, ICON argues that it is not the party preventing Shin from exercising any purported possessory interest.[4]

---

[4] ICON also argues, but drops in its reply brief, that because I previously held that the statements in question, describing Shin as a "malicious hacker" who had "stolen" ICX tokens, were protected opinions and thus insufficient to maintain a defamation claim (a claim that is no longer part of the SAC), these protected opinions cannot form the basis of a trespass to chattel claim either. ICON

Shin relies on *Jamgotchian v. Slender*, 170 Cal. App. 4th 1384 (2009) for the proposition that conduct ordering another person to act can constitute trespass to chattel. In that case, the California Court of Appeal held that "[u]nder California law, trespass to chattels lies where an intentional interference with the possession of personal property *has proximately* caused injury." *Id.* at 1401 (internal quotation marks and citation omitted) (emphasis in original). The question before the court was whether a racing horse steward could be sued for trespass for chattel by refusing the owner access to his horse, and instead requiring the horse to race against the wishes of the owner and in which the horse was subsequently injured. *Id.* at 1387. On appeal from a grant of summary judgment for the horse steward, the appellate court found that "[a] triable issue of fact exist[ed] as to whether [the horse steward's] conduct in ordering [California Horse Racing Board] investigators and race security staff to prevent [the owner] from retrieving his horse was a substantial factor in causing [owner's] harm." *Id.* at 1401.

*Jamgotchian* also involved a separate issue of whether the horse steward had immunity for his actions, because they were an exercise of his authority under the horse racing regulations. *Id.* at 1396. The court found "a disputed issue of fact as to whether [the horse steward's] actions were within his discretionary authority" and reversed that portion of the summary judgment grant as well. Focusing on that discussion, ICON argues that while the steward in *Jamgotchian* may have exceeded his authority in allegedly orchestrating the racing of the horse, the steward was acting under color of authority, and here ICON had no such authority and lacked the functional ability to act as such.

ICON contends that Shin must allege that it controls Binance and Kraken, or that Binance and Kraken are ICON's agents, but cites no case that supports such a requirement as an element of a trespass to chattel claim. The two cases it cites dismissed trespass to chattel claims on different grounds, finding the proximate causation element implausibly pleaded. *See Contreras v. Mote*, No. 1:20-CV-00366-SKO, 2020 WL 3961956, at *8 (E.D. Cal. Jul. 13, 2020) (dismissing claim where plaintiff simply alleged that the police office and city sent "threats of criminal prosecution,

---

fails to cite a case holding that opinion statements cannot form the basis of a claim for trespass to chattel.

13

further fines, and liens" against plaintiff, which "halted, deterred, suppressed the use of Plaintiff's property to finish and enjoy his own front yard" but cited no case law "in support of his claim that enforcement of the city municipal code section at issue constitutes trespass to chattels, and fails to allege sufficient facts regarding how [the police office and city] impaired Plaintiff's ability to 'enjoy his own front yard' or proximately caused his injury"); *Vertkin v. Vertkin*, No. 07-4471 SC, 2007 WL 4287512, at *3 (N.D. Cal. Dec. 6, 2007) (dismissing claim where plaintiff alleged that "by installing computer programs onto Plaintiff's computer in order to obtain personal information, Defendant intermeddled with Plaintiff's property" because "[t]he only harm alleged by Plaintiff was a result of the information that Defendant allegedly procured from Plaintiff's computers" and "Plaintiff [] failed to allege that her computers were impaired as to their condition or quality or that she was unable to use these computers for a substantial period of time").

Unlike *Contreras* and *Vertkin*, Shin plausibly alleges that ICON's actions (telling Binance and Kraken that he is a malicious attacker and that his exchange accounts should be frozen) proximately caused his injury (the freezing of his exchange accounts). He alleges that ICON "contacted Kraken and Binance and directed them to freeze Shin's accounts" and that "Binance and Kraken were able to identify Shin's specific accounts because ICON provided both exchanges with the public key information related to Shin's ICX transactions." SAC ¶¶ 83, 87. "Once this information was provided to Binance and Kraken, both exchanges were able to identify Shin because, as noted, he had previously provided the exchanges with his personal information—including his driver's license and home address—when setting up and maintaining his accounts." *Id.* ¶ 88.

