IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:21-y-00065-WJM-SKC-1

IN RE: GOVERNMENT SEIZURE OF ICX TOKENS,

RECOMMENDATION RE: MOTION FOR RETURN OF PROPERTY [DKT. 1]
AND MOTION FOR TEMPORARY RESTRAINING ORDER [DKT. 18]

This Recommendation addresses Claimant Mark Shin's Motion for Return of Property or Probable Cause Hearing ("41(g) Motion") [Dkt. 1] and Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion for TRO") [Dkt. 18.] District Judge Martinez referred these motions to the magistrate judge. [Dkt. 5] and [Dkt. 24.] This Court has reviewed the motions and the related briefing. No hearing is necessary. For the following reasons, the Court recommends both motions be DENIED.

BACKGROUND

This case is one in a number regarding the ownership of certain crypto-assets after a crypto-currency system update went awry.[1] On August 13, 2020, the ICON

---

[1] The Court takes judicial notice of filings in cases related to the matter at hand, specifically, Mr. Shin's pending state civil forfeiture and criminal cases, *to wit*, *People v. Shin*, 2021-cv-31394 (Eighteenth Judicial District, Colorado) (civil forfeiture), and *People v. Shin*, 2021-cr-1445 (Eighteenth Judicial District, Colorado) (criminal). *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1219 n.2 (10th Cir. 2011) (the court may take judicial notice of other courts' files and records).

1

Network[2] ("ICON") released an update to its crypto-currency system. *See* Affidavit of Special Agent Steve Bratten at ¶39, dated Aug. 12, 2021, filed in Mr. Shin's state civil forfeiture case. The update, however, contained an error allowing "unauthorized minting of unlimited ICX [tokens] whenever users changed votes or selected a new delegate."[3] *Id.* at ¶41. When Mr. Shin, a user of the ICON Network, discovered this error, on August 22, 2020, he voted/selected delegates 558 times resulting in minting 13,957,157 ICX tokens. *Id.* at ¶¶44-46. Once the tokens were in his ICON wallet, Mr. Shin transferred the proceeds to 13 other wallets in other crypto-exchanges. *Id.* at ¶57.

At issue are millions of dollars' worth of Mr. Shin's crypto-assets seized by the FBI in January 2021. The federal government originally initiated a complaint for civil forfeiture against these assets, but later declined to pursue forfeiture due to pending state criminal charges against Mr. Shin. [Dkt. 12, p.5.] The FBI has continued to possess these assets, however, due to a state-court warrant directing the FBI to "freeze and/or hold" the crypto-assets because they "were stolen/embezzled or would be material evidence in a subsequent criminal prosecution." [Dkt. 22-1, p.4.]

The state of Colorado also brought a related civil forfeiture action against Mr. Shin. In that case, it obtained a temporary restraining order requiring the crypto-

---

[2] ICON is a subsidiary of a Korean Finteach company founded in 2017. [Dkt. 1, p.6.] It is a decentralized user-controlled crypto-currency network that operates through community nodes and citizen nodes around the world. [*Id.*]

[3] ICX tokens are crypto-assets within the ICON Network. [*Id.*]

assets be placed in "the custody of the Arapahoe County Court and in the possession of the FBI" until further court order. *See* Mr. Shin's state civil forfeiture case, Temporary Restraining Order dated Nov. 10, 2021. Now, Mr. Shin wants his money back. He seeks an order from this Court directing the return of these crypto-assets.

### A. Aftermath of the ICON Network Glitch

After discovering the bug in its system, ICON released another software update on August 24, 2020, to fix the glitch. [Dkt. 1, p.13.] It then publicly claimed Mr. Shin stole his ICX tokens, and it demanded their return. [*Id*. pp.11-13.] ICON also notified the FBI and other crypto-exchanges of the alleged theft, which resulted in those exchanges freezing Mr. Shin's assets. [*Id*.] In response, Mr. Shin filed a civil lawsuit in the Northern District of California on October 20, 2020. [*Id*. p.13.] In that pending case, among other claims, he seeks a declaratory judgment that the ICX tokens at issue belong to him. [*Id*. p.14.]

### B. Federal Court Proceedings

While Mr. Shin pursued his civil matter in the Northern District of California, a federal criminal matter was just beginning. The FBI executed search and seizure warrants on various crypto-exchanges involving Mr. Shin. [Dkt. 12 ¶1.] As a result, multiple exchanges liquidated Mr. Shin's accounts and remitted them to FBI-controlled crypto-currency wallets. [*Id*. ¶5.] Apparently, several exchanges remitted Mr. Shin's assets, whether identified in the search warrants or not, resulting in overcollection. [Dkt. 1, p.16.]