The extent of ICON's influence over the exchange platform's conduct remains to be seen. At this stage, Shin has plausibly alleged that ICON's communication with the exchange platforms proximately caused his alleged injury. ICON's motion to dismiss the third cause of action is DENIED.

### III. PUNITIVE DAMAGES

ICON moves to dismiss the claim for punitive damages that Shin seeks under his conversion and trespass to chattel claims and in his prayer for relief. In order to sustain a claim for

14

punitive damages, a plaintiff must allege that the defendant has acted with "oppression, fraud, or malice." *California Spine & Neurosurgery Inst. v. Aetna Life Ins. Co.*, No. CV 18-6829-DMG (KSX), 2019 WL 1878355, at *2 (C.D. Cal. Mar. 7, 2019) (quoting Cal. Civ. Code § 3294(a)). Malice is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). Oppression means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code § 3294(c)(2). Fraud is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294(c)(3).

Shin's punitive damages theory has somewhat changed in the SAC. Before, he claimed the ICON knowingly misrepresented that he was a "malicious attacker" who had "stolen" funds. I found those allegations were too conclusory to support a claim to punitive damages. May 2021 Order at 24. Now he claims that ICON "punitively changed its code to target Shin" and "froze" only Shin's wallet when others (including ICON employees and close affiliates) also benefited from the Revision 9 bug, allegedly underscoring ICON's "punitive intent." SAC ¶¶ 98, 101. These allegations are just as conclusory. That ICON did not pursue other actors who used the Revision 9 bug does not plausibly suggest that it had a punitive intent in pursuing Shin. Shin suggests that ICON "punitively changed its code" because the Revision 10 Proposal "also contained code that programmatically targeted and restricted Shin from accessing all of his ICX" and "ICON did not reveal this fact in when it posted the Revision 10 proposal details for voting." *Id.* ¶¶ 97, 98. But he fails to cite case law that would support finding such allegations rise to the level of malice, oppression, or fraud. The cases he cites involved more detailed allegations.

Shin also "fails to identify any officer, director, or managing agent who committed an act of oppression, fraud, or malice" and relies on the same allegations that I rejected before. *See* May 2021 Order at 24–25 (finding "allegation that ICON Strategy and Communications Lead Ricky Dodds contacted him via Twitter Direct Message and accused him of being a 'malicious hacker'

who needed to return the allegedly stolen ICX tokens or else Dodds would contact 'law enforcement'" insufficient and that Shin failed to "explain how the communication between him and Dodds relates to the alleged 'malicious conduct' underlying his punitive damages claim"). Shin argues that he could not possibly know who within ICON coordinated the implementation of the scheme to use him as a scapegoat and that it is implausible that Dodds would have made such threats without coordinating with the ICON executive team. Even if Shin is unable to pinpoint which ICON officer/director/agent committed the act of oppression, fraud, or malice without the benefit of discovery, the primary issue with his punitive damages claim is that he has not plausibly alleged an act of oppression, fraud, or malice to begin with.

ICON's motion to dismiss the punitive damages claim is GRANTED. Shin may move to amend to add a punitive damages claim in the event that discovery on the surviving claims shows otherwise.

## CONCLUSION

ICON's motion to dismiss the conversion and trespass to chattel claims is DENIED. ICON's motion to dismiss the punitive damages claim is GRANTED. The Case Management Conference set for October 12, 2021 is moved up to September 7, 2021 at 2 p.m. The Joint Statement is due August 31, 2021. The Joint Statement should include any necessary proposed revisions to the case schedule in light of the progress of discovery and this ruling.

**IT IS SO ORDERED.**

Dated: August 9, 2021

William H. Orrick
United States District Judge