Subsequently, the federal government initiated administrative forfeiture proceedings in January 2021. [Dkt. 12, ¶12.] On February 12, 2021, Mr. Shin filed an administrative claim in those proceedings asserting an interest in the seized assets. [*Id*. ¶13.] This halted the administrative forfeiture and, pursuant to 19 U.S.C. §§ 1608 and 1610, the FBI forwarded the claims to the United States Attorney's office in this district for the filing of a verified complaint in federal court. [*Id*. ¶14.]

On May 10, 2021, the government filed a motion in the United States District Court for the District of Colorado requesting an additional sixty days to file the verified complaint for civil forfeiture. [*Id*. ¶16.] On May 12, 2021, Magistrate Judge Hegarty granted that motion giving the government until July 12, 2021, to file their complaint for forfeiture. [*Id*.] The same day, Mr. Shin filed this case seeking return of the seized crypto-assets under Fed. R. Crim. P. 41(g) and the Fifth Amendment Due Process Clause. [*See generally* Dkt. 1.] He also requests copies of the affidavits submitted to obtain the seizure warrants and seeks permission to file a suppression motion and a probable cause hearing regarding the crypto-assets seized without a warrant. [*Id*.]

Meanwhile, in the federal civil forfeiture case, Mr. Shin filed a motion requesting the magistrate judge reconsider his order granting the government additional time to file their verified complaint. [Dkt. 15, p.7.] Judge Hegarty denied that motion. [*Id*.] Then, on July 12, 2021, the government filed a notice of declination,

4

declining to pursue civil forfeiture because of the state of Colorado's pursuit of criminal charges against Mr. Shin. [*Id.* at 8.]

### C. State Court Proceedings

On June 30, 2021, while this matter and the federal civil forfeiture action were pending in this district, a grand jury in the Eighteenth Judicial District ("Eighteenth") indicted Mr. Shin on charges of (1) cybercrime over $1 million, (2) theft over $1 million, and (3) money laundering. [Dkt. 27-1.] On July 9, 2021, the chief judge of the Eighteenth signed a warrant directing the local FBI to freeze or hold all the crypto-assets it previously seized. [Dkt. 22-1.]

As earlier noted, state civil forfeiture proceedings under C.R.S. § 16-13-302 began on August 12, 2021, when the state filed a motion for TRO. The TRO was granted on November 10, 2021, requiring "the cryptocurrency, described in the caption be placed in the custody of the Arapahoe County Court and in possession of FBI until further order of the court. It shall be the responsibility of the proponent of any motion to vacate or otherwise affect this TRO to set the motion for hearing within the time prescribed by statute." *See* Mr. Shin's state civil forfeiture case, Order dated Nov. 10, 2021. Mr. Shin moved to vacate the TRO and dismiss the civil forfeiture action, and a hearing on that motion was held on January 20, 2022. This Court is unaware of the result of that hearing.

In this case, on August 4, 2021, Mr. Shin filed a motion seeking a TRO and preliminary injunction "barring the federal government from transferring the seized

5

crypto-assets that are the subject of the 41(g) motion to the state of Colorado authorities" pending resolution of his 41(g) Motion. [Dkt. 18, p.1.] While the TRO Motion and the 41(g) Motion remained pending, Mr. Shin next filed a Motion to Suppress the seizure warrants and for the return of his seized crypto-assets. [Dkt. 27, p.9.]

## LEGAL STANDARDS

### A. Rule 41(g)

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return under Fed. R. Crim. P. 41(g). Rule 41(g) is an equitable remedy available only to a claimant who can show irreparable harm and an inadequate remedy at law. *Clymore v. United States*, 164 F.3d 569, 571 (10th Cir. 1999) (citing *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir. 1988). Rule 41(g) jurisdiction "should be exercised with caution and restraint." *United States v. Jeffs*, No. 05-cr-00503-REB, 2006 WL 898112, at *1 (D. Colo. Apr. 4, 2006) (citing *Floyd,* 860 F.2d at 1003).

### B. Temporary Restraining Order

Federal Rule of Civil Procedure 65(a) and (b) govern preliminary injunctions and temporary restraining orders. Where, as here, "the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction." *Emmis Commc'ns Corp. v. Media Strategies, Inc.*, No.

00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citing 11A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2951 (2d ed.1995)).

Injunctive relief is an extraordinary remedy which should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Granting such "drastic relief" is the exception rather than the rule. *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989); *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984). In the Tenth Circuit, a party requesting injunctive relief must clearly establish the following: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and, (4) there is a substantial likelihood of success on the merits. *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla.*, 883 F.2d at 889.

## DISCUSSION

### A. Jurisdiction

The Court must first satisfy itself that it has jurisdiction over this matter. One of the essentials of *in rem* jurisdiction is that the property be within the court's jurisdiction at the time of suit. *United States v. Wingfield*, 822 F.2d 1466, 1471 (10th Cir. 1987) (citing 4 C. Wright & A. Miller, Federal Practice & Procedure § 1070, at 270 (1969)). Release or removal of the property from the court's control ends its

jurisdiction. *Id*. The only exceptions are when the property is released accidentally, fraudulently, or improperly. *Id*.

Relevant here, there are limited circumstances where Rule 41(g) may be used to petition for the return of property held by state authorities. *Clymore,* 164 F.3d at 571. They include actual federal possession of property forfeited by the state, or constructive federal possession where the property was considered evidence in a federal prosecution. *Id*. Here, because the state-issued TRO directs the crypto-assets to remain "in the possession of the FBI," the Court concludes there is actual federal possession of the subject property seized by the FBI originally as part of a federal criminal investigation of Mr. Shin, and which remains in the FBI's possession as property subject to forfeiture by the state. Therefore, this Court recommends finding federal court jurisdiction over this matter.

### B. *Younger* Abstention

However, because "the prospect of undue interference with state proceedings counsels against federal relief[,]" the Court recommends denying Mr. Shin's 41(g) Motion under the *Younger* abstention doctrine. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013); *see also Younger v. Harris*, 401 U.S. 37 (1971). Generally, federal courts are obliged to decide cases within the scope of their jurisdiction. *Sprint Commc'ns, Inc.*, 571 U.S. at 72. The doctrine of abstention, where a district court may decline to exercise its jurisdiction, is an extraordinary and narrow exception to the

duty of a district court to adjudicate a controversy properly before it. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

"*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief – such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings – when such relief could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). The doctrine applies where:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006).

This Court recommends finding all three *Younger* factors exist here. First, the state civil forfeiture action under C.R.S. § 16-13-302 is ongoing and, as noted below, several steps remain in that proceeding before Mr. Shin's rights to his crypto-assets may be extinguished.[4] The fact the state matter started after the federal matter is irrelevant. *See Hicks v. Miranda*, 422 U.S. 332, 349 (1975) ("[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal

---

[4] Colorado's civil forfeiture scheme under C.R.S. § 16-13-301 *et seq.* runs in conjunction with applicable state criminal laws and is "considered a cumulative right of the people in the enforcement of [criminal] laws." C.R.S. § 16-13-302(1).

9

court, the principles of *Younger v. Harris* should apply in full force."). Thus, the Court recommends finding the first *Younger* factor is established.

Second, due to the nature of relief Mr. Shin seeks under his 41(g) Motion and Motion for TRO, the state court provides an adequate forum for such relief. For instance, Mr. Shin argues (in part) that because he has not committed a crime, the seizure warrants were unlawful entitling him to the equitable return of the crypto-assets under Rule 41(g) or the Fifth Amendment Due Process Clause. But he can make those same arguments to the state court; moreover, his guilt or innocence remains to be determined in the ongoing state criminal case.

Further, in the state civil forfeiture case, that court granted the state of Colorado a TRO under C.R.S. § 16-13-308(1), which directs the seizure and holding, if previously seized, of proceeds traceable to a public nuisance act. C.R.S. § 16-13-308(1)(a)(II). A person like Mr. Shin, with an ownership interest adversely affected by the TRO, may file a motion to vacate the TRO. C.R.S. § 16-13-308(f). And Mr. Shin filed such a motion in those proceedings. Until the state court declares the property forfeited, the government has an interest in the property and the owner (Mr. Shin) retains legal title even though he may not have the right to possess it. *Eggleston v. State of Colo.*, 636 F. Supp. 1312, 1322 (D. Colo. 1986). If forfeiture is later declared, the government's interest is perfected, and the owner is deemed divested of the property as of the date it was seized. *Id.* But no judgment of forfeiture enters unless and until the owner of the property is convicted of the underlying offense. C.R.S. §

16-13-207(1.5). In the event Mr. Shin successfully defends himself against the criminal charges, the statute has procedures for the prompt return of his crypto-assets. C.R.S. § 16-13-307(1.6).

For these reasons, the Court finds the state court proceedings (both the civil forfeiture action and the criminal case) provide an adequate forum for the relief sought by Mr. Shin's motions before this Court.[5]

Regarding the third factor, undoubtedly the state's interest in its forfeiture proceedings, which are quasi-criminal in nature, implicates important state interests. *See Postscript Enterprises, Inc., v. Peach*, 878 F.2d 1114, 1116 (8th Cir. 1989) (citing *Huffman v. Pursue Ltd.*, 420 U.S. 592, 604 (1975)) ("Under the *Younger* abstention doctrine the federal courts must abstain from interfering with the efforts of states or local government to protect the very interests which underlie their criminal laws and to obtain compliance with precisely the standards which are embodied in their criminal laws.") (internal quotations omitted); *see also Jones v. Whittington*, No. CIV-11-0861-HE, 2013 WL 4501343, at *3 n.2 (W.D. Okla. Aug. 21, 2013) (forfeiture actions constitute an important state interest under *Younger* because "the pending forfeiture proceeding, while civil, may be viewed as 'in aid' of criminal statutes

---

[5] Citing *Bartkus v. Illinois*, 359 U.S. 121 (1959), Mr. Shin argues the state court proceedings are a "sham" and should be given no credence by this Court. [Dkt. 26, p. 10.] But the *Bartkus* exception is extremely narrow, rarely applied, and limited to situations involving clear manipulation of proceedings. *United States v. Trammell*, 133 F.3d 1343, 1449-50 (10th Cir. 1998). Mr. Shin's *Bartkus* argument is woefully underdeveloped and fails to satisfy his burden to show this matter falls within the limited "sham prosecution" exception.

addressing the same or similar conduct"). Accordingly, the Court recommends finding the third and final *Younger* factor is satisfied.

### C. Irreparable Harm

To be sure, the Court finds Mr. Shin has not shown he will suffer irreparable harm without this Court's intervention. *See Weitzel v. Div. of Occupational and Pro. Licensing*, 240 F.3d 871, 876 (10th Cir. 2001) (the *Younger* abstention doctrine is inapplicable where irreparable injury can be shown). Mr. Shin argues the value of the crypto-assets has decreased considerably during the time of the "government's unlawful possession." [Dkt.15, p.13.] Yet, purely economic loss is insufficient to constitute irreparable harm. *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1158 (10th Cir. 2011).

Mr. Shin also argues the government's continued retention of the crypto-assets unjustifiably interferes with his Fifth Amendment due process rights, thereby constituting a *per se* irreparable injury. [Dkt. 15, p. 13.] But "the threat to the plaintiff's federally protected rights is only irreparable if it cannot be eliminated by defense against a single prosecution." *Weitzel*, 240 F.3d at 876. Mr. Shin's ability to raise his arguments in his state court proceedings, if not successfully defend himself there, eliminates the threat of forfeiture of his crypto-assets. Thus, any violation or

threat to his federal due process rights will be resolved in state court. As a result, Mr. Shin cannot show a *per se* irreparable injury.[6]

For all of these reasons, the Court recommends DENYING the 41(g) Motion based on *Younger* abstention.

### D. Motion for TRO

Mr. Shin seeks a temporary restraining order and preliminary injunction preventing the federal government from transferring the crypto-assets to state authorities pending the resolution of his 41(g) Motion. [Dkt. 18, p. 1.] Based on this Court's recommendation to deny the 41(g) Motion, the Court recommends the Motion for TRO be DENIED as moot.[7]

---

[6] *Younger* aside, Mr. Shin's inability to show irreparable harm, and the availability of an adequate remedy at law in state court further favors dismissing the 41(g) Motion (and the Motion for TRO) on its merits. *See United States v. Akers*, 215 F.3d 1089, 1106 (10th Cir. 2000) ("[A] Rule 41(g) motion should be dismissed if the claimant has an adequate remedy at law or cannot show irreparable injury.") (internal citations omitted).

[7] The parties have 14 days after service of this recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within 14 days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

DATED: January 31, 2022.

                                              BY THE COURT:

                                              S. Kato Crews
                                              United States Magistrate Judge

14